*Kevin T. Mulhearn, P.C.*
*60 Dutch Hill Road, Suite 6B*
*Orangeburg, New York 10962*
*(845) 613-7059*
[kmulhearn@ktmlaw.net](mailto:kmulhearn@ktmlaw.net)

**KEVIN T. MULHEARN, ESQ.**
**DIRECT LINE: (845) 222-8092**
**OF COUNSEL;**
 **DARREN J. EPSTEIN, ESQ.**
 **MICHAEL KALMUS, ESQ.\***
 **\*ADMITTED IN NY & NJ**

**VIA ECF ONLY**

October 20, 2021

Hon. Peggy Kuo
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: ***Montague v. Poly Prep, et al.:*** **1:21-cv-04054-MKB-PK: 10/26/21 Initial Conference**

Dear Magistrate Judge Kuo:

I write this letter in accordance with Your Honor's Individual Practice Rules in advance of the Initial Conference for this case which is scheduled for October 26, 2021.

The Complaint in this action was filed on July 19, 2021 and shortly thereafter served upon each of the Defendants, on consent, through overnight delivery to Karen Bitar, Esq. of Seyfarth Shaw LLP, counsel for the Poly Prep Defendants.

On October 1, 2021, I received a letter from Ms. Bitar in which she notified me that Poly Prep was considering making a motion to disqualify my law firm from this litigation in light of Michael Kalmus, Esq.'s affiliation as "Of Counsel" to my law firm. (I had confirmed that continued but limited affiliation in an August 12, 2021 letter to Ms. Bitar). Mr. Kalmus represented Poly Prep in an advisory capacity only in a matter before this Court entitled *Zimmerman v. Poly Prep, CDS*, 1:09-cv-04586-FBF-CLP, which—like this litigation—centered on Poly Prep's alleged coverup of its late, long-time football coach, Philip Foglietta's rapes and sexual abuse of minor boys at Poly Prep from 1966 through 1991.

On October 11, 2021 I forwarded a letter to Ms. Bitar in which I explained in detail that Mr. Kalmus has an extremely loose affiliation with my firm in which, in an "of Counsel" capacity, he has assisted me only on several litigation matters, has no access to my firm's files, electronic records, or emails, and has no access to my office (nor I to his).

The *Zimmerman v. Poly Prep* litigation was settled in late December, 2012. Thereafter, in 2013, thirty-four (34) former students at Yeshiva University High School for Boys ("YUHS") retained me in connection with an alleged prolonged sex abuse coverup by Yeshiva University ("YU") and Yeshiva University High School for Boys ("YUHS"). Ms. Bitar represented the YU defendants in that matter and continues to do so in that litigation's present iteration in the New York County Supreme Court.

In 2013, after Ms. Bitar requested information from my YUHS clients in an effort to commence a constructive settlement dialogue between the parties, I enlisted Mr. Kalmus's help and assistance in that task, and he communicated with many of the YUHS plaintiffs in our ill-fated effort to foster a reasonable settlement with YU.

Ms. Bitar's representation of Poly Prep as general litigation counsel began, upon information and belief, in late 2013. As counsel for both Poly Prep and YU, in 2013, Ms. Bitar was well aware of Mr. Kalmus's involvement in the YU matter both during the settlement phase (in early 2013) and the ensuing three years of litigation in multiple fora.

In 2013, *immediately* upon the commencement of Mr. Kalmus's loose affiliation with my firm, and at Mr. Kalmus's insistence, we erected a strict ethical wall. Accordingly, beginning in 2013 and continuing to date, (1) Mr. Kalmus and I have never had any substantive communications about the *Zimmerman v. Poly Prep* case, Mr. Kalmus's communications with Poly Prep, or its officials, agents, employees, or attorneys during his representation of Poly Prep, or the *Montague v. Poly Prep* case. (Mr. Kalmus does not even know the identity of the four *John Doe* plaintiffs in the *Montague* case); and (2) Mr. Kalmus has never shared with me any client communications or privileged information that he learned during the course of his retention by Poly Prep.

Mr. Kalmus's affiliation with my firm is, and always has been, extremely limited. He continues to assist me in the YU case, which was revived by the passage of the N.Y. Child Victims Act ("CVA") on February 14, 2019. He has, for instance, coordinated our clients' interviews with our forensic psychiatrist and his staff. Mr. Kalmus, admitted to the Bar in New Jersey, is also assisting me in several sexual abuse cases in which the defendants are located in New Jersey. That is the full extent of his involvement with my firm and its clients.

In 2019, Ms. Bitar was counsel for both YU and Poly Prep. (She represented Poly Prep in some post-settlement matters involving several of the *Zimmerman* case plaintiffs, and formally communicated with me as Poly Prep's counsel). She was well aware (beginning in 2013) of Mr. Kalmus's loose affiliation with my firm, and Mr. Kalmus and I even met with Ms. Bitar in her New York City offices in or about May, 2019 to discuss a possible resolution of the YU matter.

Since late 2019, Ms. Bitar has been aware that I represent several former Poly Prep students with potential claims against Poly Prep. In fact, over the last few years, we have had several dozens of communications about my new Poly Prep claimants in an effort to reach a good faith resolution of their claims.

On August 4, 2020, at Ms. Bitar's request, I forwarded her settlement demands for Gray Montague, Jonah Doe, Jake Doe, and Josh Doe, in an effort to foster a pre-suit resolution of their sexual abuse coverup claims against Poly Prep. On November 5, 2020, I met Ms. Bitar in her New York City office, and allowed her and a member of Poly Prep's Board of Directors to interview each of the above-named Poly Prep claimants (three in person, one virtually) at length about their sexual abuse and its ramifications. Thereafter, at Poly Prep's request, in or about January, 2021, I forwarded Ms. Bitar executed HIPAA forms and medical records for Gray Montague and Jonah Doe. We continued to have frequent communications about my Poly Prep claimants (and a possible resolution of their claims) until I filed the Complaint on July 19, 2021. At no time during this two-year period, and during these multiple communications, did Ms. Bitar or Poly Prep object to Mr. Kalmus's known affiliation—limited as it is—with my firm.

