UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
                                                       :

GRAY MONTAGUE, JONAH DOE, JAKE  :
DOE, JOSH DOE, and RON DOE,              :                       DECISION & ORDER
                                                      :
                                                      :                       1:21-cv-4054 (MKB)(PK)
                                 Plaintiffs,    :

                    -against-                    :

POLY PREP COUNTRY DAY SCHOOL,  :
WILLIAM M. WILLIAMS and RALPH DUPEE,:
                                                      :
                                     Defendants.  :
----------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

       On July 19, 2021, Gray Montague, Jonah Doe, Jake Doe, Josh Doe, and Ron Doe (collectively, "Plaintiffs") brought this action pursuant to 20 U.S.C. § 1681(a) against Poly Prep Country Day School ("Poly Prep"), former Poly Prep Headmaster William M. Williams, and former Poly Prep administrator Ralph Dupee (collectively, "Defendants"). (*See* Compl., Dkt. 1.) Plaintiffs allege that they suffered from acts of sexual misconduct while they were students at Poly Prep and that Defendants "engag[ed] in a conspiracy to conceal and cover up" the abuse. (*Id.* ¶ 3.) On December 14, 2021, Defendants filed a motion to disqualify counsel Kevin Mulhearn and Kevin T. Mulhearn, P.C. (the "Mulhearn Firm") from representing Plaintiffs. (Motion to Disqualify ("Motion"), Dkt. 19.) For the reasons stated below, the Motion is denied.

## BACKGROUND

       The Mulhearn Firm has brought several lawsuits on behalf of students against their former schools alleging that school administrators are liable for sexual abuse inflicted by the school's employees. This action is the second that the Mulhearn Firm has brought against Poly Prep regarding

1

the sexual abuse of several students by Philip Foglietta, a now-deceased football coach. (*See* Defendants' Memorandum of Law in Support of Motion to Disqualify ("Mem. in Supp.") at 4-5, Dkt. 19-1.)

### A. The First Action Against Poly Prep (the "*Zimmerman* Action")

In 2009, the Mulhearn Firm brought an action on behalf of twelve former students against Poly Prep and several of its administrators, faculty members, and Board of Trustees members, relating to Coach Foglietta's sexual abuse of those students. (*See* Am. Compl. ¶ 6, Dkt. 28); *Zimmerman v. Poly Prep Country Day Sch.*, No. 09-CV-4586 (FB)(CLP) (E.D.N.Y. dismissed Jan. 22, 2013).

In or about late 2010, Poly Prep hired attorney Michael Kalmus, a solo practitioner and Poly Prep alumnus, to represent it during settlement negotiations with the plaintiffs. (Affidavit of Michael Kalmus, Esq., dated Dec. 22, 2021 ("First Kalmus Aff.") ¶¶ 3, 5, Dkt. 21.) Although he was not retained as litigation counsel (*id.* ¶ 5), Kalmus played an active role in settlement discussions with Mulhearn, who also graduated from Poly Prep. (*Id.* ¶¶ 7-8, 10-12.) As a result of these negotiations, the parties resolved the matter by entering into a settlement agreement in December of 2012. (*Id.* ¶ 14.)

### B. The Litigation Against Yeshiva University High School and Institution of the Ethical Wall

In February of 2013, two months after settlement was reached in the *Zimmerman* Action, Mulhearn contacted Kalmus for assistance in trying to settle a new matter in which he represented several dozen former students at Yeshiva University High School for Boys ("YUHS") who alleged that they had been sexually abused by two rabbis at the school. (*Id.* ¶ 15.) Kalmus agreed to assist Mulhearn in the YUHS case (the "*Yeshiva* Litigation") on the condition that they immediately erect a "strict ethical wall" between them regarding Poly Prep matters. (*Id.* ¶ 17; Declaration of Kevin T. Mulhearn dated Dec. 22, 2021 ("First Mulhearn Decl.") ¶¶ 13, 24, Dkt. 22.)

2

A screen was implemented in February 2013 and remains in place. (*See* First Kalmus Aff. ¶ 22.) Among the features of this ethical wall are:

- Mulhearn and Kalmus do not have keys to each other's offices. (First Kalmus Aff. ¶ 28; *see* First Mulhearn Decl. ¶ 30.)

