UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GRAY MONTAGUE, JONAH DOE,
JAKE DOE, JOSH DOE, and RON DOE,

                 Plaintiffs,

    —against—

POLY PREP COUNTRY DAY SCHOOL,
WILLIAM M. WILLIAMS, and RALPH DUPEE,

                 Defendants.
-------------------------------------------------------------x
JONAH DOE,

                 Third-Party Plaintiff,

    —against—

AETNA INSURANCE COMPANY and
FEDERAL INSURANCE COMPANY,

                 Third-Party Defendants.
-------------------------------------------------------------x

**Civil Action No.:
1:21-cv-04054 (MKB) (LKE)**

**PROPOSED THIRD-PARTY
PLAINTIFF'S MEMORANDUM
OF LAW IN SUPPORT OF HIS
MOTION TO FILE A
THIRD-PARTY COMPLAINT
AND FOR LEAVE TO PROCEED
IN THIS THIRD-PARTY
ACTION UNDER A
<u>PSEUDONYM</u>**

**(PARTIALLY REDACTED)**

       Proposed Third-Party Plaintiff, JONAH DOE ("JONAH"), by and through his attorneys,

Kevin T. Mulhearn, P.C. and Burns Bair LLP, hereby respectfully submits this memorandum of

law in support of his motion: (1) pursuant to Rule 14(a) of the Federal Rules of Civil Procedure,

to file and serve a Third-Party Complaint (attached hereto as **<u>Exhibit A</u>**) in an impleader action

against proposed Third-Party Defendants, AETNA INSURANCE COMPANY ("Aetna") and

FEDERAL INSURANCE COMPANY ("Federal") (collectively referred to herein as "Chubb" or

the "Chubb Insurers"), and (2) pursuant to Rules 10(a) and 26(c)(1) of the Federal Rules of Civil

Procedure, for leave to proceed in this Third-Party action under a pseudonym pursuant to an

appropriate protective order.

# TABLE OF CONTENTS

PAGE:

**TABLE OF AUTHORITIES** *iv*

**PRELIMINARY STATEMENT** **2**

**ARGUMENT** **5**

**I.  THIS COURT SHOULD GRANT PROPOSED THIRD-PARTY PLAINTIFF LEAVE TO FILE A THIRD-PARTY COMPLAINT AGAINST THE PROPOSED THIRD-PARTY DEFENDANTS** **5**

**1.  FRCP 14 AUTHORIZES THE FILING OF A THIRD-PARTY COMPLAINT AGAINST INSURANCE COMPANIES UNDER CERTAIN CIRCUMSTANCES** **5**

**2.  THIS MOTION IS TIMELY** **7**

**3.  THIRD-PARTY DEFENDANTS WILL NOT BE UNDULY PREJUDICED BY IMPLEADER** **7**

**4.  IMPLEADER WILL NOT DELAY OR COMPLICATE THE TRIAL** **9**

**5.  THE POLY PREP DEFENDANTS' ASSIGNMENT OF THEIR CLAIMS AGAINST CHUBB TO JONAH WAS PROPER UNDER NEW YORK LAW** **10**

**(A).  THE POLY PREP DEFENDANTS WERE PERMITTED TO ASSIGN THEIR BREACH OF CONTRACT CLAIMS AGAINST CHUBB TO JONAH** **10**

**(B).  THE POLY PREP DEFENDANTS WERE PERMITTED TO ASSIGN THEIR RIGHTS AND INTERESTS IN THEIR POTENTIAL BAD FAITH CLAIMS AGAINST CHUBB TO JONAH** **10**

**(C).  THE POLY PREP DEFENDANTS WERE PERMITTED TO ASSIGN THEIR NEW YORK GENERAL BUSINESS LAW § 349 CLAIMS AGAINST CHUBB TO JONAH** **11**

**6.  THE PROPOSED THIRD-PARTY COMPLAINT STATES CLAIMS AGAINST THE PROPOSED THIRD-PARTY DEFENDANTS** **14**

**(A).  JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS, STATES A CLAIM FOR BREACH OF CONTRACT/INDEMNIFICATION** . . . 14

**(B).  JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS, STATES A CLAIM FOR BREACH OF CONTRACT/BAD FAITH** . . . 21

**(C).  JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS, STATES A CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING/BAD FAITH** . . . 23

**(D).  JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS AND IN HIS INDIVIDUAL CAPACITY, STATES A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349/DECEPTIVE BUSINESS PRACTICES** . . . 28

**7.  NEW YORK LAW AUTHORIZES THE JONAH-POLY PREP SETTLEMENT** . . . 32

**II.  JONAH SHOULD BE GRANTED LEAVE TO PROCEED IN THIS ACTION UNDER A PSEUDONYM** . . . 36

**FACTOR ONE:  Whether the litigation involves matters that are highly sensitive and of a personal nature** . . . 38

**FACTOR TWO: Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously, or even more critically to innocent non-parties** . . . 39

**FACTOR THREE: Whether identification presents other harms and The likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity** . . . 39

**FACTOR FOUR: Whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age** . . . 40

**FACTOR FIVE:  Whether the suit is challenging the actions of the government or that of private parties** . . . 41

PAGE:

**FACTOR SIX: Whether the defendant is prejudiced by allowing the**                    41
**plaintiff to press his or her claims anonymously, whether**
**the nature of that prejudice (if any) differs at any**
**particular stage of the litigation, and whether any prejudice**
**can be mitigated by the district court**

**FACTOR SEVEN: Whether the plaintiff's identity has thus far**                         42
**been kept confidential**

**FACTOR EIGHT: Whether the public interest in the litigation is**                      42
**furthered by requiring the plaintiff to disclose his or her identity**

**FACTOR NINE: Whether, because of the purely legal nature of the**                     43
**issues presented or otherwise, there is an atypically weak public**
**interest in knowing the litigants' identities**

**FACTOR TEN: Whether there are any alternative mechanisms for**                        43
**protecting the confidentiality of the plaintiff:**

**III.    JONAH IS ENTITLED TO A PROTECTIVE ORDER TO PRESERVE**                          44
**HIS ANONYMITY**

**CONCLUSION**                                                                          46

# TABLE OF AUTHORITIES

**CASES:**                                                                                          **PAGES:**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997).          12

*Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.*, 2012 U.S. Dist. LEXIS 64086          45
    (SDNY 2012).

*Ansonia Assoc. Ltd. Partnership v. Public Serv. Mutual Ins. Co.*, 257 A.D.2d 84          21, 27
    (1st Dept. 1999).

*Binder v. Nat'l Life*, 2003 U.S. Dist. LEXIS 8431 (SDNY 2003).                              30

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200 (2004).          31

*Braddock v. Shwarts*, 2023 N.Y. Misc. LEXIS 7381 (N.Y. Sup. Ct. October 6, 2023).          12

*Bunge Corp. v. London and Overseas Ins. Co.,* 394 F.2d 496 (2d Cir. 1968).          15

*Capitol Records, Inc. v. City Hall Records, Inc*, 2008 U.S. Dist. LEXIS 55300          8
    (SDNY July 18, 2008).

*Clarostat Mfg. Co. v. Travelers Indem. Co.,* 115 A.D.2d 386 (1st Dept. 1985).          17

*Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216 (SDNY 1987).                              9

*Damanti v. A/S Inger,* 314 F.2d 395 (2d Cir. 1963), *cert. denied,* 375 U.S. 834 (1963).          16

*Dean v. Towers Ins. Co. NY*, 19 N.Y.3d 104 (2012).                                        14

*Dee v. Rakower*, 112 A.D.3d 204 (2nd Dept. 2013).                                          14

*Dery v. Wyer*, 265 F.2d 804 (2d Cir. 1959).                                                5

*Doe v. AR*, 2021 U.S. Dist. LEXIS 168507 (WDNY 2021).                                      38, 44

*Doe v. Baram*, 2021 U.S. Dist. LEXIS (SDNY 2021).                                          38-42,
    44

*Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869 (7th Cir. 1997).          37

*Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787 (NDNY 2016).                            37

*Doe v. Gooding*, 2021 U.S. Dist. LEXIS 141877 (SDNY 2021).                                38-39,
    41

**CASES:**                                                                     **PAGES:**

*Doe v. Good Samaritan Hospital*, 66 Misc. 3d 444 (Sup. Ct. Nassau Cty. 2019). — 42

*Doe v. Hochul*, 2022 U.S. Dist. LEXIS 49960 (EDNY 2022) (Merkl, M.J.). — 43

*Doe v. Indyke*, 2019 U.S. Dist. LEXIS 157124 (SDNY 2019). — 37-40, 42-44

*Doe v. Nygard*, 2020 U.S. Dist. LEXIS 151186 (SDNY 2020). — 38-41

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (EDNY 2006). — 37, 39-42, 44

*Falcone v. Marinemax, Inc.*, 659 F. Supp. 2d 394 (EDNY 2009). — 5-6

*Fashion-In-Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.*, 1999 U.S. Dist. LEXIS 10617 (SDNY July 13, 1999). — 6

*Fla. Abolitionist v. Backpage.com LLC*, 2017 U.S. Dist. LEXIS 75744 (M.D. Fla.). — 37

*Grand Crossing L.P. v. United States Underwriters Ins. Co.,* 2007 U.S. Dist. LEXIS 94244 (SDNY 2007). — 33

*Greenfield v. Phillies Records, Inc.*, 98 N.Y.2d 562 (2002). — 14

*Greenidge v. Allstate Ins. Co.*, 446 F.3d 356 (2d Cir. 2006). — 21

*Gross v. Hanover Ins. Co.*, 138 F.R.D. 53 (SDNY 1991). — 9

*Hanover Ins. Co. v. Vt. Mut. Ins. Co.,* 2015 U.S. Dist. LEXIS 184737 (NDNY February 11, 2015). — 27

*Hicks v. Long Island R.R.*, 165 F.R.D. 377 (SDNY 1996). — 5

*Hines v. Citibank, N.A.*, 1999 U.S. Dist. LEXIS 9671 (SDNY June 28, 1999). — 5

*Home Depot U.S.A., Inc. v. Nat'l Fire & Marine Ins. Co.,* 55 A.D.3d 671 (2d Dept. 2008). — 33

*iBasis Glob., Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70 (EDNY 2011). — 5-6, 46

**CASES:**                                                                 **PAGES:**

*Illinois Union Insurance. Co. v. US Bus Charter & Limo Inc.*, 291 F. Supp. 3d 286          35-36
    (EDNY 2018).

*In re AXIS Reinsurance Co. Refco Related Ins. Litig.*, 2010 U.S. Dist. LEXIS 33377          23, 26
    (SDNY March 7, 2010).

*Intelligent Digital Systems, LLC v. Beazley Insurance Co.*, 207 F. Supp. 3d 242          34-36
    (EDNY 2016).

*Jeffrey's Auto Body, Inc. v. Allstate Ins. Co.*, 159 A.D.3d 1481  (4th Dept. 2018).          12

*Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531 (2nd Dept. 2001).          13, 30

*J.P. Morgan Securities v. Vigilant Insurance. Co.,* 57 Misc. 3d 171 (N.Y. Sup. Ct.          17-18
    2017), *rev'd on other grounds*, 84 N.Y.S.3d 436 (N.Y. App. Div. 2018).

*Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29 (2d Cir. 1984).          9

*Kickertz v. New York Univ.,* 971 N.Y.S.2d 271 (N.Y. App. Div. 2013).          29

*Kurschner v. Mass. Cas. Ins. Co.*, 2009 U.S. Dist. LEXIS 16623 (EDNY 2009).          29

*Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082 (2d Cir. 1986).          15-17

*McLaughlin v. Biasucci*, 688 F. Supp. 965 (SDNY 1988).          9

*M&M Elec. v. Commercial Union Ins. Co.,* 241 A.D.2d 58 (2d Dept. 1998).          34

*National Bank of Canada v. Artex Indus., Inc.*, 627 F. Supp. 610 (SDNY 1986).          6, 9

*New England Insurance Co. v. Healthcare Underwriters Mutual Insurance Co.*,          24, 26,
    295 F.3d 232 (2d Cir. 2002), *vacated in part on other grounds*,          27
    352 F.3d 599 (2d Cir. 2003).

