UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
GRAY MONTAGUE, JONAH DOE,
JAKE DOE, JOSH DOE, and RON DOE,

        Plaintiffs,                              **OPINION & ORDER**
v.                                         **21-CV-04054 (MKB) (LKE)**

POLY PREP COUNTRY DAY SCHOOL,
WILLIAM M. WILLIAMS, and RALPH DUPEE,

        Defendants.
----------------------------------------X

JONAH DOE,
        Third-Party Plaintiff,
  v.

AETNA INSURANCE COMPANY and
FEDERAL INSURANCE COMPANY,

        Third-Party Defendants.
----------------------------------------X

**LARA K. ESHKENAZI**, United States Magistrate Judge:

Before the Court is Proposed Third-Party Plaintiff, Jonah Doe's ("Plaintiff Jonah") motion to implead Proposed Third-Party Defendants Aetna Insurance Company and Federal Insurance Company ("Third-Party Defendants") and for leave to proceed in this Third-Party action under a pseudonym pursuant to an appropriate protective order. For the reasons set forth below, the Court grants the motion to implead in part, and the motions to proceed under a pseudonym and for a protective order in full.

**I.**     **FACTUAL BACKGROUND**

Plaintiff Jonah, along with four other Plaintiffs, filed the original Complaint in this matter on July 19, 2021. (Complaint, ECF No. 1.) Plaintiffs filed a Corrected Amended Complaint ("CAC") on March 14, 2022. (CAC., ECF No. 47.) Plaintiffs, who were all former students at

Defendant Poly Prep Country Day School (the "Poly Prep Defendants"), allege that Poly Prep "engag[ed] in a conspiracy to conceal and cover up the prolonged and horrific sexual abuse … by [Poly Prep's] late renowned football coach, Philip Foglietta[.]" (*Id.* ¶ 3.) Plaintiffs allege that Defendant Poly Prep's coverup was "calculated and pernicious" and that school administrators and officials ignored Foglietta's purported abuse despite having "***actual knowledge***, from ***multiple sources***" about Foglietta's predatory behavior. (*Id.* ¶ 4) (emphasis in original).

The parties engaged in extensive discovery following the Court's denial of the Poly Prep Defendants' motion to dismiss. (Memorandum & Order Denying Motion to Dismiss, ECF No. 87.) In early March 2024, following months of negotiations, "the parties engaged in a mediation in New York City before Roger Kramer, Esq." (Plaintiff Jonah's Memorandum of Law, "Pl. Memo of Law", ECF No. 114-10 at 4.) Although the mediation was unsuccessful, Plaintiff Jonah and the Poly Prep Defendants eventually entered into a settlement agreement. (*Id.* at 4.) According to Plaintiff Jonah, an impediment to settlement during the mediation process was "an obstructive and unconscionable response from Chubb, Poly Prep's insurer," which refused to tender any amount of money to the Poly Prep Defendants to assist them in facilitating the settlement agreement. (*Id.* at 2-3.) The settlement between Plaintiff Jonah and the Poly Prep Defendants includes, amongst other things, a partial, upfront payment from the Poly Prep Defendants to Plaintiff Jonah, a Confession of Judgment by the Poly Prep Defendants for the full settlement sum, and the Poly Prep Defendants' assignment to Plaintiff Jonah of their claims against their insurers. (*Id.* at 3.) Following the execution of the settlement agreement, Plaintiff Jonah filed the instant motion to implead and proceed under a pseudonym.

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 14(a) states:

2

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed R. Civ. P. 14(a). Impleading a third party is appropriate where "the third-party defendant [is] 'potentially secondarily liable as a contributor to the defendant.'" *Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 402 (E.D.N.Y. 2009) (quoting *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984)). "Factors relevant to determining whether to grant leave to implead a third party include: (a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted." *Capitol Records, Inc. v. City Hall Records, Inc.*, No. 07–CV–6488 (LTS) (KNF), 2008 WL 2811481, at *2 (S.D.N.Y. July 18, 2008).