This week, Ms. Bitar notified me that Poly Prep has decided to make a motion to disqualify Kevin T. Mulhearn, P.C. from this case because of my affiliation with Mr. Kalmus. I told Ms. Bitar that even if Poly Prep were to succeed on its motion, this case should still proceed because the other law firm of record for Plaintiffs, Darren Jay Epstein, Esq., P.C. has no business relationship whatsoever with Mr. Kalmus. Darren Epstein, the principal of the Epstein firm, is also "Of Counsel" to my firm, and he and I are working together on more than a dozen New York Child Victims Act cases (none of which involve Mr. Kalmus in any capacity). Ms. Bitar indicated, however, that Poly Prep will nevertheless soon be advising the Court of its intention to make a motion to disqualify my firm and will seek the Court's permission to have all discovery schedules held in abeyance pending the Court's resolution of Poly Prep's threshold motion.

Motions to disqualify law firms or lawyers from ongoing litigations are viewed with disfavor in the Second Circuit because a party is generally entitled to retain counsel of his choosing and a party's choice of counsel is given great deference. *Bd. of Educ. of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Particularly in cases like this one, where an "Of Counsel" attorney shares only a limited connection with a firm, a court may find that the attorney and the firm are not "associated" for the purposes of conflict imputation. *Hempstead Video Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005); *see also*, *Gen. Sec., Inc. v. Commer. Fire & Sec., Inc.*, 2017 U.S. Dist. LEXIS 150499, 14-15 (EDNY 2017) (denying disqualification motion where, as here, "Of Counsel's" connection with subject law firm extremely limited). As the *Hempstead Video* Court emphasized, where [as here] the relationship between the 'of counsel' attorney is "narrowly limited," and nonshared matters are "secure [and effective[ly] . . . isolate[d], . . . the less appropriate imputation will be." 409 F.3d at 135.

For the reasons stated above, this Court should not impute the conflicts of Michael Kalmus, a loosely affiliated "of counsel" attorney, to the law firm of Kevin T. Mulhearn, P.C. This Court, even more compellingly, has no basis whatsoever to disqualify Darren Jay Epstein, Esq., P.C. from this case, or to stay or delay discovery or even the setting of a discovery schedule.

Numerous federal courts, moreover, have held that "[a]n unjustified delay in bringing a motion to disqualify provides a separate ground to deny the relief requested in the underlying motion." *KLG Gates LLP v. Brown*, 506 B.R. 177, 192 (Bankr. EDNY 2014) (finding waiver after party seeking disqualification waited almost 3 years after he knew of the alleged conflict before bringing the motion); *In re Enron Corp.*, No. 02 Civ. 5638 (BSJ), 2003 U.S. Dist. LEXIS 1442,

at *11 n. 2) (delay of just 2 months in bringing a motion to disqualify after basis for disqualification was known found to be a separate ground to deny requested disqualification); *In re Brooks*, 2014 Bankr. LEXIS 4636, *2 (Bankr. EDNY 2014) (finding waiver where creditor "waited five months after Retention Order was entered and even longer from when he knew of the alleged conflict before bringing [the disqualification] motion.").

In determining whether such a waiver occurred, courts consider not just the length of the delay in bringing a motion to disqualify but also the following factors: (1) when the movant learned of the conflict; (2) whether the movant was represented by counsel during the delay; (3) why the delay occurred; (4) whether the motion was delayed for tactical reasons; and (5) whether disqualification would result in prejudice to the nonmoving party. *KLG Gates LLP*, 506 B.R. at 192; *In re Brooks*, 2014 Bankr. LEXIS 4636 at *22.

Here, as indicated above, an examination of these factors—including that Poly Prep waited more than 2 years after knowing the alleged basis of my firm's disqualification—will weigh heavily in favor of a finding that the Poly Prep Defendants have waived any potential conflict of interest in connection with Mr. Kalmus's extremely limited affiliation with Kevin T. Mulhearn, P.C.

Plaintiffs believe that Defendants' pending disqualification motion is groundless and is being filed for bad faith tactical purposes: the delay of discovery in this case and several other sexual abuse facilitation cases with allegations against the same sexual predator (Philip Foglietta)—including one in this Court, *DC-41 v. Poly Prep, CDS*, 1:20-cv-04718-DG-PIC—where there are overlapping witnesses with vital information who need to be deposed by counsel for numerous parties. *See Shabbir v. Pak. Int'l Airlines,* 443 F. Supp. 2d 299, 305 (EDNY 2005) (Pollak, J.) ("disqualification motions are subject to abuse for tactical purposes," including "delay.").

In view of the obvious deficiencies in and limitations of Poly Prep's planned disqualification motion, Plaintiffs would like to proceed with the October 26, 2021 Initial Conference and arrive at a reasonable discovery schedule, as the Court's July 21, 2021 Initial Conference Order (Doc. No. 5) mandates. In the event this Court elects to hold off on a discovery scheduling order until the Court reaches a decision on Defendants' pending disqualification motion, we respectfully request that the Court schedule the briefing and argument on such motion as expeditiously as possible.

Thank you for your consideration of these issues.

Sincerely,

*Kevin T. Mulhearn* /S        *Darren J. Epstein* /S
KEVIN THOMAS MULHEARN    and    DARREN J. EPSTEIN (OF COUNSEL)

KTM/mmi

CC:   Karen Bitar, Esq. (via ECF)