- Mulhearn has never been physically present in Kalmus's office or home. (First Kalmus Aff. ¶ 35; First Mulhearn Decl. ¶ 37.)

- They do not share support staff or attorneys. (First Kalmus Aff. ¶ 38; First Mulhearn Decl. ¶ 40.)

- They do not have access to each other's files, either in electronic form or hard copy. (First Kalmus Aff. ¶ 33; First Mulhearn Decl. ¶¶ 35-36.) Kalmus has "never brought any Poly Prep files, in hard copies or electronic form, to Mr. Mulhearn, or his agents and employees[.]" (First Kalmus Aff. ¶ 30.) No staff member or employee of the Mulhearn Firm "has ever had access to any of [Kalmus's] Poly Prep files" or information acquired during his representation of Poly Prep. (First Kalmus Aff. ¶ 38; *see* First Mulhearn Decl. ¶ 40.) Kalmus has never had access to Mulhearn's office files, including his files for this case, or for the *Zimmerman* Action. (First Mulhearn Decl. ¶ 33.)

- They have never had access to one another's emails. (First Kalmus Aff. ¶ 32; First Mulhearn Decl. ¶ 34.) Both attorneys' "emails are not stored on any unstructured network file locations" to which the other has access. (First Kalmus Aff. ¶¶ 36-37; First Mulhearn Decl. ¶¶ 38-39.)

- Kalmus maintains a solo practice through which he represents his own clients separate and apart from the Mulhearn Firm. (First Kalmus Aff. ¶ 29; First Mulhearn Decl. ¶ 31.) Mulhearn does not know the identity of Kalmus's clients, and Kalmus has never

3

  shared any of his client files with him.  (First Kalmus Aff. ¶ 29; *see* First Mulhearn Decl. ¶ 31.)

- Kalmus has never been on the payroll of the Mulhearn Firm and has "never enjoyed any perks associated with a typical employee-employer relationship, such as a salary, health care benefits, insurance benefits or coverage, or [ ] payment of professional fees and licensing expenses."  (First Kalmus Aff. ¶ 39; *see* First Mulhearn Decl. ¶ 41.)

From April to June of 2013, Kalmus and Mulhearn engaged in pre-suit negotiations with YUHS's lead counsel, Attorney Karen Bitar, who was also Poly Prep's counsel in the *Zimmerman* Action and represents Poly Prep in the current action.  (*See* First Kalmus Aff. ¶ 18.)

In or about July 2013, the Mulhearn Firm filed suit against YUHS.[1]  (First Mulhearn Decl. ¶ 15.)

Kalmus assisted, and continues to assist, the Mulhearn Firm in the *Yeshiva* Litigation by interviewing clients, valuating their claims, communicating with clients about discovery, and preparing for settlement negotiations.  (First Kalmus Aff. ¶¶ 40, 42; First Mulhearn Decl. ¶ 42.)

## C. Post-Settlement Discussions in the *Zimmerman* Action

In late 2013 and 2014, Mulhearn contacted Poly Prep regarding some issues that had arisen in the *Zimmerman* settlement.  (First Kalmus Aff. ¶¶ 20-21, 50; First Mulhearn Decl. ¶ 16.)

---

[1] The case was originally filed in the Southern District of New York, which dismissed it because the statute of limitations had run, *see Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429 (S.D.N.Y. 2014); the Second Circuit affirmed the dismissal.  *See Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 12 (2d Cir. 2014), *cert. denied*, 575 U.S. 935 (2015). (*See also* Mem. in Supp. at 5-6.)  The plaintiffs filed a second action in New York Supreme Court, which was removed to federal court and dismissed on *res judicata* grounds.  (Mem. in Supp. at 6); *see Twersky v. Yeshiva Univ.*, 112 F. Supp. 3d 173, 180 (S.D.N.Y. 2015), *aff'd sub nom. Gutman v. Yeshiva Univ.*, 637 F. App'x 48 (2d Cir. 2016). One of the plaintiffs and his parents brought a third action in state court.  (Mem. in Supp. at 6 (citing *Gutman v. Yeshiva*, Index No. 153887/2015 (N.Y. Sup. Ct.)).)  Finally, after passage of the New York Child Victims Act in 2019, the claims were revived, and the Mulhearn Firm filed a fourth action in New York Supreme Court, where it remains.  (Mem. in Supp. at 6 (citing *Twersky v. Yeshiva*, Index No. 950111/2019 (N.Y. Sup. Ct.)); *see also* First Kalmus Aff. ¶¶ 40, 55; First Mulhearn Decl. ¶¶ 42, 53.)