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2D 308 (1995).          13

*Nick's Garage, Inc. v. Nationwide Mut. Ins. Co.*, 715 F. Appx 31 (2d Cir. 2017).          12

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co*, 875 F.3d 107 (2d Cir. 2017).          12-13

*North State Autobahn, Inc. v. Progressive Ins. Grp.*, 953 N.Y.S.2d 96,          31
    (N.Y. App. Div. 2012).

CASES:                                                                      PAGES:

*Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14 (SDNY 1985).            7

*Ostrowski v. American Safety Indemnity Co.*, 2010 U.S. Dist. LEXIS 104874    32-33
    (EDNY 2010).

*Ouattara v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 211965                  8
    (SDNY November 22, 2022).

*Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., Ins.*, 25 N.Y.3d 543 (2015).    12

*Pavia v. State Farm Mutual Automobile Insurance Co.*, 82 N.Y.2d 445 (1993).    23, 24
                                                                              26-27

*Philadelphia Indem. Ins. Co. v. Amazon.com, Inc.*, 2018 U.S. Dist. LEXIS 247658    7
    (EDNY January 23, 2018).

*Pinto v. Allstate Insurance Co.*, 221 F.3d 394 (2d Cir. 2000).              10-11
                                                                              24, 26
*Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264 (EDNY 2015).    44

*Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47 (2d Cir. 1992).      29

*Riseboro Cmty. P'ship Inc. v. SunAmerica Hous. Fund 682*, 482 F. Supp. 3d 31    14
    (EDNY 2020).

*Rockefeller University v. Aetna Casualty & Surety Co.*, 2023 N.Y. Misc. LEXIS 2978    29-30
    (N.Y. Cty. Sup. Ct. December 8, 2023).

*Saloman v. Burr Manor Estates, Inc.*, 635 F. Supp. 2d 196 (EDNY 2009).      6-7

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008).        37-38,
                                                                              44

*Servidone Construction Corp. v. Security Insurance Co. of Hartford*,         16
    64 N.Y.2d 419 (1985).

*Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454 (SDNY 1984).        6

*Smith v. General Accident Insurance Co.*, 91 N.Y.2d 648 (1998).            23-24

*State Farm Auto. Ins. Co. v. Blanco*, 208 A.D.2d 933 (2d Dept. 1994).      21

# **TABLE OF AUTHORITIES (cont.)**

**CASES:**                                                                **PAGES:**

*Taveras v. American Transit Ins. Co.*, 2011 N.Y. Misc. LEXIS 4826                    27
    (Sup. Ct. Kings Cty. October 17, 2011).

*Thor Equities, LLC v. Factory Mut. Ins. Co.*, 531 F. Supp. 3d 802 (SDNY 2021).      14

*Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138 (SDNY 2003).                9

*Uniroyal, Inc. v. Home Ins. Co.,* 707 F. Supp. 1368 (EDNY 1988).                    16

*U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*, 593 Fed. Appx. 32    44
    (2d Cir. 2014).

*Utica Mut. Ins. Co. v. Government Empls. Ins. Co.,* 2011 N.Y. Misc. LEXIS 4418      16
    (Sup. Ct. Nassau Cty. September 13, 2011).

*Vigilant Ins. Co. v. Travelers Prop. Cas. Co. of Am.,* 243 F. Supp. 3d 405 (SDNY 2017).   16

*Westchester Fire Insurance Co. v. Utica First Insurance Co.,* 40 A.D.3d 978         33-34
    (2d Dept. 2007).

# TABLE OF AUTHORITIES (cont.)

**STATUTES & REGULATIONS:**      **PAGES:**

Federal Rules of Civil Procedure 14(a)      passim

Federal Rules of Civil Procedure 26(c)(1)      1, 44

N.Y. Insurance Law § 3420(a)(2)      32

New York General Business Law § 349      passim

New York General Obligations Law § 13-101      10-11

New York Insurance Law § 2601      13

New York Pattern Jury Instructions 4:67      24

The Telephone Consumer Protection Act 42 U.S.C. § 227      35

# PRELIMINARY STATEMENT

Since the passage of the New York Child Victims Act ("CVA") on February 14, 2019, more than 10,000 men and women have filed claims in the New York state and federal courts seeking redress from various culpable parties for their childhood sexual abuse. To date, five (5) years after the CVA window opened, more than ninety percent (90%) of these cases remain unresolved with no trial dates in sight.

The CVA was designed to remedy a gross injustice—the previously draconian statutes of limitation in New York which foreclosed legal redress for the legitimate claims of many childhood sexual abuse survivors. The administration of CVA claims to date, however, has proceeded at a pace and in a manner that has provided little justice for the vast majority of these abuse survivors. The stilted implementation of the CVA has caused many victims to feel revictimized and has been an impediment, rather than a conduit, to justice.

A critical factor in this state of affairs has been the deficient and outrageous insurance coverage positions taken by many insurance companies, most notably Chubb, which issued liability policies to various institutions charged with the education and/or care of children. Chubb and other like-minded insurance companies, by taking patently unreasonable and bad faith insurance coverage positions, have foreclosed any possibility of a fair, reasonable, and expeditious settlement of CVA cases in which—as here—liability is clear.

The parties to the underlying action, Plaintiff JONAH DOE ("JONAH") and Defendants Poly Prep Country Day School ("Poly Prep") and Ralph Dupee ("Dupee") (collectively, the "Poly Prep Defendants" or "Defendants"), were faced with such an obstructive and unconscionable response from Chubb, Poly Prep's insurer, which refused to use its ample resources to effectuate a fair and timely settlement of JONAH's bona fide claims well within its policy limits.

*Chubb failed and refused to tender the Poly Prep Defendants a single dollar to facilitate a reasonable settlement of JONAH's valuable claims against these Defendants.*

In response to Chubb's unreasonable denial of coverage, JONAH and the Poly Prep Defendants reached a settlement as to JONAH's CVA claims in an amount reasonable in view of the size of JONAH's possible recovery and the degree of probability of JONAH's success against the Poly Prep Defendants.

In accordance with New York law, this settlement consists of: (1) a reasonable, agreed upon, and binding settlement sum; (2) an upfront payment from Poly Prep to JONAH in an amount which is but a fraction of the total settlement sum; (3) a Confession of Judgment by Poly Prep and Dupee to JONAH in an amount for the full settlement sum; (4) a covenant by JONAH not to enforce the unpaid portion of the judgment amount against the personal assets of Poly Prep and Dupee (the insureds); (5) an agreement by the parties to not release the Poly Prep Defendants from liability until the final resolution of this Third-Party action against Chubb; and (6) the Poly Prep Defendants' assignment to JONAH of their claims against Chubb for: (i) breach of contract/duty to indemnify, (ii) breach of implied covenant of good faith and fair dealing/bad faith breach of contract, (iii) breach of the implied covenant of good faith and fair dealing/bad faith, and (iv) violation of New York General Business Law § 349/deceptive business practices.

Through the impleader process, this Honorable Court's ratification of JONAH's fair, reasonable, and legally sanctioned settlement with the Poly Prep Defendants should serve to put Chubb and other like-acting insurers on notice in CVA cases in New York State that bad faith, dilatory, and deceptive insurance practices will no longer be tolerated by the courts—and that aggrieved CVA plaintiffs like JONAH are entitled to fair *and expedited* legal redress.

Plaintiff JONAH, along with four other Plaintiffs, filed the Complaint in this action on July 19, 2021. (Dkt. No. 1). On March 14, 2022, JONAH and his co-plaintiffs filed a Corrected Amended Complaint. (Dkt. No. 47). On May 23, 2022, the Poly Prep Defendants filed a motion to dismiss the Amended Complaint. (Dkt. No. 52). This Court, on March 30, 2023, issued a Memorandum and Order which denied the Poly Prep Defendants' motion in its entirety. (Dkt. No. 87).

Thereafter, from April 2023 through February 2024, the parties engaged in extensive discovery which included: (1) Defendants' production of documents; (2) Plaintiffs' production of documents; (3) detailed interrogatories propounded by Defendants and answered by each of the Plaintiffs; (4) six depositions: two of alleged former victims of Philip Foglietta, Defendant Dupee, a current Poly Prep teacher (and former student), a former Poly Prep football coach, and Poly Prep's former long-time counsel. JONAH and the other four Plaintiffs also provided comprehensive forensic evaluation reports from Fifth Avenue Forensics to Defendants. JONAH and the other four Plaintiffs were not deposed.

After months of negotiations, the parties engaged in a mediation in New York City before Roger Kramer, Esq. on March 7–8, 2024. After this mediation was unsuccessful, JONAH and the Poly Prep Defendants entered into a Settlement Agreement on September 23, 2024. On September 23, 2024, the Poly Prep Defendants also delivered a Confession of Judgment, pursuant to the Settlement Agreement, to JONAH.

**ARGUMENT**

**I.    THIS COURT SHOULD GRANT PROPOSED THIRD-PARTY PLAINTIFF LEAVE TO FILE A THIRD-PARTY COMPLAINT AGAINST THE PROPOSED THIRD-PARTY DEFENDANTS**

**1.    FRCP 14 AUTHORIZES THE FILING OF A THIRD-PARTY COMPLAINT AGAINST INSURANCE COMPANIES UNDER CERTAIN CIRCUMSTANCES**

Rule 14 of the Federal Rules of Civil Procedure states that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a). "The Second Circuit has stated that the purpose of Rule 14(a) is 'to avoid two actions which should be tried together to save the time and cost of reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant.'" *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 379 (SDNY 1996) (*quoting, Dery v. Wyer*, 265 F.2d 804, 806–07 (2d Cir. 1959)); *see iBasis Glob., Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 75-76 (EDNY 2011). Thus, "Rule 14(a) was designed to 'promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim.'" *iBasis Global, Inc.*, 278 F.R.D. at 74 (*quoting, Hines v. Citibank, N.A.*, 1999 U.S. Dist. LEXIS 9671, at *2 (SDNY June 28, 1999)).

In order to implead a non-party under Rule 14, the third-party action "must be dependent on, or derivative of, the main claim." *iBasis Global, Inc.*, 278 F.R.D. at 74; *Falcone v. Marinemax, Inc.*, 659 F. Supp. 2d 394, 402 (EDNY 2009). As such, "Rule 14 provides a *procedural* mechanism

whereby a defendant can have derivative, contingent claims against others not originally parties to the action adjudicated contemporaneously with the claims against it: it does not create new *substantive* rights against those other parties." *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 457 (SDNY 1984) (emphasis in original). It follows that impleading a third-party under Rule 14 is permissible where, as here, "the third-party defendant's liability to the third-party plaintiff [is] 'dependent upon the outcome of the main claim' or the third-party defendant [is] 'potentially secondarily liable as a contributor to the defendant.'" *iBasis Global, Inc.*, 278 F.R.D. at 74; *see Falcone*, 659 F. Supp. 2d at 402; *National Bank of Canada v. Artex Indus., Inc.*, 627 F. Supp. 610, 613 (SDNY 1986) (recognizing that for a third-party action to proceed under Rule 14, "[t]he outcome of the third-party claim must be contingent on the outcome of the main claim."). Where this requirement is met, "[t]imely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *iBasis Global, Inc.*, 278 F.R.D. at 74 (*quoting, Fashion-In-Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.*, 1999 U.S. Dist. LEXIS 10617, at *15 (SDNY July 13, 1999)).

In considering whether to grant a party's motion to implead a non-party, courts analyze the following factors: "(a) whether the movant deliberately delayed or was derelict in filing the motion; (b) whether impleading would delay or unduly complicate the trial; (c) whether impleading would prejudice the plaintiff or third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted." *iBasis Global, Inc.*, 278 F.R.D. at 74; *Falcone*, 659 F. Supp. 2d at 402; *Saloman v. Burr Manor Estates, Inc.*, 635 F. Supp. 2d 196, 200 (EDNY 2009). An analysis of the four *iBasis Global* factors should compel this Court to grant JONAH's Rule 14(a) impleader motion in its entirety.