Rule 14 is designed "'to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim.'" *iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 74 (E.D.N.Y. 2011) (quoting *Hines v. Citibank, N.A.*, No. 96–CV–2565 (RJW), 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999)). "Timely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Fashion–In–Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.*, No. 97–CV–340 (DC), 1999 WL 500149 at *6 (S.D.N.Y. July 15, 1999) (internal quotations omitted). But "the right to implead third parties

is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." *iBasis Global, Inc.*, 278 F.R.D. at 74 (internal quotations omitted).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

As a threshold matter, the Court must first determine whether it has subject matter jurisdiction over Plaintiff Jonah's Proposed Third-Party Complaint ("Proposed TPC"). "[A]ny claim a plaintiff brings against a third-party defendant pursuant to Rule 14 'must satisfy ordinary jurisdictional requirements.'" *Ouattara v. Amazon.com, Inc.*, No. 22-CV-01753 (JLR), 2022 WL 17167983, at *3 (S.D.N.Y. Nov. 22, 2022) (quoting *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 866, 868 (S.D.N.Y. 1995)). If the Court does not have an independent basis for jurisdiction over the third-party claims, "in a case where the court [otherwise] has jurisdiction premised on diversity, plaintiffs cannot rely on supplemental jurisdiction to bring claims against defendants impleaded under Rule 14(a)." *Id* (internal citation and quotations omitted). Where, as here, a plaintiff only asserts state law claims, the Court must determine whether it can exercise diversity jurisdiction over Plaintiff Jonah's claims against Third-Party Defendants. *See* 28 U.S.C. § 1332. The federal diversity statute provides district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States[.]" 28 U.S.C. § 1332(a)(1).

Here, the Proposed TPC "claims damages in excess of the sum of $75,000.00." (Proposed TPC, ECF No. 114-11 ¶ 11.) Furthermore, the Proposed TPC asserts that Plaintiff Jonah is domiciled in Virginia and is therefore a citizen of Virginia. (*Id.*) Next, the Proposed TPC alleges that Third-Party Defendant Aetna "is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business located in Philadelphia, Pennsylvania[.]" (*Id.*)

4

Accordingly, Aetna is a citizen of Pennsylvania. Lastly, the Proposed TPC alleges that Third-Party Defendant Federal Insurance Company "is a corporation organized under the laws of the State of Indiana, with its principal place of business located in Warren, New Jersey" and is therefore a citizen of Indiana and New Jersey. (*Id.*) The requirements for diversity jurisdiction are met because Plaintiff and Defendants are citizens of different states and Plaintiff Jonah alleges he is entitled to over $75,000 in damages. Accordingly, the Court has subject matter jurisdiction over Plaintiff Jonah's claims against Third-Party Defendants.

### B. Rule 14(a) Factors

#### 1. Deliberate Delay

Turning to the first factor, the Court finds that Plaintiff Jonah did not deliberately delay filing his motion for leave to implead Third-Party Defendants. Plaintiffs filed their initial Complaint on July 19, 2021, (ECF No. 1), and their CAC on March 14, 2022. (ECF No. 47.) The Poly Prep Defendants filed their Answer on May 19, 2023 (Answer, ECF No. 92), and executed a Settlement Agreement and Confession of Judgment in favor of Plaintiff Jonah 16 months later, on September 23, 2024. (Pl. Memo of Law, ECF No. 114-10 at 7.) Plaintiff Jonah's motion for leave to electronically file his motion to implead was filed on September 25, 2024, (Motion for Leave, ECF No. 111-12), and the publicly available version of the motion to implead was filed on September 30, 2024. (Motion to Implead, ECF No. 114.) Courts have refused to find deliberate delay where, like here, any delay in filing the motion to implead is attributable to ordinary litigation events or the parties' efforts to settle the case. *See, e.g.*, *Philadelphia Indem. Ins. Co. v. Amazon.com, Inc.*, No. 17-CV-3115 (DRH) (AKT), 2018 WL 11454818, at *3 (E.D.N.Y. Jan. 24, 2018) (holding that nine month delay between the filing of the operative pleading and the filing of the motion to implead did not constitute undue delay or dereliction because it was attributable to

5

typical litigation events); *Salomon v. Burr Manor Estates, Inc.*, 635 F. Supp. 2d 196, 200 (E.D.N.Y. 2009) (granting third-party plaintiff's motion to implead non-parties and holding that the long delay attributable to parties' efforts to settle case did not constitute undue delay). Plaintiff Jonah's prompt filing of the motion to implead following the execution of the settlement agreement firmly supports a finding of no undue or deliberate delay.