Poly Prep "tasked" Kalmus with representing it in this post-settlement dispute (Declaration of Nicholas A. Gravante ("Gravante Decl.") ¶ 11, Dkt. 43), and together with Bitar, Kalmus engaged in discussions with Mulhearn on behalf of Poly Prep.  (First Kalmus Aff. ¶¶ 21, 51.)

### D. The Current Action

In early 2019, Mulhearn contacted Bitar and told her that he represented several additional former students at Poly Prep who had been abused by Coach Foglietta.  (First Mulhearn Decl. ¶ 54.) Following two years of discussion, the Mulhearn Firm filed a complaint on behalf of Plaintiffs on July 19, 2021.[2]  (*See* Compl.; First Mulhearn Decl. ¶ 54; Ex. C to Motion, at ECF 2, Dkt. 19-5.)

Defendants were served with the Complaint on September 19, 2021.

On December 14, 2021, Defendants filed the Motion, seeking to disqualify Mulhearn and the Mulhearn Firm from representing Plaintiffs because of Kalmus's prior representation of Poly Prep.

## DISCUSSION

### I.  Legal Standard

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  "The dispatch of this duty is discretionary in nature . . . ." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).  Where a question of disqualification is close, the Court should resolve any doubt in favor of disqualification.  *Id.*  However, "disqualification 'is a drastic measure that is viewed with disfavor in this Circuit[.]'" *JKAYC, L.L.C. v. Noah Bank*, No. 20-CV-943 (PKC)(SMG), 2021 WL 4893677, at *5 (E.D.N.Y. Oct. 20, 2021) (quoting *Canfield v. SS&C Techs. Holdings, Inc.*, No. 18-CV-8913 (ALC), 18-CV-10252 (ALC), 2020 WL 3960929, at *2 (S.D.N.Y. July 10, 2020)).  When determining whether disqualification is warranted, courts "have attempted to balance 'a client's right freely to choose his

---

[2] The Complaint was later amended.  (*See* Am. Compl.)

5

counsel' against 'the need to maintain the highest standards of the profession.'" *Hempstead Video*, 409 F.3d at 132 (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)).

> Where the representation of adverse parties is successive,
>
>> disqualification is warranted where: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client."

*U.S. v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). If the first two requirements are met, *i.e.*, an attorney is found to have represented a client on substantially related matters, then there is an irrebuttable presumption that the attorney had access to relevant privileged information, and the third requirement will be met. *JKAYC*, 2021 WL 4893677, at *9 (citing *Prevezon*, 839 F.3d at 240).

When the moving party seeks to disqualify the conflicted attorney's firm, the Court traditionally employs a two-step framework. *Hempstead Video*, 409 F.3d at 134. First, the Court must determine whether the attorney is sufficiently connected to the firm to warrant the firm's disqualification. *See id.* at 133. "[A]ttorneys with limited links to a firm are not always considered to be 'associated' with the firm for purposes of conflict imputation." *Id.* "The closer and broader the affiliation of an 'of counsel' attorney with the firm, and the greater the likelihood that operating procedures adopted may permit one to become privy . . . to the pertinent client confidences of the other, the more appropriate will be a rebuttable imputation of the conflict of one to the other." *Id.* at 135. "[T]he more narrowly limited the relationship between the 'of counsel' attorney and the firm, and the more secure and effective the isolation of nonshared matters, the less appropriate imputation will be." *Id.* If the Court finds there is a close affiliation between an 'of counsel' attorney and a firm, there arises a rebuttable presumption that the attorney and the firm shared client confidences. *See id.* at 134.