## 2.    <u>THIS MOTION IS TIMELY</u>

The initial Complaint in the Action was filed on July 19, 2021. (Dkt. No. 1). Plaintiff filed his Corrected Amended Complaint on March 14, 2022. (Dkt. No. 47), (**<u>Exhibit B</u>** hereto). The Poly Prep Defendants filed their Answer on May 19, 2023. (Dkt. No. 92). JONAH and the Poly Prep Defendants executed a Settlement Agreement on September 23, 2024. Poly Prep and Dupee, through their counsel, executed a Confession of Judgment in favor of Plaintiff JONAH, pursuant to the Settlement Agreement, on September 23, 2024.

JONAH filed his motion for leave to file a Third-Party Complaint against Third-Party Defendants, Aetna and Federal (collectively "Chubb") on September 24, 2024. On these facts, this Court should find that JONAH was not dilatory or derelict in filing his motion for leave to file a Third-Party complaint. *See Philadelphia Indem. Ins. Co. v. Amazon.com, Inc.*, 2018 U.S. Dist. LEXIS 247658 at *8 (EDNY January 23, 2018) (holding that, due to litigation events, the approximately nine months between the filing of the operative pleading and the filing of the motion to implead did not constitute undue delay or dereliction); *Salomon*, 635 F. Supp. 2d at 200–01 (finding long delay attributable to parties' efforts to settle case was not undue delay and granting third-party plaintiff's motion to implead non-parties). JONAH has filed this motion, which contains ample legal analysis, as soon as practicable after reaching a settlement with the Poly Prep Defendants and obtaining a Confession of Judgment from said Defendants.

## 3.    **THIRD-PARTY DEFENDANTS WILL NOT BE UNDULY PREJUDICED BY IMPLEADER**

The "prejudice" element of impleader usually involves an assessment as to whether impleader would prejudice either the plaintiff or the third-party defendants. *See Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14, 20 (SDNY 1985) ("The court must balance the benefits derived from impleader—that is, the benefits of settling related matters in one suit—against the potential

prejudice to the plaintiff and third-party defendants."). Here, as JONAH himself is moving for leave to implead the Chubb Insurers, and the Third-Pary Complaint does not implicate the claims of any of the other four Plaintiffs in the underlying action, impleader will not prejudice JONAH or the other Plaintiffs.

Likewise, given that the Chubb Insurers will have every opportunity to conduct discovery in order to defend themselves from the Third-Party causes of action, no prejudice to Third-Party Defendants will result if this Court grants Third-Party Plaintiff's motion for leave to implead. *See Capitol Records, Inc. v. City Hall Records, Inc*, 2008 U.S. Dist. LEXIS 55300, at *19 (SDNY July 18, 2008).

Moreover, the Chubb Insurers' current status as defendants in a state court declaratory judgment action brought by Poly Prep (Index No. 517756/2023) in the Kings County Supreme Court does not create any prejudice to the Chubb Insurers. *See Ouattara v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 211965, at *6 (SDNY November 22, 2022) ("Permitting Defendants to implead the Proposed Third-Party Defendants would permit the parties to work through discovery more efficiently and economically on issues central to the dispute between the parties."). As the Chubb Insurers are "already defendants in [a state court declaratory judgment] action on these facts," they will suffer no prejudice by impleader because this federal court "*may allow the parties to proceed to resolution or trial sooner than they otherwise might have in light of the slower-moving state court action.*" *Id.* (emphasis added).

This Court should thus find that the requested impleader will not prejudice either the Plaintiffs or the Third-Party Defendants.

### 4. IMPLEADER WILL NOT DELAY OR COMPLICATE THE TRIAL

"The purpose of [Rule 14(a)] is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *McLaughlin v. Biasucci*, 688 F. Supp. 965, 967 (SDNY 1988). Accordingly, district courts have considerable discretion in deciding whether to permit a third-party complaint. *See Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (SDNY 1987).

There is no question that JONAH's "proposed third-party claims" arise from 'the same aggregate or core of facts which is determinative of the plaintiff's claim[s],' and thus the interest in judicial economy would be served by permitting those claims to proceed in the instant action." *Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 55 (SDNY 1991) (*quoting, National Bank of Canada*, 627 F. Supp. at 613).

"Impleader is appropriate when the third-party defendant's liability to the third-party plaintiff is 'dependent upon the outcome of the main claim' or the third-party defendant is 'potentially secondarily liable as a contributor to the defendant.'" *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 140 (SDNY 2003) (*quoting, Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984)).

Here, as the third-party claims are dependent upon the claims in the underlying action, impleader in this case would serve the purpose of judicial economy. *See Too, Inc.*, 213 F.R.D. at 141 ("If the third-party complaint is not allowed, [defendants] would have to start a separate action, and repeat much of the proceedings and discovery that has already occurred in the case brought by [plaintiff] against [defendants].").

Accordingly, this Court should find that impleader of the Chubb Insurers would not delay or complicate the trial in this action.

### 5. THE POLY PREP DEFENDANTS' ASSIGNMENT OF THEIR CLAIMS AGAINST CHUBB TO JONAH WAS PROPER UNDER NEW YORK LAW

### (A). THE POLY PREP DEFENDANTS WERE PERMITTED TO ASSIGN THEIR BREACH OF CONTRACT CLAIMS AGAINST CHUBB TO JONAH

New York General Obligations Law § 13-101, which governs the assignment of claims, provides, with certain inapplicable exceptions, that "*[a]ny claim . . . can be transferred.*" N.Y. Gen. Oblig. Law § 13-101 (emphasis added). There is no question therefore that the Poly Prep Defendants were permitted to assign their breach of contract/indemnification and breach of contract/bad faith claims against Chubb to JONAH. These types of assignments occur frequently in the insurance context.

### (B). THE POLY PREP DEFENDANTS WERE PERMITTED TO ASSIGN THEIR RIGHTS AND INTERESTS IN THEIR POTENTIAL BAD FAITH CLAIMS AGAINST CHUBB TO JONAH

In *Pinto v. Allstate Insurance Co.,* 221 F.3d 394 (2d Cir. 2000), the Second Circuit, applying New York law, held that the holder of a liability insurance policy (the insured) could assign its bad faith claim against its insurer (Allstate) to the injured plaintiff. *Id.* at 403–04. The plaintiff sought the policy limits but, prior to trial, Allstate countered with a much lower offer. *Id.* at 397. At trial, the jury awarded the plaintiff a judgment in excess of the policy limits. *Id.* at 398. Thereafter, the insured assigned his rights and interests in his bad faith claims against Allstate to the injured plaintiff—and the plaintiff gave the insured a release from personal liability for the excess judgment. *Id.*

Allstate argued that the tendered release rendered the judgment the plaintiff had obtained "void and unenforceable" against the insured, and thus extinguished the insured's right to pursue

a bad faith claim against Allstate, "in effect leaving [the insured] nothing to assign." *Id.* at 403. The Second Circuit rejected Allstate's argument and emphasized that "*assignment of the defendant's bad faith claim to the plaintiff in a personal liability suit is the ordinary mechanism for pursuing such claim against the insurer, usually in exchange for a covenant not to execute on the judgment.*" *Id.* (collecting New York cases) (emphasis added).

The *Pinto* court noted that a judgment with a covenant not to sue or enforce was the preferred mechanism to execute their assignment of the bad faith claim but nevertheless sustained the assignment at issue by treating the general release for an assignment of the bad faith claim "as if the parties had executed a covenant not to sue." *Id.* at 404 ("New York courts have ignored the formal distinction between a release and a covenant not to sue or execute in order to avoid an unjust result." *Id.* (citations omitted)). *Pinto* also held that the financial condition of the insured, and his inability to pay the excess judgment, had no impact on the viability of the assignment. *Id.*

Here, the Poly Prep Defendants executed their assignment of their bad faith claims to JONAH pursuant to a settlement agreement with a confession of judgment and covenant not to enforce the unpaid portion of that judgment against the Poly Prep Defendants' personal assets. (*See* **Exhibit C** at 7-9). This assignment is thus authorized under New York law.

### (C). THE POLY PREP DEFENDANTS WERE PERMITTED TO ASSIGN THEIR NEW YORK GENERAL BUSINESS LAW § 349 CLAIMS AGAINST CHUBB TO JONAH

As stated above, New York General Obligations Law § 13-101, which governs the assignment of claims, provides, with certain inapplicable exceptions, that "*[a]ny claim . . . can be transferred.*" N.Y. Gen. Oblig. Law § 13-101 (emphasis added). As the Court of Appeals has explained, this includes fraud and deceit claims, which are "freely assignable in New York," provided there is "some expressed intent or reference to [the] tort causes of action, or some explicit

language evidencing the parties' intent to transfer broad and unlimited rights and claims." *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., Ins.*, 25 N.Y.3d 543, 550 (2015) (providing, *inter alia*, that only with a valid assignment, may an assignee "sue for damages for fraud or deceit"). For such an assignment to be recognized, however, the assignment instrument must "manifest 'an intention to make the assignee the owner of the claim.'" (citations omitted). *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (citations omitted) (noting that the mere grant of a power of attorney to sue and collect on a claim is insufficient to enable the grantee to bring suit in his own name; the language of an assignment instrument must manifest the assignor's intent to transfer "title or ownership" of his rights in any particular tort claim to the assignee); *see also Braddock v. Shwarts*, 2023 N.Y. Misc. LEXIS 7381, at *12 (N.Y. Sup. Ct. October 6, 2023) ("[T]o make a valid assignment, the owner must manifest an intention to make the assignee *the owner of the claim*." (emphasis added; citation omitted)).

Under New York law, a purchaser-consumer of insurance is permitted to assign its New York General Business Law § 349 claims for deceptive and misleading practices against its insurer. *See, e.g., Nick's Garage, Inc. v. Progressive Cas. Ins. Co,* 875 F.3d 107, 110 (2d Cir. 2017) (auto repair shop had standing to bring to trial GBL § 349 fraud and deceit claims against automobile insurers, **as assignee** of its auto insurance-purchasing customers, based on genuine material issue of fact as to whether the insurers engaged in misleading practices by refusing to pay auto repair shops for the labor hours necessary to repair vehicles to their pre-loss condition); *see also*, *Nick's Garage, Inc. v. Nationwide Mut. Ins. Co.*, 715 F. Appx 31, 33–35 (2d Cir. 2017) (same analysis and result); *Jeffrey's Auto Body, Inc. v. Allstate Ins. Co.*, 159 A.D.3d 1481, 1481-83 (4th Dept. 2018) (assignee had viable and triable GBL § 349 claims against auto insurers).

In *Nick's Garage v. Progressive*, the Second Circuit also held that under well-settled New York law, GBL § 349 claims (even when assigned) are not precluded by New York Insurance Law § 2601, which prohibits insurers from "engag[ing] in unfair claim settlement practices," and specifies various acts that constitute such unfair practices. *Nick's Garage*, 875 F.3d at 126 (*quoting*, N.Y. Insurance Law § 2601(a)).

The Second Circuit soundly rejected the insurers' argument that the Insurance Law, which does not permit a private right of action, should control and take precedent over GBL § 349, which does. *Id.* at 127 ("[A] GBL [§ 349] claim is viable where the plaintiff make[s] a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under another statute that is not independently actionable." *Id.* (internal quotations and citations omitted).

Such an erroneous preclusion argument "ignores the plain language of GBL § 349(g), which states that '[t]his section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state.'" *Id.* (*citing*, *inter alia*, *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2D 308, 3-4 (1995)) ("[R]elief under [GBL § 349] is not necessarily foreclosed by the fact that the transaction involved an insurance policy."); *Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 532 (2d Dept. 2001) ("An insurance carrier's failure to pay benefits allegedly due its insureds under the terms of a standard insurance policy may constitute a violation of General Business Law § 349.").

There is thus no reasonable dispute as to this important issue: under New York law, the Poly Prep Defendants were free to assign all of their rights and interests against Chubb under New York General Business Law § 349 to JONAH, provided that the assignment instrument sufficiently set out Poly Prep's specific intent to transfer its complete "ownership" of such tort claims to JONAH. Here, the settlement agreement reflects a bona fide assignment of Poly Prep's GBL § 349

claims to JONAH as the requisite transfer of complete ownership of those claims is clearly and unambiguously set forth in the agreement. (*See* **Exhibit C** at ¶ 3, pp. 8-9).