### 2. Whether Impleader Would Delay or Complicate the Trial

Next, the Court must determine whether impleader would delay or complicate the trial. Where a third-party plaintiff's claims "arise from 'the same aggregate or core of facts which is determinate of the plaintiff's claim[s],' . . . the interest in judicial economy would be served by permitting those claims to proceed in the instant action." *Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 55 (S.D.N.Y. 1991) (quoting *National Bank of Canada v. Artex Indus., Inc.*, 627 F. Supp. 610, 613 (S.D.N.Y. 1986)); *see also McLaughlin v. Biasucci*, 688 F. Supp. 965, 967 (S.D.N.Y. 1988) ("The purpose of [Rule 14(a)] is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim.").

Plaintiff Jonah's third-party claims against Third-Party Defendants arise from the same core of facts asserted in the underlying action against the Poly Prep Defendants. Necessarily, "[i]f the third-party complaint is not allowed, [Plaintiff Jonah] would have to start a separate action, and repeat much of the proceedings and discovery that has already occurred in the case brought by [Plaintiff Jonah] against [the Poly Prep Defendants]." *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 141 (S.D.N.Y. 2003). Rather than delaying or complicating trial, impleading Third-Party Defendants would promote the resolution of this matter. Therefore, this factor weighs in favor of granting Plaintiff Jonah's motion.

6

### 3. Prejudice to the Plaintiffs or Third-Party Defendants

Allowing Plaintiff Jonah to implead Third-Party Defendants will neither prejudice the other plaintiffs in the underlying action nor Third-Party Defendants. "To the contrary, preventing [Plaintiff Jonah] from impleading [Third-Party Defendants] could result in prejudice to [Third-Party Defendants] since [Third-Party Defendants] could be subject to non-party discovery in the instant action as well as discovery in a subsequent action against it by [Plaintiff Jonah]." *Philadelphia Indem. Ins. Co.*, 2018 WL 11454818, at *4. Moreover, "[t]he lack of opposition by [Plaintiffs] to the instant motion further indicates to the Court that [Plaintiffs] will suffer no prejudice as a result of [Third-Party Defendants'] impleader." *Id.*

### 4. Whether Plaintiff Jonah States Plausible Claims

Lastly, the Court must determine whether Plaintiff Jonah's proposed TPC plausibly states claims against Third-Party Defendants. In evaluating the claims in the proposed TPC, the Court must, as a threshold matter, determine whether the assignment of the claims from Poly Prep Defendants to Plaintiff Jonah was proper under New York Law. *Bruno Magli IP Holdings, LP v. DMODA NY Inc.*, No. 18-CV-3306 (AJN), 2019 WL 1315887, at *3 (S.D.N.Y. Mar. 22, 2019) ("New York General Obligations Law §13-101 allows certain causes of action under New York law to be freely assigned."). Under New York General Obligations Law § 13–101, any claim can be assigned unless it is (1) a claim for personal injury, (2) founded upon a grant or interest in real property which is void by state statute, or (3) otherwise expressly forbidden by a federal or state statute or contravenes public policy. N.Y. G.O.L. § 13–101.

Plaintiff Jonah asserts four causes of action against Third-Party Defendants: (1) Breach of Contract; (2)-(3) Breach of the Implied Covenant of Good Faith and Fair Dealing/Bad Faith; and (4) Violation of New York General Business Law § 349. None of these claims fall within the three