The Court then determines whether this presumption has been rebutted. "[E]vidence of an ethical screen or evidence of *de facto* separation that would effectively prevent" the sharing of client confidences may be sufficient to rebut the presumption. *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 268 (E.D.N.Y. 2015) (citing *Hempstead Video*, 409 F.3d at 138); *see also Reilly v. Comput. Assocs. Long-Term Disability Plan*, 423 F. Supp. 2d 5, 10 (E.D.N.Y. 2006) (noting presumption that confidences were shared is "rebuttable through a showing that privileged information was not passed to other members of the firm[ ]"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2016 WL 727171, at *4 (E.D.N.Y. Feb. 23, 2016) ("The Second Circuit has made it clear . . . that the presumption [of shared confidences] is rebuttable . . . ."). In some cases, there may be an "interrelationship between the two" parts of the framework, such that whether an attorney is deemed closely affiliated with a firm depends in part on the screening procedures in place, and "whether the screening between an attorney and his firm is considered adequate . . . depends in part on the closeness and extent of the relationship between the attorney and the firm." *Hempstead Video*, 409 F.3d at 134.

In determining the nature and efficacy of screening practices, the Court may rely on affidavits and testimony. *See, e.g.*, *id.* at 137 (uncontroverted affidavits filed by conflicted and representing attorneys contributed to rebutting the presumption that client confidences were shared); *Reilly*, 423 F. Supp. 2d at 11-12 (affidavits submitted by all relevant attorneys "provide strong circumstantial support for the claim that [attorney] was isolated from others in the firm[ ]"); *Renz v. Beeman*, No. 87-CV-487, 1989 WL 16062, at *8 (N.D.N.Y. Feb. 21, 1989) (uncontroverted affidavits and attorney's testimony demonstrated that attorneys never shared client confidences). If allegations in affidavits or elsewhere are disputed, the court should evaluate the credibility of the allegations in light of the factual circumstances of the case. *See, e.g.*, *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 n.18 (2d Cir. 1977) (finding it "hard to believe" that firm was unaware of prior conflicted relationship); *JKAYC*, 2021 WL 4893677, at *9 (finding no clear error in magistrate judge's decision to disqualify

7

attorney where judge considered facts demonstrating attorneys had access to privileged information despite their assertions to the contrary); *Renz*, 1989 WL 16062, at *3 (weighing conflicting testimony and determining which was "most credible").

## II. Analysis

### A. Whether Defendants Waived Their Right to Seek Disqualification

As a preliminary matter, Plaintiffs argue that Defendants waived their right to contest the Mulhearn Firm's representation of Plaintiffs because Poly Prep was aware that Kalmus was "of counsel" to the Mulhearn Firm as early as September 2019, when Bitar was opposing counsel in the *Yeshiva* Litigation and had seen Kalmus's name listed as "of counsel" in that case. (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Disqualify ("Mem. in Opp.") at 13-19, Dkt. 25;[3] *see also* Transcript of Feb. 3, 2022 Oral Argument ("Tr.") at 10:22-11:22, Dkt. 38; First Mulhearn Decl. ¶¶ 45-54.) In support of their argument, Plaintiffs submitted eighteen letters sent to Bitar between September 2019 and December 2020 in the *Yeshiva* Litigation, the letterhead of which lists Kalmus as "of counsel" to the Mulhearn Firm. (*See* Dkt. 37; Tr. 12:17-13:11.)

Defendants argue that, while they knew that Kalmus was co-counsel to Mulhearn in the *Yeshiva* Litigation, they did not know Kalmus was "of counsel" to the Mulhearn Firm until Mulhearn informed them by letter dated August 12, 2021. (*See* Mem. in Supp. at 12; Declaration of Karen Bitar dated Dec. 14, 2021 ("Bitar Decl.") at ECF 4, Dkt. 19-2.) In that letter, Mulhearn wrote, "please be advised that while Michael Kalmus, Esq. is Of Counsel to my firm, he is and will not be involved in any way, or privy to any information, with respect to this matter." (Ex. A to Bitar Decl. at ECF 2, Dkt. 19-3.) In further support of their contention that Defendants did not know of Kalmus's affiliation with the Mulhearn Firm before receiving this letter, Nicholas Gravante, a member of the Poly Prep Board of

---

[3] Plaintiffs filed their Opposition to the Motion on December 23, 2021, (*see* Dkt. 23), and then filed an amended Opposition on December 25, 2021. (*See* Dkt. 25.)

Trustees, states that had he known Kalmus was already "of counsel" to the Mulhearn Firm during "the *Zimmerman* Action or afterwards, Poly Prep would not have authorized Mr. Kalmus to continue to serve as the school's attorney in any respect." (Gravante Decl. ¶ 19.)