### 6. THE PROPOSED THIRD-PARTY COMPLAINT STATES CLAIMS AGAINST THE PROPOSED THIRD-PARTY DEFENDANTS

### (A). JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS, STATES A CLAIM FOR BREACH OF CONTRACT/INDEMNIFICATION

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Thor Equities, LLC v. Factory Mut. Ins. Co.*, 531 F. Supp. 3d 802, 807 (SDNY 2021) (internal quotation marks and citations omitted). "Under New York law, contracts are 'construed in accord with the parties' intent,' and 'the best evidence of what the parties to a written agreement intend is what they say in their writing' . . . ." *Riseboro Cmty. P'ship Inc. v. SunAmerica Hous. Fund 682*, 482 F. Supp. 3d 31, 36 (EDNY 2020) (*quoting, Greenfield v. Phillies Records, Inc.*, 98 N.Y.2d 562, 569 (2002)). A court must therefore give effect to the intent of the parties as expressed in the clear language of the insurance contract and interpret the contract "according to common speech and consistent with the reasonable expectation of the average insured." *Thor Equities*, 531 F. Supp. 3d at 807 (*quoting, Dean v. Towers Ins. Co. NY*, 19 N.Y.3d 104, 979 (2012)).

It is axiomatixc under New York law that the essential elements for pleading a cause of action to recover damages for breach of contract are: (1) the existence of a contract; (2) plaintiff's performance pursuant to the contract; (3) defendant's breach of its contractual obligations; and (4) damages resulting from the breach. *See, e.g., Dee v. Rakower*, 112 A.D.3d 204, 208 (2d Dept. 2013).

Here, JONAH, as assignee of the Poly Prep Defendants, alleges that: (1) the insurance policies between Poly Prep and Chubb constitute valid and enforceable contracts (TPC ¶ 114); (2)

Poly Prep performed all of its obligations under these contracts (TPC ¶¶ 63, 115); (3) Chubb breached its contractual obligations to Poly Prep by failing and refusing to indemnify its insureds and failing and refusing to make any settlement payments or contributions towards settlement of JONAH's claims (TPC ¶¶ 6, 7, 8, 42, 44, 46, 47, 56, 69, 76, 78, 84, 86, 87, 88, 89, 90, 96, 97, 103, 104, 106, 108, 109, 120, 122, 123); (4) Chubb's denial of insurance coverage to Poly Prep for JONAH's claims compelled the Poly Prep Defendants to enter into a settlement agreement with JONAH, whereby Poly Prep's liability toward JONAH was fixed in the sum of ██████ ███████████████ (TPC ¶¶ 8, 50, 119); (5) Chubb's refusal to indemnify Poly Prep or make any payments or contributions towards the settlement of JONAH's claims constitutes a breach of Chubb's contractual and indemnification obligations to Poly Prep as set forth in the insurance policies at issue (TPC ¶¶ 116, 120, 122, 123, 124); and (6) the Poly Prep Defendants, accordingly, suffered damages resulting from Chubb's aforesaid breach of its contractual and indemnification obligations towards Poly Prep and Dupee (TPC ¶¶ 124).

The Third-Party Complaint thus sufficiently states a claim against the Chubb Insurers for breach of contract/indemnification by JONAH in his capacity as assignee of the Poly Prep Defendants.

In the oft-cited *Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082 (2d Cir. 1986), the Second Circuit set forth the controlling New York standard when an insured entity is compelled to make a settlement to an injured person without consent or contribution from its insurer:

> When an insurer declines coverage, as here, an insured may settle rather than proceed to trial to determine its legal liability. *Bunge Corp. v. London and Overseas Ins. Co.,* 394 F.2d 496, 497 (2d Cir. 1968). In order to recover the amount of the settlement from the insurer, the insured need not establish actual liability to the party with whom it has settled "so long as a potential liability on the facts known to the [insured is] shown to exist, *culminating in a settlement*

> *in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success* against the [insured]." *Damanti v. A/S Inger,* 314 F.2d 395, 397 (2d Cir. 1963), *cert. denied,* 375 U.S. 834 (1963).

*Id.* at 1091 (emphasis added; internal citations omitted) (where a company that chartered a cargo ship sunk on the high seas, killing all crew members and passengers, its insured had "potential liability" to the death claimants).

Numerous New York state and federal courts, citing *Luria,* have emphasized that a settling policyholder does not have to prove its actual liability as a prerequisite to obtaining coverage and indemnification from its insurer. *See, e.g., Uniroyal, Inc. v. Home Ins. Co.,* 707 F. Supp. 1368, 1379 (EDNY 1988) (noting that in *Servidone Construction Corp. v. Security Insurance Co. of Hartford,* 64 N.Y.2d 419 (1985), the Court of Appeals "required only that the claim settled by the insured be a "covered loss" under the policy, and not that the insured independently prove the truth of the underlying claim.").

Every breach of contract/indemnification case based upon an insurer's refusal to settle includes a reasonableness component: *was the settlement agreed upon by the insured reasonable?*

An insurer's failure to meaningfully participate in mediation and/or settlement negotiations may foreclose or limit an insurer's ability to contest the reasonableness of a settlement. *See Utica Mut. Ins. Co. v. Government Empls. Ins. Co.,* 2011 N.Y. Misc. LEXIS 4418, at *6 (Sup. Ct. Nassau Cty. September 13, 2011) ("GEICO refuse[d] to participate in the settlement negotiations, [and] also failed to offer its own view of what a "reasonable settlement" would be."); *Vigilant Ins. Co. v. Travelers Prop. Cas. Co. of Am.,* 243 F. Supp. 3d 405, 417 (SDNY 2017) (where settlement was reached after "very little progress" had been made during earlier mediation, issues of whether $5.3 Million settlement was "reasonable" was an issue of fact for the jury).

As *Luria* makes clear, any determination of the "reasonableness" of a settlement must include an analysis "of the size of possible recovery[.]" *Luria,* 780 F.2d at 1091. The reasoning in *J.P. Morgan Securities v. Vigilant Insurance. Co.,* 57 Misc. 3d 171, 188–89 (N.Y. Sup. Ct. 2017), *rev'd on other grounds*, 84 N.Y.S.3d 436 (N.Y. App. Div. 2018), where Bear Stearns was the insured party, illustrates the importance of such an examination into the "reasonableness" inquiry.

There, in an insurance coverage action where Bear Stearns "undoubtedly was potentially liable" for misconduct, Bear Stearns was facing potentially $520 Million in liability to settle SEC charges. *Id.* at 188. Bear Stearns made a settlement payment to the SEC in the sum of $140 Million and agreed to pay an additional $14 Million to settle various related civil claims. *Id.* On these facts, where Bear Stearns' settlement payment was just twenty-seven percent of the SEC's initial disgorgement demand, the court held that Bear Stearns' insurers "fail[ed] to raise a meaningful triable issue of fact concerning the reasonableness of the settlements." *Id.* The court concluded:

> *Bear Stearns settled both the regulatory and civil actions for a fraction of its claimed exposure.* Under these circumstances, it cannot be said that defending the claims in litigation would have resulted in judgments against Bear Stearns in amounts lower than the settlements.

*Id.* at 189 (emphasis added) (*citing, Clarostat Mfg. Co. v. Travelers Indem. Co.,* 115 A.D.2d 386, 387 (1st Dept. 1985) (in products liability action, insurance company was required to indemnify manufacturer for settlement made without insurer's consent: "Travelers' contention that a factual issue exists as to the reasonableness of the settlement and the amount thereof [was] devoid of merit . . . [because] the record and the [lower] court's decision clearly indicate the reasonableness of the settlement.")).

Here, Poly Prep has extremely robust insurance coverage—from liability policies issued by the Chubb Insurers—for Plaintiff JONAH's claims (1981 to 1985) (the "Underlying Claims").

Based on the number of occurrences of sexual abuse alleged by JONAH, Chubb's collective policy limits for JONAH's CVA claims was equal to or in excess of ███████████████████████. Poly Prep's exposure, moreover, for potential compensatory and punitive damages to be awarded to JONAH was easily greater than ███████████████████ (i.e., well in excess of Chubb's policy limits).

JONAH's claims involved serious allegations of sexual abuse of a minor perpetrated by an individual, Philip Foglietta ("Foglietta"), who was employed by Poly Prep and for whom Poly Prep was responsible. Given the egregious nature of the perpetrator's acts, and the high volume of alleged sexual abuse "occurrences" covered by Poly Prep's liability policies with the Chubb Insurers, JONAH's claims created enormous exposure for Poly Prep, both in liability and damages.

Poly Prep's settlement agreement with JONAH thus permitted Poly Prep, the insured, like the insured (Bear Stearns) in *J.P. Morgan*, to settle "for a fraction of its [potential] exposure." *See id.* at 189. As the *J.P. Morgan* court determined that Bear Stearns' settlement was *prima facie* "reasonable" as a matter of law, considering that the gap between Poly Prep's potential exposure and the agreed upon settlement amount is even wider in this case, an identical result is warranted in this action. At minimum, the "reasonableness" of the settlement is an issue of fact for the jury.

JONAH alleges that his probable recovery against Poly Prep was extraordinarily high—certainly much higher than his current settlement demands—in view of: (1) the recent trend of extremely high verdicts in CVA and sex abuse cases in New York and other jurisdictions; (2) the extraordinary number of alleged distinct "occurrences" of sexual assaults of JONAH (*see* Am. Compl., ¶¶ 66-90); (3) Poly Prep's obvious negligence in supervising both JONAH and Poly Prep's long-offending sexual predator employee, Philip Foglietta (*see* Am. Compl., ¶¶ 286-385); and (4) the extraordinary amount of emotional harm inflicted upon JONAH—as reflected in his

forensic report—as a result of his childhood sexual assaults (*see* Forensic Report, **Exhibit D** hereto).

Because Poly Prep had clear liability for the serious allegations and severe injuries referenced above, a substantial judgment against Poly Prep was a practical certainty if JONAH's claims against the Poly Prep Defendants proceeded to trial. Accordingly, JONAH's last settlement demand in the sum of ███████████████████████ was unquestionably "reasonable," within the combined limits of Poly Prep's applicable insurance policies with Chubb, and but a small fraction of Poly Prep's total exposure in this case.

JONAH respectfully submits that:

(1)      Particularly given the numerous "notice" allegations averred by JONAH in this case, and the damning evidence of negligence gleaned through discovery, JONAH had an extremely strong likelihood of proving Poly Prep's liability in negligence;

(2)      JONAH's settlement demands were reasonable. The potential magnitude of damages that were likely to be awarded to JONAH if his claims proceeded to trial were far greater than his demands as well as the collective policy limits of the Chubb policies at issue. Indeed, within just the last few years, many courts in New York State and throughout the country have awarded plaintiffs who proved that they had suffered childhood sexual abuse damages greater than $25 Million, and, in some instances, greater than $100 Million.