7

exceptions provided for in New York General Obligations Law § 13–101. *See Pinto v. Allstate Insurance Co.,* 221 F.3d 394, 403 (2d Cir. 2000) ("assignment of the defendant's bad faith claim to the plaintiff in a personal liability suit is the ordinary mechanism for pursuing such claim against the insurer, usually in exchange for a covenant not to execute on the judgment"); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co,* 875 F.3d 107, 111, 124-27 (2d Cir. 2017) (assignee had viable and triable GBL § 349 claims against auto insurers); *McWilliams v. Liberty Mut. Grp., Inc.*, No. 24-CV-3432 (AS), 2024 WL 3925537, at *2 (S.D.N.Y. Aug. 23, 2024) ("a third party may bring a bad-faith claim against an insurance company when the insured assigns its contractual rights to that third party, most often a party that obtained a judgment against the insured."). Accordingly, the assignment of the claims from the Poly Prep Defendants to Plaintiff Jonah is consistent with New York law.

Next, the Court must determine whether the proposed complaint states a plausible claim for relief. The proposed TPC asserts four claims, and the Court will discuss each in turn.

### a. Breach of Contract (Count I)

Plaintiff Jonah's first claim is for breach of contract. To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of a contract; (2) their performance pursuant to the contract; (3) defendants' breach of its contractual obligations; and (4) damages resulting from the breach. *See, e.g., Dee v. Rakower*, 112 A.D.3d 204, 208-09 (2d Dept. 2013). Here, Plaintiff Jonah, as an assignee of the Poly Prep Defendants, plausibly alleges a claim for breach of contract. Specifically, Plaintiff Jonah alleges that the Poly Prep Defendants purchased insurance from Third-Party Defendants and that these insurance policies constitute valid and enforceable contracts. (Proposed TPC, ECF No. 114-11 ¶¶ 21, 23, 114.) Furthermore, the Proposed TPC alleges that Poly Prep timely paid all premiums, "provided prompt notice of the Underlying

8

Claims, and otherwise timely performed all obligations, conditions, covenants, or pre-requisites to coverage required of it under the Policies, except those excused as a result of [Third-Party Defendants] breaches of the Policies." (*Id.* ¶¶ 63, 115.)

Next, the Proposed TPC alleges that, under the insurance policies, Third-Party Defendants were contractually obligated "to pay on Poly Prep's behalf, all sums that Poly Prep is and will be legally obligated to pay as damages, through judgment, settlement, or otherwise, in the Underlying Claims, up to the applicable liability limits of their policies." (*Id.* ¶ 116.) Plaintiff Jonah and Poly Prep entered into a settlement agreement within the applicable liability limits, but, according to the Proposed TPC, Third-Party Defendants refused to indemnify Poly Prep following the execution of the settlement agreement. (*Id.* ¶¶ 116, 120, 122-24.) As a result, Plaintiff Jonah, as an assignee of Poly Prep, has suffered damages. (*Id.* ¶ 124.) Accordingly, Plaintiff Jonah has plausibly pled a breach of contract claim against Third-Party Defendants.[1]

### b. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Plaintiff Jonah's second cause of action is for breach of the implied covenant of good faith and fair dealing. New York law recognizes an implied covenant of good faith and fair dealing in all contracts. *See 511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (N.Y. 2002); *Carvel Corp. v. Diversified Mgmt. Grp.*, 930 F.2d 228, 230 (2d Cir.1991). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or

---

[1] Plaintiff Jonah's brief contains an extensive discussion of the Second Circuit case of *Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082 (2d Cir. 1986), and its progeny, generally holding that to recover an amount paid in a settlement an insured need not establish actual liability as long as the settlement amount is reasonable. (*See* ECF No. 114-10 at 21.) It is not necessary, however, for the Court to evaluate the reasonableness of the settlement to determine whether Plaintiff Jonah has sufficiently alleged a breach of contract claim. Third-Party Defendants are of course free to raise the reasonableness of the settlement as a defense in responding to the TPC.

injuring the right of the other party to receive the fruits of the contract." *511 West 232nd Owners Corp.*, 98 N.Y.2d at 153 (internal quotations and citation omitted).