"[A] court may find an implied waiver if a party delays its disqualification motion unreasonably." *Pastor v. Trans World Airlines, Inc.*, 951 F. Supp. 27, 32 (E.D.N.Y. 1996) (citing *Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983)) (finding two-year delay in filing motion to disqualify not unreasonable). "[C]ases in which an unreasonable delay ha[s] been found typically involve[ ] delays of 'at least several years between the time the moving party learned of the conflict and the time the disqualification motion was asserted.'" *Canfield*, 2020 WL 3960929, at *4 (quoting *Siverio v. Lavergne*, No. 86-CV-6584 (KMW), 1989 WL 31531, at *2 (S.D.N.Y. Mar. 29, 1989)).

The Court finds here that Defendants did not become aware that Kalmus was "of counsel" to the Mulhearn Firm until the August 12, 2021 letter from Mulhearn. The mere listing of Kalmus as "of counsel" on the Mulhearn Firm's letterhead did not provide sufficient notice of his affiliation with the Mulhearn Firm. *See, e.g.*, *Davis v. Lempke*, 642 F. App'x 31, 33 n.3 (2d Cir. 2016) (letterhead indicating that attorney was "of counsel" to a firm was merely an "incidental" or "clerical" notification); *Baird v. Hilton Hotel Corp.*, 771 F. Supp. 24, 25, 28 (E.D.N.Y. 1991) ("of counsel's" name on firm's letterhead did not constitute formal notice). Moreover, Defendants point out that some of the other attorneys listed on the letterhead are not "of counsel" to the Mulhearn Firm, so the listing of Kalmus together with those attorneys merely indicated to them that Kalmus was "of counsel" only for purposes of the *Yeshiva* Litigation. (*See* Dkt. 39 at 2.) Thus, although Defendants were aware that Kalmus was assisting Mulhearn in the *Yeshiva* Litigation, they were not aware that Kalmus had an "of counsel" relationship with the Mulhearn Firm more generally.

Once Defendants learned of the potential conflict, they did not unreasonably delay in moving for disqualification. Plaintiffs filed the Complaint on July 19, 2021 and served Defendants on

9

September 16, 2021.  (*See* Dkt. 10.)  Just over two weeks later, on October 1, 2021, Defendants told Plaintiffs that they were "extremely concerned about [Mulhearn's] affiliation with Mr. Kalmus in light of his prior representation of Poly [Prep][.]"  (Ex. B to Bitar Decl., Dkt. 19-4; Mem. in Supp. at 7.)  The parties attempted to resolve the issue but were unsuccessful.  (Mem. in Supp. at 7.)  On October 25, 2021, Defendants requested a pre-motion conference on their anticipated motion to disqualify counsel.  (Dkt. 12.)  At the conference held on November 30, 2021, the Court suggested that Defendants speak directly with Kalmus about the degree of his involvement in the current action and attempt to implement an acceptable ethical wall.  (*See* Minute Entry dated Nov. 30, 2021.)  When those efforts failed, Defendants filed the Motion on December 14, 2021, the deadline set by the Court.

Because there was no unreasonable delay in Defendants' filing of the Motion, they have not waived their right to contest the Mulhearn Firm's representation of Plaintiffs.

**B. Disqualification of Counsel**

### *1. Whether Poly Prep is a Former Client*

It is undisputed that Kalmus represented Poly Prep during settlement and post-settlement discussions in the *Zimmerman* Action, beginning in 2010 and continuing "in one capacity or another" until September 2015.  (First Kalmus Aff. ¶¶ 5, 22.)  Kalmus himself refers to Poly Prep as a former client.  (Affidavit of Michael Kalmus dated Jan. 19, 2022 ("Second Kalmus Aff.") ¶ 4, Dkt. 34.)

Plaintiffs contend, nevertheless, that Kalmus's role in the *Zimmerman* Action was limited.  Kalmus asserts that he "did not interview, participate in any interviews, or review the substance of any interviews, of any potential defense witnesses in the Poly Prep case . . . [ ]" and "played no part in the litigation strategy . . . ."  (First Kalmus Aff. ¶ 13.)  At the same time, he states that he "played a prominent, and highly constructive, role in fostering a settlement between Poly Prep and the *Zimmerman* plaintiffs."  (*Id.* ¶ 12.)  He attended multiple settlement conferences and "had numerous

10

conversations" with Poly Prep's Headmaster, Chief Financial Officer, members of the committee overseeing the settlement negotiations, and members of Poly Prep's Board of Trustees. (*Id.* ¶¶ 8, 10.)