By way of a few limited but representative examples: (i) in September, 2022, an Erie County, New York jury awarded $30 Million in damages to a 45-year-old man who proved that when he was 11 to 13 years old, his Lutheran Church pastor repeatedly sexually abused him; (ii) in October, 2022, a Niagara County, New York jury awarded $65 Million in damages to a 37-year-old woman who was sexually abused as a child for several years in the 1990s by her former YMCA

counselor; (iii) in October, 2022, a Nassau County, New York jury awarded $30 Million in damages to a 53-year-old man whose middle school teacher repeatedly sexually abused him from 1979 (when he was 10) to 1983; (iv) in February, 2023, an Erie County, New York jury awarded $25 Million in damages to a 62-year-old man who was sexually abused from 1970 to 1973 by his Boy Scout troop master; (v) in May, 2023, a Monroe County, New York jury awarded $95 Million in damages to a 59-year-old man who alleged that in 1979 (when he was 15), a Rochester-area priest sexually assaulted him in his car; (vi) in May, 2023, a Niagara County, New York jury awarded a 26-year-old woman $100 Million in damages for sexual abuse committed against her by a family friend from 2008 (when she was 12) through 2012; (vii) in November, 2023, a Riverside County, California jury awarded $135 Million in damages to two men now in their late 30s who were sexually abused by their middle school teacher in 1996 and 1997 (when they were both in 6th grade) until their sophomore years of high school;[1] and (viii) in July, 2023, a Rio Arriba County, New Mexico jury awarded $485 Million in damages to an 8-year-old girl who was repeatedly raped in a New Mexico treatment foster care program which had placed the girl in the home of a foster parent despite knowing that he had previously sexually assaulted other children. In the New Mexico case, the jury awarded the girl $80 Million in compensatory damages and assessed $250 Million in punitive damages against Acadia Healthcare, Inc. ("Acadia"), a prominent national healthcare company; $75 Million in punitive damages against Familyworks, a company owned by Acadia that was licensed to recruit, train, and monitor foster parents in New Mexico—and which placed the girl in the home of a known sexual predator; $75 Million in punitive damages against Desert Hills, the now defunct treatment center (and subsidiary of Acadia) in which the girl was

---

[1] In this case, which principally involved over-the-clothing fondling, the verdict allocated 90 percent of the fault to the Moreno Valley Unified School District—whom plaintiffs alleged should have known that the abuser posed a threat to students—and 10 percent to the abusive teacher.

placed; and $5 Million in punitive damages against the girl's foster parent-abuser. (*See* Various Articles Discussing These Settlements and Verdicts, collectively attached hereto as **Exhibit E**).

Under these circumstances, the Chubb Insurers will be unable to establish as a matter of law that the executed Settlement Agreement between the Poly Prep Defendants and JONAH is not "reasonable" pursuant to New York law.

### (B). JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS, STATES A CLAIM FOR BREACH OF CONTRACT/BAD FAITH

By Chubb's conduct detailed immediately below in section (3), Chubb breached the implied covenant of good faith and fair dealing, relieving the Poly Prep Defendants of any obligation to comply with conditions of the Chubb policies, including any obligation to obtain Chubb's consent to settle or to cooperate with Chubb in the defense of the Underlying Claims. Under New York law, an insurer breaches its obligation to act in good faith for the insured's interest by its "neglect and failure to act protectively when the insured is compelled to make settlement at his peril" or where there is "unreasonable delay by the insurer in dealing with a claim . . . ." *Ansonia Assoc. Ltd. Partnership v. Public Serv. Mutual Ins. Co.*, 257 A.D.2d 84, 86 (1st Dept. 1999). An insurer cannot raise lack of consent as a defense to coverage where the insurer, "either by its conduct, silence, or unreasonable delay, waived the requirement of consent or acquiesced in the settlement." *State Farm Auto. Ins. Co. v. Blanco*, 208 A.D.2d 933, 934 (2d Dept. 1994). An insured is therefore permitted to enter into settlement without the insurer's consent where the insurer's actions demonstrate a "'gross disregard' for its insured's interest" and involve a "deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer." *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 362 (2d Cir. 2006). Chubb has demonstrated a gross disregard for the interests of its insureds, the Poly Prep Defendants, and deliberately or recklessly failed to place on equal footing the interests of the Poly

Prep Defendants with its own interests in considering the multiple reasonable settlement offers it received from JONAH to resolve his Underlying Claims.

Chubb's wait-and-see approach created unreasonable delays that prevented its insureds from resolving the Underlying Claims. This approach was manifestly adopted without consideration for its insureds and was driven instead by Chubb's own concerns about the large potential exposure that the Underlying Claims and other similar CVA claims created for Chubb. Chubb's improper coverage positions, for which it did not have a good-faith basis, undervalued the Underlying Claims and further delayed and frustrated resolution of the Underlying Claims. These positions and Chubb's unwillingness to consent to settlement offers demonstrate Chubb's conscious or knowing indifference to the probability that the Poly Prep Defendants would be held personally liable for a large judgment if the Underlying Claims were not resolved within policy limits. Chubb's conduct constitutes a breach of the covenant of good faith and fair dealing implied in the Chubb policies and constitutes a waiver of any consent, cooperation, or similar provision in those policies.

The Poly Prep Defendants entered into the Settlement Agreement with JONAH subsequent to and as a result of Chubb's breach, which exposed the Poly Prep Defendants to substantial liability for the Underlying Claims. Pursuant to the executed Settlement Agreement, Poly Prep's liability to JONAH has become legally fixed for the sum of ███████████████████. Because the Underlying Claims are covered by the Chubb policies and are not otherwise subject to any exclusion, JONAH, as an assignee of the Poly Prep Defendants' claims, is entitled to indemnification under the Chubb policies. As a direct and proximate result of Chubb's bad faith conduct and refusal to indemnify its insureds, JONAH has suffered and continues to suffer damages in an amount to be determined at trial.

**(C).  JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS, STATES A CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING/BAD FAITH**

In *Pavia v. State Farm Mutual Automobile Insurance Co.*, 82 N.Y.2d 445 (1993), the New York Court of Appeals held that, where settlement is rejected, an insurer will be deemed to have acted in bad faith if it "advanced its own interests by compromising those of the insured." *Id.* at 452. "[I]n order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a "gross disregard" of the insured's interest—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer . . . . In other words, a bad faith plaintiff must establish that the defendant *insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted." Id.* at 453 (emphasis added).

"There is no formula to determine whether an insurer acted in good faith." *In re AXIS Reinsurance Co. Refco Related Ins. Litig.*, 2010 U.S. Dist. LEXIS 33377, at *27 (SDNY March 7, 2010). In *Pavia,* the Court of Appeals set forth a number of factors that a court *must* consider when making this bad faith determination: (1) plaintiff's likelihood of success on the issue of liability in the underlying action; (2) the potential damages award; (3) the financial burden each party is exposed to if the insurer refuses to settle; (4) whether the claim was properly investigated; (5) the information available to the insurer when the demand for settlement was made; and (6) "any other evidence which tends to establish or negate the insurer's bad faith in refusing to settle." *Pavia*, 82 N.Y.2d 455 at 455.

In *Smith v. General Accident Insurance Co.*, 91 N.Y.2d 648 (1998), the New York Court of Appeals emphasized that the enumerated *Pavia* factors for determining bad faith were "not

intended to be exclusive[.]" *Id.* at 654 ("We expressly noted in *Pavia* that the courts could also consider 'any other evidence which tends to establish . . . the insurer's bad faith in refusing to settle.'" (*quoting, Pavia*, 82 N.Y.2d at 445)). This caveat is important because this court, when considering whether the Chubb Insurers acted in bad faith by refusing to settle JONAH's claims, may also consider all evidence undergirding JONAH's General Business Law § 349 claims as part of that analysis.

In *New England Insurance Co. v. Healthcare Underwriters Mutual Insurance Co.*, 295 F.3d 232 (2d Cir. 2002), *vacated in part on other grounds*, 352 F.3d 599 (2d Cir. 2003), the Second Circuit explained that in a bad faith failure to settle a case, a plaintiff's probability of success on the issue of liability is but "one aspect of the multifactor balancing test" mandated by *Pavia*. *Id.* at 243. Despite *Pavia's* passing reference to liability needing to be "clear," under New York law, there is no "threshold requirement of 'clear liability' in a bad faith cause of action." *Id.* at 243. To the contrary, New York law provides that in considering a bad faith action, a jury *must* consider a plaintiff's probability of success on liability along with all other factors set forth by the Court of Appeals in *Pavia*. *Id.* at 242–43 (court properly used New York PJI 4:67, "which instructed the jury to analyze [plaintiff's bad faith] claim and [insurer's] actions under [*Pavia*-mandated] multifactor approach."); *see also Pinto*, 221 F.3d at 399 ("No pat formula applies to the wide variety of fact patterns that occur, or readily resolves whether an insurer acted in good faith . . . . *[A] number of factors must be evaluated*." (emphasis added)).

In analyzing the first *Pavia* factor, JONAH had an extremely strong likelihood of prevailing on the issue of liability in the underlying action because, *inter alia*: (1) in 1966 (Foglietta's first year at Poly Prep), William Jackson, a Poly Prep student, told several high-ranking Poly Prep administrators that Foglietta had sexually abused him (*see* AC, ¶¶ 161-172); (2) in 1971, ███

██████, a Poly Prep Day Camp attendee, told Defendant Ralph Dupee that Foglietta had sexually assaulted him at Poly Prep during camp (*see* Selected Excerpts of February 22, 2023 Deposition of ██████, **Exhibit F** hereto, at 41:4-46:22); (3) in a prior sexual abuse case, Poly Prep's headmaster William M. Williams admitted that *in the early 1970s* he received several anonymous letters which accused Foglietta of sexual misconduct with children (*see* Selected Excerpts of June 30, 2010 Deposition of William M. Williams, **Exhibit G** hereto at 84:12-154:14); (4) in or about 1973-1974, ██████, a Poly Prep student, and his parents notified several Poly Prep administrators that Foglietta was sexually abusing boys at or near Poly Prep (*see* Selected Excerpts of June 15, 2023 Deposition of ██████, **Exhibit H** hereto at 35:4-42:22); (5) in the mid-1970s, Poly Prep's administrators moved Foglietta's office into the bowels of the boys' locker room—free from *any* administrative supervision—which provided Foglietta unfettered daily access to scores of boys who were showering and undressing (*see* AC, ¶¶ 209-210; (6) in 1983–1984, Poly Prep's football coach was ██████, who testified that, in 1973, when ██████ was a Poly Prep student, Foglietta had tried to sexually abuse him during an overnight visit (*see* Selected Excerpts from April 26, 2023 Deposition of ██████, **Exhibit I** hereto at 24:15-26:7); (7) in the late 1970s, Gray Montague, a Poly Prep student, told several Poly Prep administrators that Foglietta had sexually abused him (*see* AC, ¶¶ 237-248); (8) JONAH alleges that, in or about 1984, Poly Prep's Athletic Director, Harlow Parker, personally observed Foglietta sexually abusing him in Poly Prep's training room (*see* AC, ¶ 79); and (9) JONAH's forensic evaluation from Fifth Avenue Forensics, dated January 24, 2024 (**Exhibit D** hereto), demonstrates that JONAH has suffered and continues to suffer from severe emotional harm as a result of his frequent sexual assaults as a child.

*New England Insurance* further explained that *Pavia's* directive—i.e., that "[t]he plaintiff in a bad-faith action must show that the insured lost an actual opportunity to settle the . . . claim at a time when all serious doubts about the insured's liability were removed," *Pavia*, 82 N.Y.2d at 449—requires a jury to "determine whether a causal connection exists between the insurer's bad faith once established and the loss of actual settlement opportunity." *New England Ins. Co.*, 295 F.3d at 241. Accordingly, *after* a jury finds that an insurer acted in bad faith under *Pavia's* mandated multi-factor analysis, a court will then instruct a jury "to assess 'causation' by determining whether . . . [the insurer] had an actual opportunity to settle the [plaintiff's] action[.]" *Id.* at 242.

As evidenced by the averments in the proposed Third-Party Complaint, Chubb had numerous "actual opportunities" to settle JONAH's action pursuant to, *inter alia*: (1) JONAH's settlement demands to Poly Prep in 2021 and 2022 (*see* TPC, ¶¶ 27–29); (2) JONAH's settlement demand of ███████ which was tendered to Poly Prep and its insurers on or about September 25, 2023 (*see* TPC, ¶ 32); (3) JONAH's settlement demand to Chubb in the amount of ███████ pursuant to his counsel's February 26, 2024 letter to Chubb's counsel (*see* TPC, ¶¶ 39-40); and (4) the mediation involving, *inter alia*, Poly Prep, Dupee, JONAH, and Chubb, which was conducted in New York City by Roger Kramer, Esq. on March 7–8, 2024 (*See* TPC, ¶ 43).

*Despite these numerous actual settlement opportunities, Chubb—at all times—failed to offer a single dollar to settle JONAH's case*. In fact, at said mediation, Chubb's counsel advised Poly Prep's counsel that Poly Prep should consider itself a "prudent uninsured." (*See* TPC, ¶ 44).