Plaintiff Jonah's second cause of action for breach of the implied covenant asserts that Third-Party Defendants failed to engage in the settlement process in good faith, thereby depriving the Poly Prep Defendants of the fruits of the insurance policies. Plaintiff Jonah alleges that Third-Party Defendants' "wait-and-see approach created unreasonable delays that prevented resolution of the Underlying Claims." (Proposed TPC, ECF No. 114-11 ¶ 127.) The Proposed TPC further alleges that the "wait-and-see approach was adopted without consideration for its insured, Poly Prep and Dupee, and is manifestly driven instead by [Third-Party Defendants'] own concerns about the large potential exposure that the Underlying Claims present[.]" (*Id.* ¶ 129.) Due to Third-Party Defendants' refusal to consent to Plaintiff Jonah's settlement offers within the policy limits (*id.* ¶¶ 130-131), the Poly Prep Defendants entered a settlement which exposed it "to substantial exposure for the Underlying Claims." (*Id.* ¶132.) Taken together, these allegations demonstrate that Third-Party Defendants "deprived the [the Poly Prep Defendants] of the benefit of [their] bargain" through the bad faith exercise of Third-Party Defendants' discretion. *CSI Investment Partner II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007). Accordingly, the Proposed TPC states a claim for breach of the implied covenant of good faith and fair dealing based on Third-Party Defendants' failure to cooperate in good faith with the Poly Prep Defendants during the settlement process.

        c.    <u>Breach of the Implied Covenant of Good Faith and Fair Dealing/Bad Faith (Count III)</u>

Plaintiff Jonah's third cause of action, which is also for breach of the implied covenant of good faith and fair dealing, fails because it is duplicative of Plaintiff Jonah's breach of contract claim. "[A] separate cause of action for breach of the implied covenant of good faith and fair

10

dealing" will be dismissed as duplicative "when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*, No. 11-CV-4743 (ADS) (ETB), 2012 WL 3679319, at *3 (E.D.N.Y. Aug. 22, 2012) ("[a] claim for breach of the covenant of good faith and fair dealing will be duplicative of a breach of contract claim where they are based on the same allegations or where the same conduct is the predicate for both claims.") "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate" for the plaintiff's breach of contract claim. *ICD Holdings S.A. v. Frankel* 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997) (internal quotations and citation omitted).

Here, the same facts and conduct underlie Plaintiff Jonah's third cause of action for breach of the implied covenant and his first cause of action for breach of contract. Specifically, Plaintiff Jonah alleges breach of contract by asserting that Third-Party Defendants failed to indemnify the Poly Prep Defendants after Plaintiff Jonah and the Poly Prep Defendants entered into a settlement agreement. (ECF No.114-11 ¶¶ 116, 120, 122-24.) Plaintiff Jonah also alleges that the insurance policies "contain an implied covenant of good faith and fair dealing", (*id.* ¶ 137), which was breached when Third-Party Defendants "fail[ed] to perform their obligations under the Policies (i.e., pay any losses)[.]" (*Id.* ¶ 147.) Both claims rest on the same factual allegations, namely, Third-Party Defendants' failure to perform their obligations under the insurance policies by failing to pay the Poly Prep Defendants for any losses suffered in connection with the Underlying Claims.[2]

---

[2] Plaintiff Jonah's Memorandum of Law seems to argue that he has stated a claim for bad faith based on Third-Party Defendants' "gross disregard" of Poly Prep's interest. (Pl. Memo of Law at 32.) But this argument is incongruent with the allegations found under Count III of the Proposed TPC, which asserts a theory of breach of the implied covenant of good faith and fair dealing. (*See* ECF No. 114-11 ¶ 14 [stating "[i]mplicit in the contracts between the Poly Prep Defendants and [Third-Party Defendants] is a covenant of good faith and fair dealing, such that Poly Prep, a reasonable

11

Accordingly, Plaintiff Jonah's third cause of action for breach of the implied covenant of good faith and fair dealing is dismissed as duplicative of the breach of contract claim.[3]

### d. General Business Law § 349 (Count IV)

Plaintiff Jonah's final cause of action is a claim under New York General Business Law § 349, both as an assignee of Poly Prep and in his individual capacity. Section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade in commerce in the furnishing of any service in this state are . . . declared unlawful." N.Y. Gen. Bus. L. § 349(a). "A [section] 349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Crucially, the statute confers standing on "any person who has been injured by reason of any violation of this section . . . ." N.Y. Gen. Bus. L. § 349(h); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 207 (2004) (quoting N.Y. Gen. Bus. L. § 349(h)) (holding that "limit[ing] the scope of section 349 to only consumers" would violate "the statute's plain language permitting recovery by any person injured 'by reason of' any violation.").