An "attorney-client relationship arises when legal advice of any kind is sought from a professional legal adviser in his capacity as such." *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965). Representation for settlement purposes, even if not involving litigation directly, is sufficient to give rise to such a relationship, since during settlement discussions, an attorney provides legal advice to achieve the best possible outcome for the client.

The Court, therefore, finds that Poly Prep is Kalmus's former client.

### 2. Whether the Subject Matter of the *Zimmerman* Action and That of the Present Action are Substantially Related

In order to warrant disqualification, there must be a substantial relationship between the subject matter of the prior representation and the issues in the current lawsuit. This relationship must be "patently clear," which is the case when the issues are "identical" or "essentially the same." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 392 (*quoting Gov't of India*, 569 F.2d at 739). Determining whether there is a substantial relationship is a factual inquiry. *See JKAYC*, 2021 WL 4893677, at *5-6.

Plaintiffs argue that while the *Zimmerman* Action and the current case are similar, the material facts are not "identical" or "essentially the same." (Mem. in Opp. at 9.)

To be substantially related, however, every material fact need not be identical. Rather, it is sufficient that "facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *JKAYC*, 2021 WL 4893677, at *4 (quoting *Prevezon*, 839 F.3d at 239).

Both the *Zimmerman* Action and current case center on whether Poly Prep and its administrators had notice of Coach Foglietta's abusive behavior. (*See* Defendants' Reply Memorandum of Law in Further Support of Motion to Disqualify ("Reply") at 2-3, Dkt. 30; Bitar Decl. ¶ 2; Am. Compl. ¶ 6.) The Complaint specifically references the *Zimmerman* Action, stating that

11

"[m]any of the notice allegations alleged in [the *Zimmerman* Action] are likewise contained in this Complaint." (Am. Comp. ¶ 6.) It contains many factual allegations based on deposition testimony obtained in the *Zimmerman* Action. (Reply at 2 (citation omitted); *see* Am. Compl. ¶¶ 6-7, 163-74, 211-26.) Plaintiffs have also indicated their intention to call former plaintiffs from the *Zimmerman* Action as witnesses. (Bitar Decl. ¶ 2.)

Accordingly, the Court finds that there is a substantial relationship between the *Zimmerman* Action, in which Kalmus represented Poly Prep, and the present case.

### 3. *The Irrebuttable Presumption That Kalmus Had Access to Relevant Client Confidences*

Having established that Kalmus represented Poly Prep in the *Zimmerman* Action and that the current action is substantially related to the *Zimmerman* Action, Defendants are "entitled to the benefit of an *irrebuttable presumption* that confidences were shared." *See Prevezon*, 839 F.3d at 240 (emphasis added) (quoting *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 164-65 (E.D.N.Y. 2006)). Such a presumption obviates the need for Defendants to show that they actually shared client confidences with Kalmus while he represented Poly Prep. The Second Circuit has explained that requiring movants to show that they disclosed relevant confidences to the attorney who previously represented them would "put the former client[s] to the Hobson's choice of either having to disclose [their] privileged information in order to disqualify [their] former attorney or having to refrain from the disqualification motion altogether." *Id.* at 240-41 (quoting *Gov't of India*, 569 F.2d at 740).

### 4. *Whether Kalmus's Conflict Should Be Imputed to the Mulhearn Firm*

An "of counsel" attorney's conflicts are not automatically imputed to the firm. Instead, the Court must determine whether the lawyer is "associated" with the firm. *JKAYC*, 2021 WL 4893677, at *4 (quoting *Hempstead Video*, 409 F.3d at 134). "Whether an attorney is associated with a firm for purposes of conflict imputation depends in part on the existence and extent of screening between the attorney and the firm." *Id.* "An 'of counsel' attorney, who handles matters independent of his firm

12

and scrupulously maintains files for his private clients separate from the files of the firm is less likely to be considered associated with the firm with respect to those clients than another attorney in the same position whose client files are not effectively segregated from those of the firm." *Hempstead Video*, 409 F.3d at 134.