Any determination as to "whether an insurer has acted in bad faith when refusing to settle a case is a highly fact-dependent analysis . . . [which] cautions against finding bad faith—or its absence—on a motion for summary judgment." *In re Axis*, 2010 U.S. Dist. LEXIS 33377, at *29 (*quoting, Pinto*, 221 F.3d at 399); *see also, Pinto*, 221 F.3d at 400 (the "gross disregard" standard

may be satisfied by a finding of "recklessness on the part of the insurer" which presents "a question of fact for a jury to resolve."). *But see Taveras v. American Transit Ins. Co.*, 2011 N.Y. Misc. LEXIS 4826, at *62 (Sup. Ct. Kings Cty. October 17, 2011) ("[W]hen all of the [*Pavia*] factors are assessed as a whole . . . , there is no doubt that plaintiff established a prima facie case of [insurer's] bad faith refusal to settle [plaintiff's] claim and plaintiff proved that [insurer] acted with gross disregard for the interests of its insured[s].").

In *Ansonia Associates Ltd. Partnership v. Public Service Mutual Insurance Co.*, 257 A.D.2d 84 (1st Dept. 1999),[2] the Appellate Division for the First Department suggested that "an insurer's cavalier indifference to its insured's exposure to potentially ruinous punitive damages" may support a bad faith finding. *Id.* at 88. *See New Eng. Ins. Co.*, 295 F.3d at 241 ("That the large judgment for which the insured would be held personally accountable might consist of an award of punitive damages does not detract from the insurer's complicity in exposing the insured to significant financial loss"). *Ansonia* is highly relevant because there is no doubt that Poly Prep was vulnerable to a potentially high punitive damages award for its alleged misconduct. *See also Hanover Ins. Co. v. Vt. Mut. Ins. Co.,* 2015 U.S. Dist. LEXIS 184737, at *17 (NDNY February 11, 2015) (Plaintiff plausibly alleged a bad faith refusal to settle claim where, *inter alia*, "the settlement offer was substantially below the outer policy limits."). Because Chubb failed to make reasonable settlement offers to JONAH or otherwise meaningfully participate in the "mediation" or "settlement negotiations," despite good faith demands from JONAH, Chubb effectively denied Poly Prep coverage to the extent necessary to trigger Poly Prep's right to enter into the proposed stipulated settlement with JONAH. The Proposed Third-Party Complaint is replete with

---

[2] This case was cited with approval by the Second Circuit in *New England Insurance Co. See New England Ins. Co.*, 295 F.3d at 242.

allegations that Chubb's conduct constituted a gross disregard of the Poly Prep Defendants' interests (*see* TPC, ¶¶ 32-48 & 126-132).

JONAH alleges that, *inter alia*, Chubb deliberately, recklessly, and/or willfully failed to place on equal footing the interests of its insureds, the Poly Prep Defendants, when considering and categorically rejecting the numerous settlement offers from JONAH, (*see* TPC ¶¶ 126-132), and that Chubb thus engaged in a pattern of behavior that evinced a conscious or knowing indifference to the probability that the Poly Prep Defendants would be held personally accountable for a large judgment if a settlement offer within Chubb's policy limits was not accepted. (*See* TPC ¶¶ 89-90).

By failing to provide reasonable settlement contributions to the Poly Prep Defendants, Chubb recklessly left Poly Prep exposed to a potential judgment from JONAH in an amount, conservatively, in excess of ███████████████████. Pursuant to Poly Prep's assignment of its bad faith claims to JONAH, Chubb must now defend its unconscionable conduct during the prolonged settlement "negotiations" before a jury. The jury will then need to weigh the issue of Chubb's liability in the context and against the backdrop of the testimony of JONAH as to both the horrifying sexual assaults he endured as a child at Poly Prep, the overwhelming evidence of Poly Prep's legal culpability, and the well-documented, severe, and life-long damages that JONAH incurred as a direct result of his childhood traumas.

**(D). JONAH, AS ASSIGNEE OF THE POLY PREP DEFENDANTS AND IN HIS INDIVIDUAL CAPACITY, STATES A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349/DECEPTIVE BUSINESS PRACTICES**

New York General Business Law § 349 declares that "[d]eceptive acts or practices in the conduct of any business, trade in commerce in the furnishing of any service in this state are . . . declared unlawful." To state a *prima facie* cause of action under § 349, "a plaintiff must allege that

the defendant's challenged act was materially misleading and resulted in injury to the plaintiff."

*Kickertz v. New York Univ.,* 110 A.D.3d 268, 272 (1st Dept. 2013).

In *Rockefeller University v. Aetna Casualty & Surety Co.,* 2023 N.Y. Misc. LEXIS, at *2978 (N.Y. Cty. Sup. Ct. December 8, 2023), which involved New York CVA claims against Chubb insurers, the court noted that the pleadings allege that the "Insurer Defendants" have:

> taken improper coverage positions and engaged in unjustifiable delays, which they improperly and without a good-faith basis purported to justify as interpretations of the same standard-form insurance policy language that, upon information and belief, [the Insurer Defendants] use in insurance policies sold to many other educational and hospital institutions in New York and elsewhere, in a manner that would affect, apply to and injure all of their policyholders with similar policy language that suffer losses and bring coverage claims to [the Insurer Defendants] expecting good faith and fair treatment (NYSCEF Doc. 165 at ¶ 145).

*Id.* at *9.

In denying the Insurer Defendants' motion to dismiss, the court held that because the plaintiff university alleged that the Insurer Defendants' conduct had "a broad impact on other educational and hospital institutions conducting business with the Insurer Defendants," it "sufficiently alleg[ed] the requisite consumer-oriented conduct to state a cause of action under General Business Law § 349." *Id.* at *4.

The *Rockefeller University* Court's decision is consistent with holdings by numerous New York state and federal courts which have sustained § 349 claims in an insurance context. *See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992) (holding that § 349 was applicable to insurers where plaintiffs demonstrated that similar deceptive practices had been employed by defendant insurance company against multiple insureds); *Kurschner v. Mass. Cas. Ins. Co.*, 2009 U.S. Dist. LEXIS 16623, at *11-14 (EDNY 2009) ("Where, as here, a defendant allegedly enters into 'contractual relationship[s] with customers nationwide' via a standard form

contract and has allegedly committed the challenged actions in its dealings with multiple insureds, such behavior plausibly affects the public generally and, therefore, plaintiff has sufficiently pled the requirement of 'consumer-oriented' conduct within the meaning of Section 349 to survive a motion to dismiss.") (internal citations omitted); *Binder v. Nat'l Life*, 2003 U.S. Dist. LEXIS 8431, at \*17-19 (SDNY 2003) (Insured permitted to amend complaint to include § 349 claim where: (1) the denial of his claim for benefits, if indicative of a larger practice, will potentially affect the many consumers who hold the same type of policy"[;] such allegations were sufficient to establish that the practice was consumer-oriented; and (2) plaintiff insured's allegation that insurance company "made a practice of inordinately delaying and then denying a claim without reference to its viability" constituted a "deceptive practice."); *Joannov v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 532 (2d Dept. 2001) ("An insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349 … The strict pleading requirements for causes of action sounding in common-law fraud … do not apply to causes of action sounding in violation of General Business Law § 349 …").

Plaintiff JONAH has likewise alleged that the Chubb insurers' conduct—their stubborn refusal to honor a multitude of liability policies with respect to JONAH's (and others') childhood sexual abuse claims—has affected, applied to, and injured *many* educational institution policyholders with similar policy language as in the standard form Poly Prep insurance policies at issue. (*See* TPC ¶¶ 99-100, 105). Pursuant to the *Rockefeller University* Court's rationale, therefore, JONAH has sufficiently pled the requisite "deceptive practices" and "consumer-oriented" conduct and thus has stated a cause of action against the Chubb Insurers for violation of New York General Business Law § 349.

Moreover, because the Poly Prep Defendants and JONAH have all suffered a direct injury as a result of Chubb's conduct, JONAH has a valid cause of action against Chubb under GBL § 349 as both an assignee of the Poly Prep Defendants' claims and in his individual capacity. Although Poly Prep and Dupee are the "consumers" in these circumstances—i.e., the parties that purchased insurance from Chubb—§ 349 confers standing to more than just consumers. By its plain language, GBL § 349(h) confers standing to "*any person* who has been injured by reason of *any violation* of this section . . . ." GBL § 349(h) (emphasis added). Indeed, the New York Court of Appeals has stated that "limit[ing] the scope of section 349 to only consumers" would be "in contravention of the statute's plain language permitting recovery by any person injured 'by reason of' any violation." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 207 (2004). Therefore, where a party is "directly injured" by an insurer's conduct that violates GBL § 349, that injury is "sufficient to confer standing upon the plaintiffs under General Business Law § 349(h)." *North State Autobahn, Inc. v. Progressive Ins. Grp.*, 102 A.D.2d 5, 14 (2d Dept. 2012) ("the right to bring a private action [under Section 349] [is] not limited to those acting in a consumer role[.]").

Here, JONAH has suffered a direct injury as a result of Chubb's conduct. Chubb's wait-and-see approach has obstructed and delayed JONAH's attempts to receive compensation for his grievous injuries. Chubb's pattern and practice of undervaluing CVA claims has reduced the funds available to resolve JONAH's claims and has required JONAH to engage in further litigation and incur additional expenses in order to obtain compensation for his claims. Chubb's conduct, which violates GBL § 349, has directly injured JONAH and confers on him standing to bring an independent claim under GBL § 349(h), in addition to his § 349 claim as an assignee of Poly Prep and Dupee.

## 7. NEW YORK LAW AUTHORIZES THE JONAH-POLY PREP SETTLEMENT

New York law authorizes Poly Prep to execute a settlement agreement with JONAH that includes both an assignment and a confession of judgment. New York law further permits JONAH to execute the covenant to enforce the judgment against the Poly Prep Defendants to a limited extent. The holding in *Ostrowski v. American Safety Indemnity Co.,* 2010 U.S. Dist. LEXIS 104874 (EDNY 2010), is instructive. There, in a construction accident case, prior to trial, the injured party reached a settlement agreement with the insured contractor for the insured to pay plaintiff $495,000.00 and execute a confession of judgment for that amount. *Id.* at *4. Additionally, the insured contractor assigned all of its rights and interests under its insurance policy to the plaintiff so that he "might obtain payment of the judgment" from its liability insurance company. *Id.* "As part of the settlement agreement, [the plaintiff] agreed not to execute the judgment against [the insured contractor] or to enter the judgment for one year following its execution." *Id.*

The defendant insurance company argued that the injured party could not assert an indemnification claim against it because New York Insurance Law § 3420(a)(2) barred such a claim. *Id.* at *7.

Defendant argued that because the confession of judgment was never entered, and the requisite notice of entry of judgment as mandated by Insurance Law § 3420 was not provided, the plaintiff lacked standing. *Id.* Plaintiff countered that he was bringing the action as an assignee of the insured, rather than as a third-party lacking privity, and, therefore, compliance with Insurance Law § 3420 was unnecessary. *Id.*

The United States District Court for the Eastern District of New York held in *Ostrowski* that assignment of indemnification rights—even without entry of a judgment against the insured—

was sufficient "for an injured party to maintain a direct cause of action against an insurer." *Id.* at

*8. The *Ostrowski* Court explained:

> [Plaintiff] as assignee of [the insured], is no longer a stranger to the
> underlying insurance policy. It is well settled law that an assignee
> "stands in the shoes" of the assignor and is subject to all the benefits
> that could have been asserted against the assignor at the time of the
> assignment. Thus, it follows that any rights [the insured] had against
> [its insurer] have inured to [the injured plaintiff].

*Id.* at *8 (*citing, Grand Crossing L.P. v. United States Underwriters Ins. Co.,* 2007 U.S. Dist.

LEXIS 94244 (SDNY 2007)) (Plaintiffs, owners of a construction site property, were authorized

to file suit as assignees of their former subcontractor against subcontractor's insurer and seek

contribution against the settlement of a wrongful death claim that had been brought against them);

*Home Depot U.S.A., Inc. v. Nat'l Fire & Marine Ins. Co.,* 55 A.D.3d 671, 674 (2d Dept. 2008)

(Home Depot, as assignee of insured, was permitted to sue seeking a determination of coverage

issues as they applied to insured. "[T]he assignment agreement did not constitute a release of

[insured's] liability in the underlying personal injury action.")).