The Second Circuit has upheld the applicability of § 349 claims against insurance companies when the companies engage in deceptive practices, such as unreasonably denying claims based on a form policy, against multiple policyholders. *See, Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52-53 (2d Cir. 1992) (holding § 349 applies to insurance companies and

---

insured party, understood at all material times that [Third-Party Defendants] promised to investigate in good faith and pay all covered claims and losses."]).

[3] To the extent Count III is based on a theory that the implied covenant was breached because Third-Party Defendants "deprived the other party of the benefit of its bargain" through the bad faith exercise of their discretion, *see CSI Investment Partner II, L.P.*, 507 F. Supp. 2d at 425, such a claim is duplicative of Count II.

12

upholding jury verdict against defendant insurance company in part because plaintiff "presented ample evidence to prove that [defendant] engaged in similar deceptive settlement practices against other policyholders[.]"); *see also*, *Kurschner v. Massachusetts Cas. Ins. Co.*, No. 08-CV-0011 (JFB) (AKT), 2009 WL 537504, at *4-7 (E.D.N.Y. Mar. 3, 2009) (denying defendant insurance company's motion to dismiss where plaintiff alleged insurance company had a practice of inordinately delaying and denying claims without reference to their viability).

Plaintiff Jonah alleges that Third-Party Defendants "have taken improper coverage positions and engaged in unjustifiable delays, which [they] improperly and without a good-faith basis purported to justify as interpretations of the same standard-form insurance policy language that, upon information and belief, [Third-Party Defendants] use[] in insurance policies sold to many other educational institutions in New York[.]" (Proposed TPC, ECF No. 114-11, ¶ 99.) Furthermore, he alleges that their bad-faith interpretations "apply to and injure all of their policyholders with similar policy language that suffer losses and bring coverage claims to the [Third-Party Defendants] expecting fair and good-faith treatment." (*Id.*) As a result of these actions, Plaintiff Jonah alleges that "hundreds of sexual abuse survivors, including [himself], have been denied prompt, fair, and equitable settlements[.]" (*Id.* ¶ 100.)

Plaintiff Jonah's Proposed TPC satisfies all three elements of a section 349 claim. First, Plaintiff Jonah has sufficiently alleged that Third-Party Defendants' purported conduct was consumer-oriented by asserting that the conduct is widespread and impacts many policyholders. *See M.B. v. Collision, Inc. v. Allstate Ins. Co.*, No. 07-CV-0187 (JFB), 2007 WL 2288046, at *4 (E.D.N.Y. Aug. 8, 2007) (defendant's conduct, as alleged, was consumer-oriented because it related to numerous policyholders subject to defendant's standard form policy). Second, the Proposed TPC satisfies the "deceptive practices" element because it alleges that Third-Party

13

Defendants unreasonably delayed and denied the resolution of Plaintiff Jonah's claims, as well as the covered claims of other sexual assault survivors. *See Kurschner*, 2009 WL 537504, at *6 ("the allegation that the insurer makes a practice of inordinately delaying and then denying a claim without reference to its viability may be said to fall within the parameters of [a deceptive practice]") (internal citation and quotations omitted). Third, Plaintiff Jonah alleges that he was directly injured because of Third-Party Defendants' bad-faith and unfair settlement practices. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 738 (S.D.N.Y. 1990), *aff'd in relevant part,* 977 F.2d 47 (2d Cir.1992) (holding that an insurance company's unfair claim settlement practices "easily satisfies the elements of a claim under Section 349[.]"). Accordingly, Plaintiff Jonah's Proposed TPC states a claim under New York General Business Law § 349.