Kalmus has worked with Mulhearn on four cases over the past nine years, and otherwise represents his own clients independent of the Mulhearn Firm, such that Mulhearn does not even know the identity of those clients. (*See* First Kalmus Aff. ¶ 29.) The Court in *Hempstead Video* found that counsel's "double role" of being "of counsel to the [ ] firm only with regard to the cases he was turning over, while independent of the [ ] firm as to the matters he retained" weighed against imputing counsel's conflicts to the firm. 409 F.3d at 138-39.

Moreover, both counsel have taken extensive measures to keep their files, emails, staff, office space, payroll and finances separate. Courts in the Second Circuit have found conflict imputation between a law firm and an "of counsel" attorney unwarranted under circumstances that were similarly attenuated. *See, e.g.*, *Regal Mktg. Inc. v. Sonny & Son Produce Corp.*, No. 01-CV-1911 (WK), 2002 WL 1788026, at *6 (S.D.N.Y. Aug. 1, 2002) (firm's conflicts not imputed to "of counsel" attorney where attorney leased an office on the same floor as the firm; occasionally collaborated with the firm and used firm's secretary to expedite a task; and kept separate insurance, phone number, fax line, and billing systems); *Renz*, 1989 WL 16062, at *4, *9 ("of counsel" attorney had "extremely limited" relationship with firm where attorney rarely appeared at firm, firm assisted attorney with only a few clients, and attorney's relationship with representing attorneys was casual).

Accordingly, the Court finds that Kalmus is not closely affiliated with the Mulhearn Firm, and his conflicts should not be imputed to the Mulhearn Firm.

13

### C. Whether the Presumption of Shared Client Confidences Has Been Rebutted

Alternatively, even if Kalmus's conflict were imputed to the Mulhearn Firm, Plaintiffs have sufficiently rebutted the presumption that Kalmus shared Poly Prep's confidences with the Firm.

When determining whether the presumption of shared client confidences has been rebutted, the Court in *Hempstead Video* considered the relationship of the conflicted attorney to his firm, the measures put in place to screen the conflicted attorney, and affidavits submitted by the attorney and his firm. *See* 409 F.3d at 137 ("Even assuming, in the alternative, that [attorney's] potential conflict should be imputed, subject to rebuttal to [firm] . . . [attorney's] limited relationship with [firm], the screens put in place, and the unconverted affidavits . . . successfully rebut the presumption that [attorney] shared [client's] confidences with the firm.").

As discussed above, despite being described as "of counsel," Kalmus's relationship with the Mulhearn Firm is very loose. He maintains an independent practice with separate clients, receives no employment benefits, and does not share office space, support staff, emails or files with the firm.

The screening measures Kalmus and Mulhearn instituted are similar to those in other cases where courts have found disqualification not to be supported. *See, e.g.*, *Reilly*, 423 F. Supp. 2d. 5 (firm's disqualification not warranted where, *inter alia*, conflicted attorney's access to relevant files was restricted and attorneys were instructed not to discuss relevant matters with conflicted attorney); *In re Air Cargo Shipping*, 2016 WL 727171, at *5 (firm's disqualification not warranted where, *inter alia*, conflicted "of counsel" did not share client confidences with the firm and did not have access to relevant client files).

In sworn affidavits, which the Court finds credible, Kalmus and Mulhearn stated that they "have never had any substantive communications about the *Zimmerman* case" with each other, "except for [their] adversarial positions on the post-settlement insurance issues." (First Mulhearn Decl. ¶ 25; First Kalmus Aff. ¶ 23.) Their only communications relating to Poly Prep occurred in 2013 and 2014,

14

"were expressly authorized by Poly Prep . . . and did not involve any revelation of any confidential or privileged information . . . ." (First Kalmus Aff. ¶ 23.) Kalmus also affirms that he has "not had any substantive communications with Mr. Mulhearn, or any of his staff," about the current action against Poly Prep. (*Id.* ¶ 25; *see* First Mulhearn Decl. ¶ 28.)