In *Westchester Fire Insurance Co. v. Utica First Insurance Co.,* 40 A.D.3d 978 (2d Dept.

2007), a personal injury action, a general contractor settled a third-party action against the

subcontractor for $300,000.00. *Id.* at 94. The general contractor, however, agreed not to execute

against the subcontractor for the settlement amount, and in exchange, the subcontractor agreed to

assign to the general contractor all of his rights against his insurer. *Id.* The Appellate Division for

the Second Department held that the assignee could maintain a direct action against the insurer,

even though no judgment was ever entered against the assignor/insured, and the assignee never

received any monies from the assignor/insured:

> It is of no moment that [assignee] agreed never to execute against
> [assignor/insured] for this settlement amount. This narrow restraint

was not tantamount to a release of [the assignor/insured's] liability in the underlying personal injury action. Moreover, where, as here, "*the policy is a contract for protection against liability, the insured may turn to [the insurer] for relief as soon as his liability has become legally fixed and established, although he has not suffered actual loss."*

*Id.* at 980 (*quoting, M&M Elec. v. Commercial Union Ins. Co.,* 241 A.D.2d 58, 61 (2d Dept. 1998) (emphasis added)).

As Poly Prep's liability is now "legally fixed" pursuant to the settlement agreement in a "reasonable" amount of ███████████████████████, JONAH—having obtained an assignment from the Poly Prep Defendants—can seek recovery from Chubb for all of the balance of the settlement amount. This is true regardless of the fact that Poly Prep's out-of-pocket actual loss (i.e., the amount it agreed to pay JONAH) was ███████████, while, pursuant to the settlement agreement and confession of judgment, Poly Prep's legal liability to JONAH was fixed in the amount of ███████.

In *Intelligent Digital Systems, LLC v. Beazley Insurance Co.*, 207 F. Supp. 3d 242 (EDNY 2016), District Judge Arthur D. Spatt engaged in a scholarly analysis of the law in New York (and other jurisdictions) in order to determine whether an insurance company was legally obligated to pay a claim under a liability policy where a settlement agreement (and stipulated judgment) was reached in the underlying negligence action. There, the insured's indemnification claim was assigned to the injured plaintiff, and, as here, the injured plaintiff agreed not to execute or collect against the stipulated judgment against the insured's personal assets. Judge Spatt, relying upon decisions from various New York courts and a majority of courts in other jurisdictions, answered this dispositive question in the affirmative. *Id.* at 246–47.

The District Court for the Eastern District of New York's language in *Intelligent Digital Systems* demonstrates that the framework of JONAH's settlement with the Poly Prep Defendants—

where Plaintiff did *not* release said Defendants (or its insurers) from liability—is legally appropriate and should be ratified by this Court:

> [Here] is precisely what happened in this case. The Individual Insureds agreed to consent judgments on the Plaintiffs' claims in the underlying action, which they were legally obligated to pay. *As part of those judgments, the Insureds assigned their rights to coverage under the Policy to the Plaintiffs in exchange for a covenant not to enforce the unpaid portions of those judgments against the Insureds personally.* The settlement stipulations made clear that "nothing contained in th[e] Stipulation[s] shall constitute a waiver or release of Plaintiffs' . . . right to assert claim or rights of action against the [Defendant/Insurer]."

*Id.* at 247 (emphasis added).

Judge Spatt held that "the term 'legally obligated to pay' encompasses the consent judgments against the Individual Insureds, *irrespective of the covenants not to enforce those judgments*." *Id.* (emphasis added). Accordingly, the court concluded that "the Individual Insureds did suffer a 'Loss' under the Policy, and the Plaintiffs, standing in the shoes of [the Insureds], are entitled to seek coverage under the Policy for those judgments, barring proof of another exclusion." *Id. This analysis applies to the facts in this case.*

In *Illinois Union Insurance. Co. v. US Bus Charter & Limo Inc.*, 291 F. Supp. 3d 286 (EDNY 2018), a class action involving alleged violations of The Telephone Consumer Protection Act, 42 U.S.C. § 227, Senior District Judge Frederic Block again examined this issue. There, the plaintiff class entered into a settlement agreement with defendant bus company (US Coachways) whereby the bus company agreed to accept a $50 Million judgment against it provided that the judgment could not be satisfied or executed from any of its assets or property and/or the assets or property of its agents and assigns, other than its insurer (Illinois Union). *Id.* at 289. Defendant bus

company agreed to make a contribution to the settlement ($50,000.00) in an amount less than one percent of the total settlement and judgment amount. *Id.*

Judge Block, citing and agreeing with *Intelligent Digital Systems*, concluded that, as the New York intermediate courts are in agreement with the majority rule in other jurisdictions, "the New York Court of Appeals would find that *an insured remains 'legally obligated to pay' despite an assignment of indemnification rights to a third party and the third party's covenant not to execute against the insured*." *Id.* at 292 (emphasis added). The court explained:

> Here, application of that rule requires coverage for [plaintiff's] claim. US Coachways assigned its rights under the policy to [plaintiff], and [plaintiff] agreed not to execute the Judgment against US Coachways. Furthermore, the Settlement Agreement explicitly provided that [plaintiff] was not releasing US Coachways from liability. US Coachways therefore remained "legally obligated to pay" the Judgment, and it falls squarely within the Policy's definition of covered "Damages."

*Id.*

*Intelligent Digital Systems* and *Illinois Union Insurance* remain the last word on this issue in the New York state and federal courts, as no New York state or federal court has addressed this precise issue since 2018.

## II.     JONAH SHOULD BE GRANTED LEAVE TO PROCEED IN THIS ACTION UNDER A PSEUDONYM

Proposed Third-Party Plaintiff JONAH DOE ("JONAH") seeks leave to proceed in this Third-Party action under a pseudonym (i.e., "JONAH DOE"). Although JONAH seeks to prevent the public disclosure of his true identity, the proposed Third-Party Defendants, Aetna and Federal, are fully aware of JONAH's true identity. (*See* Affidavit of Jonah Doe, sworn to on September 13, 2024 ("Jonah Doe Aff.") at ¶ 31.

Federal Rule of Civil Procedure 10(a) provides that "[t]he title of [a] complaint must name all the parties." The Second Circuit has recognized, however, that the use of a pseudonym is appropriate in limited circumstances where the reasons for anonymity outweigh the public's right of access to judicial proceedings and any prejudice to a defendant. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).

"Courts have found that the 'substantial privacy right' test is satisfied when [as here] a plaintiff is required to disclose information of the utmost intimacy[,]" in particular, details of sexual assaults. *Fla. Abolitionist v. Backpage.com LLC*, 2017 U.S. Dist. LEXIS 75744, *2 (M.D. Fla.) (allowing victim of childhood sex trafficking to use pseudonym) (citations omitted). Accordingly, this Court has recognized that "*sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity*." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (EDNY 2006) (emphasis added) (Court allowed a plaintiff who alleged that a rabbi had sexually abused him when he was a child to proceed anonymously) (*citing*, *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses.").

As it is well-recognized that "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes," *Doe No. 2*, 242 F.R.D. at 195, numerous courts in this circuit have granted plaintiffs' requests to proceed under pseudonyms, when they have alleged that they were victims of sexual abuse or rape. *See Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, at *8 (NDNY 2016) (allowing plaintiff to proceed anonymously given the "highly personal and sensitive nature of . . . case" involving alleged rape, where "forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges"); *Doe v. Indyke*, 2019 U.S. Dist.

LEXIS 157124, at *2 (SDNY 2019) (plaintiff alleged "an on-going pattern of sexual assault and abuse beginning when [she] was seventeen-years-old"); *Doe v. Nygard*, 2020 U.S. Dist. LEXIS 151186, at *1-2 (SDNY 2020) (plaintiffs alleged that when they were fourteen and fifteen-years-old, respectively, they were statutorily raped by the girlfriend of a world-renowned fashion designer); *Doe v. Baram*, 2021 U.S. Dist. LEXIS, at *1-2 (SDNY 2021) (plaintiff alleged that when she was seventeen-years-old, defendant lured her to engage in commercial sex acts (and that she was raped) in connection with an alleged international sex trafficking operation); *Doe v. Gooding*, 2021 U.S. Dist. LEXIS 141877, at *2 (SDNY 2021) (Court granted plaintiff's motion to proceed pseudonymously, where she alleged that defendant—a notable actor—had raped her); *Doe v. AR*, 2021 U.S. Dist. LEXIS 168507, at *3-4 (WDNY 2021) (Court permitted plaintiff, who had filed a complaint under The New York CVA, to proceed under a pseudonym).

In *Sealed Plaintiff*, the Second Circuit laid out ten non-exhaustive factors which a court must consider in determining whether a plaintiff may proceed in a litigation under a pseudonym. *Sealed Plaintiff*, 537 F.3d at 190.[3] Although the ten *Sealed Plaintiff* factors are highly instructive, the Second Circuit emphasized that courts are not required to consider any or all of them, nor must they use any particular approach, so long as they balance the relevant interests at stake when reaching a conclusion. *Id.* at 191 n.4.

JONAH has filed an Affidavit which supports his motion for leave to proceed under a pseudonym. (*See* Jonah Doe Aff.). An analysis of the *Sealed Plaintiff* factors shows that the majority of the factors weigh heavily in favor of JONAH proceeding under a pseudonym:

**FACTOR ONE:**       **Whether the litigation involves matters that are highly sensitive and of a personal nature:**

JONAH alleges that, as a child, Foglietta sexually abused him more than 100 times. (Jonah

---

[3] The factors discussed in this Brief recite *verbatim* the factors set forth by the Second Circuit in *Sealed Plaintiff*.

Doe Aff. at ¶¶ 4-8). As this litigation unquestionably involves matters that are "highly sensitive" and of "a personal nature," this factor weighs heavily in favor of anonymity. *See Doe No. 2*, 2006 U.S. Dist. LEXIS 80859, at *5-6; *Nygard*, 2020 U.S. Dist. LEXIS 151186, at *7 (details of sexual assaults that occurred while plaintiffs were minors trigger "a strong right of privacy in this information"); *Baram*, 2021 U.S. Dist. LEXIS 147030, at *7 (rape and sexual assault allegations are "highly sensitive and personal in nature"); *Gooding*, 2021 U.S. Dist. LEXIS 141877, at *4.

**FACTOR TWO:**  **Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously, or even more critically to innocent non-parties:**

JONAH alleges that he has never told his mother that he was repeatedly and viciously sexually abused by Philip Foglietta as a child attending Poly Prep, and that the disclosure of such horrific sexual abuse to his mother at this late date would cause her to suffer substantial emotional distress, mental anguish and pain and suffering, and guilt.  (Jonah Doe Aff. at ¶¶ 23-24).

Additionally, JONAH attests that the public disclosure of his sexual assaults as a child, and involvement in this litigation, could cause his children to suffer stigmatization, embarrassment, humiliation, and/or emotional distress.  (Jonah Doe Aff. at ¶ 25).

As JONAH's family members are "innocent parties," this factor weighs in favor of anonymity. *See Gooding*, 2021 U.S. Dist. LEXIS 141877, at *4 ("permitting the details of these highly personal claims to be publicly associated with [plaintiff] may [negatively] impact her family if her identity were revealed at this stage").

This factor thus weighs in favor of anonymity.

**FACTOR THREE:**  **Whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity:**

As the *Indyke* Court stated**,** "[t]he nature of the allegations make it logical to conclude at

this early stage that disclosure of plaintiff's identity would cause further psychological harm to plaintiff which is the precise harm the litigation seeks, in part, to redress." *Indyke*, 2019 U.S. Dist. LEXIS 157124, at *2-3; (*see* Jonah Doe Aff. at ¶¶ 20-22, where JONAH attests that he will likely suffer severe emotional distress, mental pain and suffering, and anxiety, if compelled to publicly disclose his identity).