C. **Anonymity**

Federal Rule of Civil Procedure 10(a) states "[t]he title of [a] complaint must name all the parties." Fed R. Civ. P. 10(a). The Second Circuit, however, has held that a plaintiff may proceed under a pseudonym under certain, limited circumstances where "the plaintiff's interest in anonymity" outweighs "the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). To determine whether a plaintiff's privacy interests outweigh the public's interest in disclosure and any prejudice to the defendant, courts consider ten, non-exhaustive factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or to other innocent non-parties; (3) whether identification poses other harms and the likely severity of those harms; (4) whether the plaintiff is particularly vulnerable to the harms resulting from disclosure; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant would be prejudiced by allowing the plaintiff to proceed anonymously, whether the nature of any prejudice differs at

14

>any stage of litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) the relative strength of the public interest in knowing the litigants' identities based on the purely legal nature of the issues presented; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190.

Crucially, courts in this circuit have determined that "sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-98 (E.D.N.Y. 2006) (internal citations omitted) (plaintiff allowed to proceed anonymously where complaint alleged that a rabbi had sexually abused plaintiff when he was a child); *Doe v. Colgate Univ.*, 5:15-CV-1069 (LEK) (DEP), 2016 WL 1448829, at *3 (N.D.N.Y. 2016) (allowing plaintiff to proceed anonymously given the "highly personal and sensitive nature of . . . case" involving alleged rape); *Doe v. Indyke*, 19-CV-7771 (PKC), 2019 U.S. Dist. LEXIS 157124, at *2 (S.D.N.Y. 2019) (plaintiff alleged "an on-going pattern of sexual assault and abuse beginning when [she] was seventeen-years-old."). Although the Second Circuit has explained that "a district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion[,]" *Sealed Plaintiff*, 537 F.3d at 191 n.4, for the sake of thoroughness, the Court will address each factor.

As to the first factor, the litigation involves matters that are highly sensitive and of a personal nature. The CAC alleges that Plaintiff Jonah was sexually abused more than 100 times by Poly Prep's football coach. (*See generally* CAC, ECF No. 47 ¶¶ 71-74.) The details of sexual assaults that occurred during childhood trigger "a strong right to privacy in this information[.]" *Doe on behalf of Doe No. 1 v. Nygard*, No. 20-CV-6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y.

15

Aug. 20, 2020). Accordingly, this factor weighs in favor of granting Plaintiff Jonah's motion to proceed anonymously.

The Court will consider the second and third factors jointly because the allegations submitted by Plaintiff Jonah in support of these factors are the same. Specifically, Plaintiff Jonah states that he never told his mother about the alleged abuse "and that the disclosure of such horrific sexual abuse to his mother at this late date would cause her to suffer substantial emotional distress, mental anguish and pain and suffering, and guilt." (Pl. Memo of Law at 39 [citing Jonah Doe Affidavit, "Jonah Aff."], ECF No. 114-20 at ¶¶ 23-24.) Further, he argues that the disclosure of the alleged assaults may humiliate his children and cause them emotional distress. (*Id.*) Plaintiff Jonah also attests that he will suffer severe emotional distress, mental pain and suffering, and anxiety, if compelled to publicly disclose his identity. (Jonah Aff., ECF No.114-20 ¶¶ 20-22.) While these concerns do not raise concerns of "retaliatory" actions (the second factor), they do support Plaintiff's Jonah's claim that identification poses other harms, and that those harms could be severe (the third factor).

The fourth factor also weighs in favor of Plaintiff Jonah's application as he attests that he has developed physical and mental conditions because of the abuse that make him particularly vulnerable to disclosure. (Jonah Aff., ECF No. 114-20 ¶¶ 20-23.) He also asserts that he has required significant medical and psychological treatment because of the alleged abuse, further supporting the need for anonymity. (*Id*. ¶ 20.)

The fifth factor is either neutral or weakly supports denying the motion because "private civil suits create strong interests in open proceedings given that such suits implicate legal and social norms." *Does 1-4 v. Foukas*, 20-CV-5516 (DG) (SJB), 2021 WL 8892823, at *3 (E.D.N.Y. Mar. 20, 2021) (internal quotations and citation omitted); *see also Doe v. Salina,* No. 23-CV-3529

16

(JMW), 2024 WL 1259362, at *6 (E.D.N.Y. Mar. 25, 2024) ("where a plaintiff sues a governmental entity, plaintiff's interest in proceeding anonymously is considered particularly strong[.]" (internal citation and quotations omitted).