After reviewing their communications with one another during and after Kalmus's representation of Poly Prep, Kalmus and Mulhearn submitted further affidavits, confirming that Poly Prep confidences were not shared in any of those communications. (*See* Affidavit of Kevin T. Mulhearn dated Feb. 10, 2022 ("Second Mulhearn Aff.") ¶¶ 2-4, Dkt. 41; Affidavit of Michael Kalmus dated Feb. 10, 2022 ("Third Kalmus Aff.") ¶¶ 2-4, Dkt. 40.)

Thus, it is clear that Kalmus and Mulhearn were aware of the potential conflict from the establishment of their "of counsel" relationship and diligently maintained sufficient separation to avoid sharing confidences, even inadvertently. *See Hempstead Video*, 409 F.3d at 138 ("[A]ny presumption of shared confidences that may arise by operation of law has been sufficiently rebutted" where the attorney and the firm maintained separate files, shared no confidences relating to representation of the client, and "adopted measures . . . upon becoming aware of the potential conflict to protect against any breach[.]").

Defendants question whether the ethical screen has been as effective as Plaintiffs claim, citing "certain suspicious circumstances," specifically that the Complaint contains allegations from a former student identified as "Al Doe," who alleged that he was abused by Coach Foglietta. (Reply at 4 n.3.) Defendants state that Al Doe "had sought to be represented by the Mulhearn Firm in *Zimmerman*, was declined by the Mulhearn Firm as a client, and subsequently attempted to reach a settlement with Poly [Prep] *pro se* . . . ." (*Id.*) While acknowledging that Mulhearn had spoken with Al Doe directly, Defendants nonetheless state that "[p]resumably Mr. Mulhearn did not put the information he was told by Al Doe in the instant complaint based on any communications he may have had with him."

15

(*Id.*) Instead, Defendants suggest that Mulhearn obtained Al Doe's information indirectly through Kalmus, who negotiated with Al Doe on behalf of Poly Prep. (*Id.*)

Defendants do not explain why they make this presumption about the source of Al Doe's information in the Complaint. However, Mulhearn explained that Al Doe had initially approached him, asking to be included in the plaintiff class in the *Zimmerman* Action, but because an agreement had already been reached on how the award would be apportioned, the existing plaintiffs did not want Al Doe to be included. (*See* Tr. 32:7-19.) Mulhearn thereafter told Al Doe to approach Poly Prep directly and notified Kalmus that Al Doe would be "coming in with a claim." (*Id.* 32:23-33:4.) According to Kalmus, Poly Prep learned of Al Doe from Mulhearn, and Al Doe had already "provided all the details regarding his claim to Mulhearn prior to approaching [Poly Prep] directly." (Second Kalmus Aff. ¶ 5; *see also* Tr. 32:7-33:21.) Because Mulhearn learned about Al Doe's allegations from Al Doe himself, Mulhearn's inclusion of these allegations in the Complaint does not call into question the effectiveness of the screen between Kalmus and himself.[4]

Defendants also argue that Kalmus's continued representation of Poly Prep in the *Zimmerman* Action post-settlement discussions with the Mulhearn Firm after the ethical wall was supposedly implemented demonstrates that any alleged screen was ineffective. (*See* Reply at ECF 4.) Whatever misgivings Defendants may have about engaging Kalmus to represent them in those post-settlement discussions—now that they know that Kalmus was "of counsel" to the Mulhearn Firm at that point—there is no indication that Kalmus and Mulhearn discussed Poly Prep other than in their adversarial, rather than collaborative, roles. Poly Prep does not appear to have raised any concerns about the quality of Kalmus's representation during those post-settlement negotiations, which "ultimately resolved in a favorable manner for [Poly Prep]." (First Kalmus Aff. ¶ 21.) Kalmus's maintenance of

---

[4] Al Doe more recently called Mulhearn in February 2022 and asked to be removed from the Complaint. (Tr. 33:9-16.) Mulhearn stated that he will "strike all of Al Doe's allegations from the complaint because it's not necessary." (*Id.* 33:17-19.)

16

a posture that was adversarial to Mulhearn and the Mulhearn Firm during these negotiations demonstrates the effectiveness rather than ineffectiveness of the ethical wall.

Accordingly, Plaintiffs have sufficiently rebutted the presumption that Kalmus shared Poly Prep's confidences with the Mulhearn Firm, and this provides an alternative basis for denying the motion to disqualify Mulhearn or the Mulhearn Firm from representing Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, the Motion is denied.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         June 1, 2022