In addition to the mental harm JONAH would likely suffer, compelled disclosure of his identity would also harm society-at-large by potentially deterring other sex abuse victims from reporting their sexual assaults. *See Doe No. 2*, 242 F.R.D. at 195 ("[T]he public has a strong interest in protecting the identities of sexual assault victims *so that other victims will not be deterred from reporting such crimes*.") (emphasis added). This public interest is even stronger when, as here, "sprawling allegations of widespread sexual abuse [have been] levied against [a particular alleged sexual predator] in related proceedings." *Baram*, 2021 U.S. Dist. LEXIS 147030, at *7.

This factor—for two discrete reasons—weighs heavily in favor of anonymity.

**FACTOR FOUR:** **Whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age:**

JONAH attests that, as a result of his sexual abuse as a child, he has developed physical and mental conditions that make him particularly vulnerable to disclosure. (*See* Am. Compl., *passim*; Jonah Doe Aff. at ¶¶ 20-23). JONAH also alleges that he has required, and may continue to require, medical and psychological treatment at considerable costs. (*See* Jonah Doe Aff. at ¶ 20).

Accordingly, this factor weighs in favor of anonymity. *See Indyke*, 2019 U.S. Dist. LEXIS 157124, at *3.

**FACTOR FIVE:**      **Whether the suit is challenging the actions of the government or that of private parties:**

As this action exclusively involves a dispute between private parties, rather than government entities—this factor weighs against anonymity.

**FACTOR SIX:**      **Whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court:**

Aetna and Federal already know the identity of JONAH. (*See* Jonah Doe Aff. at ¶ 31); *see also*, *Baram*, 2021 U.S. Dist. LEXIS 147030, at *7-8 ("[d]efendant] will experience little to no prejudice by allowing Doe to remain anonymous at this stage of the proceeding, as Doe has agreed to make her name and identity known to [Defendant], subject to an appropriate protective order."); *Nygard*, 2020 U.S. Dist. LEXIS 151186, at *7 (same); *Gooding*, 2021 U.S. Dist. LEXIS 141877, at *5 (Court could not discern whether defendant would suffer any prejudice from allowing plaintiff to proceed as Jane Doe, "especially because he already knows her identity.").

The protective order proposed by JONAH provides Third-Party Defendants with a full and fair opportunity to engage in discovery, and otherwise investigate and defend against JONAH's claims. JONAH does not object to full and open disclosure for discovery purposes on the reasonable condition that Third-Party Defendants do not disclose his name and identity to the general public. *See Indyke*, 2019 U.S. Dist. LEXIS 157124, at *4; *see also*, *Doe No. 2*, 242 F.R.D. at 198 (defendants failed to establish any prejudice, when they did "not identify how their ability to conduct discovery or impeach plaintiff's credibility [would be] impaired . . . by permitt[ing] [plaintiff] to proceed under a pseudonym.").

In any event, any potential prejudice to Third-Party Defendants may easily be mitigated by this Court by permitting JONAH's real name to be included in documents to be filed with the Court

under seal. *See Indyke*, 2019 U.S. Dist. LEXIS 157124, at *4. This will likely eventually need to be done to some extent in this case, not just to protect the identity of JONAH, but to also protect the identities of his fellow Plaintiffs in the underlying action, as well as scores of other sexual abuse victims of Foglietta.

This factor weighs strongly in favor of anonymity.

**FACTOR SEVEN:** **Whether the plaintiff's identity has thus far been kept confidential:**

JONAH attests that his true identity has thus far been kept confidential (including even from members of his immediate family). (*See* Jonah Doe Aff. at ¶¶ 22-24). As such, this factor weighs in favor of anonymity.

**FACTOR EIGHT:** **Whether the public interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity:**

As stated above, "the public . . . has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe No. 2*, 242 F.R.D. at 195; *see also*, *Baram*, 2021 U.S. Dist. LEXIS 147030, at *7; *Indyke*, 2019 U.S. Dist. LEXIS 157124, at *4 (In this case because plaintiff alleged that she was sexually abused when she was seventeen, "disclosure of the identity of the plaintiff is not likely to be of a legitimate importance or benefit to the public.").[4]

In *Doe v. Good Samaritan Hospital*, 66 Misc. 3d 444 (Sup. Ct. Nassau Cty. 2019), Justice Steven Jaeger granted a CVA-case plaintiff's motion to proceed in the action under a pseudonym, and stated, "[t]he court believes the only purpose public revelation of plaintiff's name could have would be to expose plaintiff to the potential harm of public disclosure and perhaps deter her from litigating the matter." *Id.* at 450. JONAH shares Justice Jaeger's concern. (*See* Jonah Doe Aff. at

---

[4] This is especially true in this case because the alleged sexual predator, Philip Foglietta, died in 1998. (*See* Am. Compl. ¶ 33).

¶ 29, in which JONAH attests that the public disclosure of his identity could deter him from proceeding as a litigant in this case).

This factor thus weighs heavily in favor of anonymity.

**FACTOR NINE:** **Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities:**

Here, the public does not have a strong interest in knowing JONAH's identity because, there is an atypically weak interest in the identity of the Plaintiffs in this matter because of the numerous purely legal questions at issue in this Third-Party action. *See Doe v. Hochul*, 2022 U.S. Dist. LEXIS 49960, at *24 (EDNY 2022) (Merkl, M.J.) (in case involving a group of New York healthcare workers' constitutional challenge to Governor Hochul's COVID-19 vaccine mandate, this Court held that, "[b]ased on the current posture of this case . . . the identity of each of the Plaintiffs is of little-to-no value to the underlying allegations of the complaint.") (citation and internal quotation marks omitted).

Here, the public's interest in knowing the specific identity of JONAH is extremely weak. As such, this factor weighs slightly in favor of anonymity.

**FACTOR TEN:** **Whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff:**

The disclosure of JONAH's identity "would exacerbate any preexisting harm" to him. *See Indyke*, 2019 U.S. Dist. LEXIS 157124, at *5. As such, there is no alternative mechanism for protecting JONAH's confidentiality. *See id.*; *see also*, *Hochul*, 2022 U.S. Dist. LEXIS 49960, at *25 (finding no alternative mechanisms for protecting plaintiffs' confidentiality because "[o]nce the cat's out of the bag, it's out of the bag."). This is especially true here because the Amended Complaint speaks to JONAH's serious and highly sensitive childhood sexual abuse.

This factor, too, weighs in favor of anonymity.

Especially at this early stage of the litigation, the *Sealed Plaintiff* factors weigh overwhelmingly in favor of granting JONAH's request to proceed under a pseudonym.  *See AR*, 2021 U.S. Dist. LEXIS 168507, at *4; *Baram*, 2021 U.S. Dist. LEXIS 147030, at *7-8.  The public's right to know of JONAH's true identity, indeed, is substantially outweighed by JONAH's legitimate need for anonymity.  *See Indyke*, 2019 U.S. Dist. LEXIS 157124, at *5; *Doe No. 2*, 242 F.R.D. at 195.

For these reasons, this Court should grant JONAH's motion for JONAH DOE to proceed in this Third-Party action under a pseudonym, subject to an appropriate protective order.

## III.   JONAH IS ENTITLED TO A PROTECTIVE ORDER TO PRESERVE HIS ANONYMITY

Federal Rule of Civil Procedure 26(c)(1) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense."  "This rule confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*, 593 Fed. Appx. 32, 36 (2d Cir. 2014) (citation and internal quotation marks omitted).

For the same reasons that JONAH has demonstrated that he is entitled to proceed in this action under a pseudonym, JONAH has established that "good cause" exists to support a protective order.  *See Baram*, 2021 U.S. Dist. LEXIS 147030, at *8 (*citing*, *Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 278 (EDNY 2015)).

JONAH's proposed Protective Order (Ex. A to Jonah Doe Aff.) provides, *inter alia*, that JONAH shall be entitled to proceed in this Third-Party action under a pseudonym, that the parties shall not include JONAH's name or other identifying information in any documents filed with the Court, and that the rights of Third-Party Defendants to conduct full discovery and otherwise

investigate JONAH's claims shall not be impaired in any way.  (*See* Ex. A to Jonah Doe Aff. at ¶¶ 32-38).  The proposed Protective Order is thus appropriate in that it keeps the identity of JONAH confidential in this proceeding, while also providing Third-Party Defendants with the unfettered right to defend themselves from JONAH's claims. The proposed Protective Order thus cannot fairly be described as "overly broad, burdensome, or oppressive."  *See Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.*, 2012 U.S. Dist. LEXIS 64086, at *13-14 (SDNY 2012).   It constitutes, rather, a fair and reasonable methodology for all parties to proceed in this Third-Party action.

JONAH respectfully requests that this Court endorse and issue his proposed Protective Order (Ex. A to Jonah Doe Aff.), which will permit JONAH to proceed in this Third-Party action under a pseudonym.

<u>**CONCLUSION**</u>

This Honorable Court, by ratifying the legally permitted and prudent settlement approach adopted by the parties to the underlying action, may provide a roadmap for many other CVA plaintiffs, institutional defendants, insurance companies, and judges alike to break the existing suffocating and justice-denying logjam for CVA cases by compelling liability insurance companies like Chubb to at long last honor their insurance contracts with their insured institutions and act as they should have acted from the start. This case thus presents this Court with a rare opportunity to take highly constructive and legally authorized action that will render a fair measure of justice for JONAH—and, at the same time, make the New York civil justice system both far more efficient and much more just.

"[T]he decision whether to permit impleader rests within the sound discretion of the district court." *iBasis Global,* 278 F.R.D. at 74. Proposed Third-Party Plaintiff JONAH respectfully requests that this Honorable Court, after applying the four-factor test set forth in *iBasis Global, Inc.*, grant this Rule 14(a) motion to implead the Chubb insurers in its entirety.

JONAH likewise requests, for the reasons stated herein, that this Court protect JONAH's anonymity by permitting him to proceed under a pseudonym in the Third-Party action under an appropriate protective order.

JONAH thus requests that this Court issue an order: (1) granting Proposed Third-Party Plaintiff JONAH's motion for leave to file a Third-Party Complaint against the Proposed Third-Party Defendants, Aetna and Federal, with respect to his claims for: (i) breach of contract/indemnification, (ii) breach of contract/bad faith, (iii) breach of covenant of good faith and fair dealing/bad faith refusal to settle, and (iv) violation of New York General Business Law § 349/deceptive business practices, in its entirety; (2) granting Proposed Third-Party Plaintiff

JONAH's motion for leave to proceed under a pseudonym (JONAH DOE) in this Third-Party action under an appropriate protective order, in its entirety; (3) directing Proposed Third-Party Plaintiff JONAH to file and serve the Third-Party Complaint upon the Proposed Third-Party Defendants, Aetna and Federal, along with a Third-Party Summons, by a date certain as soon as practicable; (4) directing the parties to submit to the Court a proposed discovery schedule by a date certain; and (5) granting Proposed Third-Party Plaintiff JONAH any other, different, or further relief to which this Court may seem just, proper, or necessary.

Dated:  September 24, 2024
        Orangeburg, New York

Respectfully submitted by:

**KEVIN T. MULHEARN, P.C.**          &          **BURNS BAIR LLP**

*Kevin T. Mulhearn /S*                          *Timothy Burns /S*
_____                    _____
By: Kevin T. Mulhearn, Esq.                  By: Timothy Burns, Esq.
60 Dutch Hill Road                           10 E. Doty Street
Suite 6B                                     Suite 600
Orangeburg, New York 10962                   Madison, Wisconsin 53703
845-222-8092                                 608-286-2302
kmulhearn@ktmlaw.net                         tburns@burnsbair.com
                                             ( *Pro Hac Vice* Application Pending)

*Attorneys for Third-Party Plaintiff, JONAH DOE*

**<u>CERTIFICATE OF SERVICE</u>**

Kevin T. Mulhearn, Esq., an attorney for the Third-Party Plaintiff in this action, hereby certifies that on September 23, 2024, a true and accurate copy of the foregoing document was served, via email, on the following counsel:

Karen Y. Bitar, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
kbitar@seyfarth.com

*Attorneys for Defendants, Poly Prep Country Day School*
*and Ralph Dupee*

*Kevin T. Mulhearn /S*

Dated:  September 24, 2024     _____
                                         KEVIN T. MULHEARN