As to the sixth factor, Third-Party Defendants will not be prejudiced if Plaintiff Jonah is allowed to proceed anonymously. According to Plaintiff Jonah's affidavit, both Third-Party Defendants know his identity. (Jonah Aff., ECF No. 114-20 ¶ 31.) Importantly, Plaintiff Jonah only seeks to shield his identity from the public and is willing to engage in "full and open disclosure for discovery purposes on the reasonable condition that Third-Party Defendants do not disclose his name and identity to the general public." (Pl. Memo of Law at 41, ECF No. 114-10.) Accordingly, Third-Party Defendants "will experience little to no prejudice by allowing [Plaintiff Jonah] to remain anonymous at this stage of the proceeding, as [Plaintiff Jonah] has agreed to make his name and identity known to [Third-Party Defendants], subject to an appropriate protective order." *Doe v. Baram,* No. 20-CV-9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) Accordingly, this factor weighs in favor of anonymity.

The seventh, eighth, and ninth factors also way in favor of anonymity. Plaintiff Jonah attests that his identity has been kept confidential, even from some members of his immediate family. (Jonah Aff., ECF No. 114-20 ¶¶ 22-24.) Moreover, while the public may have an interest in the allegations against Defendant Poly Prep, a well-known high school in this district, that interest is not furthered by requiring Plaintiff Jonah to disclose his identity. Indeed, Courts in this Circuit have acknowledged that "the public . . . has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe No. 2*, 242 F.R.D. at 195. Thus, these three factors weigh in favor of anonymity.

Finally, because the disclosure of Plaintiff Jonah's identity "would exacerbate any preexisting harm" to him, there is no alternative mechanism for protecting his identity. *Indyke*, 2019 U.S. Dist. LEXIS 157124 at *5. As such, the final factor also weighs in favor of anonymity.

The Court concludes that, at this stage, the public's right to know is substantially outweighed by the Plaintiff Jonah's legitimate need for anonymity. Moreover, prejudice to Third-Party Defendants is limited and can be mitigated by orders of the Court. The Court reserves the right to modify this Order as the case progresses.

### D.     Protective Order

Lastly, Plaintiff Jonah seeks a protective order under Federal Rule of Civil Procedure 26(c)(1). Rule 26(c)(1) provides that the District Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The proposed Protective Order (Ex. A to Jonah Aff, ECF No. 114-21) provides, amongst other things, that Plaintiff Jonah will proceed under a pseudonym in this lawsuit and his name will be redacted or otherwise stricken from publicly filed documents. (*Id.*) Although it includes these privacy measures, it nevertheless accounts for Third-Party Defendants' right to conduct discovery and defend against Plaintiff Jonah's accusations. (*Id.*) ("this [Proposed] Order does not diminish the rights of Third-Party Defendants to conduct full discovery, investigate, and prepare their defense[.]")

Plaintiff Jonah has shown that good cause exists to issue the protective order. The proposed order will protect Plaintiff Jonah from potential harassment and embarrassment stemming from the sexual assault allegations, while simultaneously allowing Third-Party Defendants to conduct full discovery, investigate the allegations, and properly defend against the claims levied against

them. Having determined that good cause exists, the Court will grant Plaintiff Jonah's request for a protective order.

## IV.    CONCLUSION

"[T]he decision whether to permit impleader rests within the sound discretion of the district court." *iBasis Glob., Inc.*, 278 F.R.D. at 74. Having applied the Rule 14(a) factors, the Court finds that Plaintiff Jonah's motion for leave to file a third-party complaint is GRANTED with respect to the First, Second, and Fourth causes of action, and DENIED as to the Third cause of action. Plaintiff Jonah's motions to proceed anonymously and for a protective order are GRANTED.

**SO ORDERED**.

Dated:  Brooklyn, New York
April 10, 2025

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
UNITED STATES MAGISTRATE JUDGE