UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

GRAY MONTAGUE, JONAH DOE, JAKE DOE,
RON DOE, and JOSH DOE,

                        Plaintiffs,

             v.

WILLIAM M. WILLIAMS, RALPH DUPEE, and
POLY PREP COUNTRY DAY SCHOOL,

                        Defendants.

-----------------------------------------------------------------

JONAH DOE,

                        Third-Party Plaintiff,

             v.

AETNA INSURANCE COMPANY and
FEDERAL INSURANCE COMPANY,

                        Third-Party Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-4054 (MKB)

MARGO K. BRODIE, United States District Judge:

I.    Background ............................................................................................................ 3

    a.   The underlying action ...................................................................................... 3

    b.   The Third-Party Action.................................................................................... 5

    c.   State Court Action............................................................................................ 6

    d.   Third-Party Defendants' current motion.......................................................... 9

II.   Discussion ........................................................................................................... 10

    a.   Standards of review........................................................................................ 10

        i.    Impleader ................................................................................................ 10

        ii.   Review of Magistrate Judge's Order ...................................................... 12

        iii.  Motion to vacate a Third-Party Action .................................................. 14

        iv.  *Colorado River* abstention doctrine ........................................................ 16

    b.    Judge Eshkenazi appropriately granted leave to implead. ............................................... 19

        i.    Rule 14 permits impleader ............................................................................. 19

        ii.    Impleader is not barred by the "no action clause" ........................................ 25

        iii.    Rule 14 factors ............................................................................................. 33

    c.    The Court denies Third-Party Defendants' request for stay or dismissal pursuant to the *Colorado River* abstention doctrine. ......................................................................... 57

        i.    The State Court Action and this proceeding are parallel ............................. 62

        ii.    The *Colorado River* factors weigh against abstention ................................ 68

III.    Conclusion ...................................................................................................................... 81

On April 10, 2025, Judge Eshkenazi granted Third-Party Plaintiff, Jonah Doe's ("Jonah Doe") motion to implead Third-Party Defendants Aetna Insurance Company and Federal Insurance Company (collectively, "Third-Party Defendants" or "Chubb") and to file a third-party complaint (the "April 2025 Order"). (April 2025 Order, Docket Entry No. 118.) Jonah Doe commenced this action on April 11, 2025, against Third-Party Defendants ("Third-Party Action"). (Third-Party Compl., Docket Entry No. 119.) Jonah Doe and four other Plaintiffs commenced the underlying action in July of 2021 to recover damages for sexual abuse that occurred while they were students in high school at Poly Prep Country Day School ("Poly Prep"). (*See* Compl., Docket Entry No. 1.) The victims respectively settled their claims and now seek recovery from the insurance providers under Poly Prep's applicable insurance policies.

On September 30, 2025, Third-Party Defendants moved to dismiss the Third-Party Action, appealing Judge Eshkenazi's decision granting impleader, on the grounds that impleader was improper, and requesting, in the alternative, the Court stay or dismiss the action under the *Colorado River* abstention doctrine.[1] (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."),

---

[1] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *see Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) ("[A] federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would

Docket Entry No. 142-1.)  Jonah Doe opposed the motion, arguing Third-Party Defendants did not assert a basis for dismissal, impleader was proper, and abstention would be improper.  (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), Docket Entry No. 143.)  For the reasons set forth below, the Court finds that Judge Eshkenazi appropriately granted impleader and denies Third-Party Defendants' motion to dismiss this Third-Party Action.  The Court also denies Third-Party Defendants' motion to stay or dismiss the action under the *Colorado River* abstention doctrine.

## I.    Background

The Court assumes familiarity with the facts as set forth in Judge Eshkenazi's April 2025 Order and provides only a summary of the relevant facts as set forth in the opinion.

### a.    The underlying action

Jonah Doe, along with four other Plaintiffs — Gray Montague, Jake Doe, Josh Doe and Ron Doe (collectively, "Other Plaintiffs") — filed the underlying Complaint in this matter on July 19, 2021 against Defendants Poly Prep, William M. Williams, [2] and Ralph Dupee (Poly Prep and Ralphe Dupee, collectively, "Poly Prep Defendants") for claims arising under the New York Child Victims Act ("CVA") (the "Poly Prep Action").[3]  (Compl.)  Jonah Doe and Other

---

conserve judicial resources." (quoting *id.* at 817–18) (explaining *Colorado River* abstention doctrine)).

[2]  William M. Williams is now deceased and is not named as a party to the executed settlement agreement with Jonah Doe, discussed below.  (Third-Party Compl. ¶ 25.)

[3]  The Other Plaintiffs settled their claims against Poly Prep Defendants on September 9, 2025, and the Court entered an Order for Entry of Judgment on September 16, 2025, in the Other Plaintiffs' favor.  (Other Pls.' Settlement Agreement, Docket Entry No. 139-2; J., Docket Entry No. 140.)  The Other Plaintiffs then filed a complaint in a separate action against Poly Prep Defendants' insurers who provided coverage for the time periods of their respective claims.  *See* Compl., *Montague v. Travelers Cas. and Sur. Co.*, No. 25-CV-5201 (E.D.N.Y filed Sep. 16,

Plaintiffs filed an Amended Complaint on March 14, 2022.[4]  (Am. Compl.)  Jonah Doe and the Other Plaintiffs, who were all former students at Poly Prep, allege that Poly Prep "engag[ed] in a conspiracy to conceal and cover up the prolonged and horrific sexual abuse . . . by [Poly Prep's] late renowned football coach, Philip Foglietta[]."  (Id. ¶ 3.)  Plaintiffs contend that Poly Prep Defendants had actual and constructive knowledge of Foglietta's sexual abuse but condoned and concealed the behavior.  (Id. ¶¶ 154–60.)

Jonah Doe and Poly Prep Defendants executed a settlement agreement in favor of Jonah Doe on September 23, 2024 ("Executed Settlement Agreement").  (Executed Settlement Agreement 7, annexed to Pl.'s Mem. in Supp. of Mot. to Implead as Ex. C, Docket Entry No. 114-13.)  The Executed Settlement Agreement between Jonah Doe and the Poly Prep Defendants includes, amongst other things, a partial, upfront payment from Poly Prep Defendants to Jonah Doe, a Confession of Judgment by Poly Prep Defendants for the full settlement sum, and Poly Prep Defendants' assignment to Jonah Doe of their claims against Third-Party Defendants[5] in connection with the Poly Prep Action.  (Id. at 6–7, 8.)  The Executed Settlement Agreement further specifies that Poly Prep assigned Jonah Doe claims for "breach of contract, indemnification, reimbursement, breach of covenant of good faith and fair dealing, breach of

---

2025), Docket Entry No. 1.  The Other Plaintiffs' underlying sexual abuse occurred during different time periods than Jonah Doe and do not implicate insurance policies provided by Third-Party Defendants.  See id.  (Pl.'s Opp'n 3.)

[4]  Jonah Doe and Other Plaintiffs initially filed an Amended Complaint on January 10, 2022, (Initial Am. Compl., Docket Entry No. 28), but corrected a "scrivener's error" and refiled the Amended Complaint on March 14, 2022, (Am. Compl., Docket Entry No. 47).

[5]  While Third-Party Defendants are two insurance companies — Aetna and Federal — the parties' moving papers collectively refer to them as "Chubb" and/or "Chubb Third-Party Defendants."  (Defs.' Mem. 1; Pl.'s Opp'n 1.)  Both Aetna and Federal are wholly owned subsidiaries of Chubb Limited.  (Corp. Disclosure Statement, Docket Entry No. 127.)

duty to defend, breach of duty to settle, violation of Section 349 of the New York General Business Law, and/or any other claim . . .". (*Id.* at 8–9.) The Executed Settlement Agreement also states that Poly Prep Defendants "will continue to make an effort to obtain recovery from [Third-Party Defendants] in the [State Court Action][6] beyond those specific to the Limited Jonah Doe Assignment." (*Id.* at 10.)

### b. The Third-Party Action

After reaching the Executed Settlement Agreement, Jonah Doe filed a motion for leave to implead and file a third-party complaint against Third-Party Defendants for recovery based on claims arising under their insurance policies covering the relevant time period of sexual abuse. (*See* Pl.'s Mot. to Implead, Docket Entry No. 114.) On April 10, 2025, Judge Eshkenazi granted Jonah Doe's motion to implead and file a third-party complaint with respect to breach of contract, breach of implied covenant of good faith and fair dealing, and violations of New York's General Business Law Section 349 ("GBL § 349") causes of action. (April 2025 Order.) Judge Eshkenazi directed Jonah Doe to file a third-party complaint against Third-Party Defendants by

---

[6] As discussed below, in June of 2023, Poly Prep commenced suit for insurance coverage due for various CVA claims against various insurers, including Third-Party Defendants, Aetna Insurance Company and Federal Insurance Company, in New York Supreme Court, Kings County, captioned *Polytechnic Preparatory Country Day School v. Aetna Insurance Company*, Index No. 517756/2023 ("State Court Action"). Compl., *Polytechnic Preparatory Country Day Sch. v. Aetna Ins.*, No. 517756/2023 (N.Y. Sup. Ct. filed June 16, 2023), Docket Entry No. 1; Corrected Am. Compl., *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Nov. 26, 2025), Docket Entry No. 102. In the State Court Action moving papers, the parties refer to the Third-Party Defendants collectively as "Chubb Defendants," along with two other insurance companies that are proceeding as one with Aetna Insurance Company and Federal Insurance Company: Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, as successor to Indemnity Insurance Company of North America; and Vigilant Insurance Company. *See* Chubb's Mem. in Supp. of Mot. to Dismiss, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Feb. 20, 2026), Docket Entry No. 147. When referring to Third-Party Defendants in the State Court Action, the Court refers to them as "Chubb Defendants" in order to distinguish the two proceedings.

5

the following day, April 11, 2025, and directed Third-Party Defendants to respond to the Third-Party Complaint by May 22, 2025.  (Order dated April 10, 2025.)  Jonah Doe timely filed the Third-Party Complaint alleging three causes of action: (1) breach of contract/duty to indemnify; (2) breach of the implied covenant of good faith and fair dealing/bad faith breach of contract; and (3) deceptive business practices under GBL § 349.  (Third-Party Compl.)  The allegations in the Third-Party Complaint are based on Third-Party Defendants' actions during Jonah Doe's settlement negotiations with Poly Prep Defendants.  (*Id.* ¶¶ 27–48, 75–97.)  Jonah Doe alleges Third-Party Defendants provided "an obstructive and unconscionable response[,]" "refused to use its ample resources to effectuate a fair settlement of [Jonah Doe's] bona fide claims well within its policy limits," and "engag[ed] in a deception" of "improper coverage positions" that "delayed [Jonah Doe] for months, if not years, from being in a position to safely agree to a settlement that involved a stipulated judgment against [Third-Party Defendant]."  (*Id.* ¶¶ 6–7.)

On September 30, 2025, Third-Party Defendants filed this motion to vacate the order granting leave to implead and file a third-party complaint and to stay or dismiss the action under *Colorado River*.  (Defs.' Mot. to Dismiss, Docket Entry No. 142.)  On February 6, 2026, the Court heard oral arguments from the parties regarding Third-Party Defendants' motion to dismiss the Third-Party Complaint, and in the alternative, stay or dismiss the action under the *Colorado River* abstention doctrine.  (Min. Order dated Feb. 6, 2026.)

### c.  State Court Action

On June 16, 2023, Poly Prep commenced suit against sixteen named insurers, including Chubb Defendants, in New York Supreme Court, Kings County.[7]  Compl., *Polytechnic*, No.

---

[7] The Court takes judicial notice of the documents filed in the State Court Action.  *See Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, at *2 n.3 (2d Cir. May 7, 2025) (summary

517756/2023.  On November 26, 2025, Poly Prep filed a Corrected Amended Complaint adding a fourth cause of action.[8]  Corrected Am. Compl., *Polytechnic*, No. 517756/2023.[9]  Poly Prep seeks "insurance coverage due for various CVA claims" and lists thirteen underlying tort actions, including Jonah Doe's and the Other Plaintiff's claims.  *Id.* ¶¶ 1, 26.  In the State Court Action,

_____

order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) (internal quotation marks omitted))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998)) (same); *see also Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 754043, at *7 (S.D.N.Y. Mar. 10, 2025) ("[C]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets," but "a document filed in another court . . . [only] establish[es] the fact of such litigation and related filings." (first alteration in original) (citations omitted)); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) ("'Courts may take judicial notice of public documents and matters of public record, including 'document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (alterations in original) (first quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); and then quoting *Glob. Network Commc'ns*, 458 F.3d at 157)).

[8]  The named defendant-insurers are Aetna Insurance Company; Federal Insurance Company; Granite State Insurance Company; Gulf Insurance Company (n/k/a The Travelers Indemnity Company); Indemnity Insurance Company of North America; Insurance Company of North America; The Insurance Company of the State of Pennsylvania; Interstate Indemnity Company (n/k/a AGCS Marine Insurance Company); National Union Fire Insurance Company of Pittsburgh, PA; North River Insurance Company; St. Paul Mercury Insurance Company; Automobile Insurance Company of Hartford, Connecticut (n/k/a Travelers Casualty and Surety Company of America); Aetna Casualty and Surety Company (n/k/a Travelers Casualty and Surety Company of America); Travelers Casualty and Surety Company of America; U.S. Fire Insurance Company; and Vigilant Insurance Company.  Compl., *Polytechnic*, No. 517756/2023 2023.  The Court notes that Insurance Company of North America and Indemnity Insurance Company of North America, named in the caption of the Corrected Amended Complaint, are both predecessors of Defendant Century Indemnity Company.  Corrected Am. Compl. ¶ 9, *Polytechnic*, No. 517756/2023.

[9]  In the State Court Action, Poly Prep refers to its filed amended complaint as the "Corrected Amended Complaint."  *See* Corrected Am. Compl., *Polytechnic*, No. 517756/2023.  The parties in this case adopt Poly Prep's use of "Corrected Amended Complaint" in their motion papers.  (*See, e.g.*, Defs.' Reply 7.)  To avoid confusion, the Court uses "Corrected Amended Complaint" to refer to Poly Prep's amended complaint.

Poly Prep asserts causes of action for: (1) breaches and anticipatory breaches of contract and breaches of covenants of good faith and fair dealing, *id.* ¶¶ 72–77; (2) a declaration that Poly Prep is entitled to insurance coverage under the insurers' policies, *id.* ¶¶ 78–84; (3) bad faith by Chubb Defendants, *id.* ¶¶ 85–91; and (4) violations of GBL § 349 against Chubb Defendants, *id.* ¶¶ 92–117.  Poly Prep seeks damages from insurers' "breach and/or anticipatory breach of their respective contractual obligations to provide coverage (including defense and indemnity) to Poly Prep and its insureds," as well as a declaratory judgment "adjudicating the respective rights, duties and obligations of Poly Prep . . . and the [i]nsurers" under the various policies of insurance issued to Poly Prep.  *Id.* ¶¶ 2–3.  The defendant-insurers filed answers to Poly Prep's Corrected Amended Complaint on February 13 and 20, 2026, following a stipulation among the parties. Stip. Time to Answer, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Dec. 22, 2025), Docket Entry No. 103; *see generally*, Docket, *Polytechnic*, No. 517756/2023.  (*See also* Defs.' Status Report on State Court Action, Docket Entry No. 153; Pl.'s Status Report on State Court Action, Docket Entry No. 154.)  Some defendant-insurers asserted cross-claims, and Travelers[10] and Chubb Defendants filed motions to dismiss.  Chubb's Mem. in Supp. of Mot. to Dismiss, *Polytechnic*, No. 517756/2023; Travelers Not. of Mot. to Dismiss, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Feb. 20, 2026), Docket Entry No. 148.  (*See also* Pl.'s Suppl. Status Report on State Court Action, Docket Entry No. 155; Defs.' Suppl. Status Report on State Court Action.)

---

[10]  In the State Court Action, five defendant-insurers are proceeding as "Travelers" including, Travelers Casualty and Surety Company of America, Gulf Insurance Company, St. Paul Mercury Insurance Company, Automobile Insurance Company of Hartford, Connecticut, and Aetna Casualty and Surety Company (collectively, "Travelers").  (Defs.' Suppl. Status Report on State Court Action, Docket Entry No. 156.)  *See* Aff. in Supp. of Travelers' Mot. to Dismiss, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Feb. 20, 2026), Docket Entry No. 165.

### d. Third-Party Defendants' current motion

Third-Party Defendants argue their impleader into this action is improper because (1) Jonah Doe is not permitted to implead under Rule 14 as a plaintiff against whom no claims have been raised; (2) Third-Party Defendants' insurance policy precludes Jonah Doe from pursuing coverage claims, as it bars Poly Prep Defendants; and (3) judicial economy is better served by Jonah Doe litigating in the State Court Action because (a) Jonah Doe is a related party, as a stand-in for Poly Prep Defendants, who would be litigating the same claims (but also his GBL § 349 claim) that Poly Prep is litigating in the State Court Action; (b) Third-Party Defendants will have to implead many of the insurers into this federal action to resolve issues already pending in the State Court Action;[11] and (c) the Executed Settlement Agreement between Poly Prep Defendants and Jonah Doe does not specify which claims Poly Prep Defendants will retain, and it would unduly prejudice and burden Third-Party Defendants to force them to defend against Poly Prep Defendants' claims here and in the State Court Action. (Defs.' Mem. 2–3; Defs.' Reply in Supp. of Mot. to Dismiss 2, 8–9 ("Defs.' Reply"), Docket Entry No. 144.) Third-Party Defendants also argue that Jonah Doe delayed notifying the Court about the settlement reached by the Other Plaintiffs, making this action a "sham." (Defs.' Reply 2.) In the alternative, Third-

---

[11] In their motion papers, Third-Party Defendants do not specify which insurance companies they would implead, but Third-Party Defendants contend that Poly Prep's Corrected Amended Complaint demonstrates that other insurers had policies in effect at the time of Jonah Doe's alleged abuse. (Tr. of Oral Argument 11:9–14, 34:24–35:18, Docket Entry No. 157.) Third-Party Defendants argue they have "no understanding as to why Poly Prep only assigned [Jonah Doe] rights with respect to its claims against Chubb, and not these other insurers who, according to Poly Prep, were also on the risk during the period of [Jonah Doe]'s alleged abuse." (Defs.' Reply 9 n.5.) The insurance policies annexed to the Corrected Amended Complaint allege Poly Prep held several additional insurance policies between 1981 and 1985, the period of Jonah Doe's alleged abuse, including with Granite State Insurance Company, Interstate Indemnity Company Excess Liability, U.S. Fire Excess Liability Insurance, and St. Paul Mercury Insurance Company. Insurance Policies, annexed to Corrected Am. Compl. in Ex. A, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Nov. 26, 2025), Docket Entry No. 102.

Party Defendants argue the Court should stay or dismiss the action under the *Colorado River* abstention doctrine pending the resolution of the State Court Action involving Poly Prep, Chubb Defendants and others.  (Defs.' Mem. 2–3.)

Jonah Doe argues that impleader is proper because (1) judicial economy is served due to the overlap in evidence between the Poly Prep Action and the Third-Party Action; (2) Third-Party Defendants provide no evidence of prejudice following the settlement of claims of the Other Plaintiffs; (3) the insurance policy does not bar joinder because its insureds liability has already been reduced to a judgment; and (4) abstention under the *Colorado River* abstention doctrine does not apply because this action and the State Court Action are not parallel proceedings.  (Pl.'s Opp'n 1–2.)

## II.  Discussion

### a.  Standards of review

#### i.  Impleader

Federal Rule of Civil Procedure 14(a) ("Rule 14") states:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed R. Civ. P. 14(a)(2).  "[An] impleader action must be dependent on, or derivative of, the main [ ] claim." *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000); *see also 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 15-CV-4516, 2016 WL 5372804, at *4 (E.D.N.Y. Sep. 26, 2016) ("[I]t is well-settled in the Second Circuit that an impleader or third-party action must be 'dependent on' or 'derivative of' the main claim." (quoting *Intellipayment, LLC v. Trimarco*, No. 15-CV-1566, 2016 WL 1239261, at *3 (E.D.N.Y. Mar. 29,

10

2016))).  Impleading a third party is appropriate where the third-party defendant is "potentially secondarily liable as a contributor to the defendant." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984); *E.C. Contracting, Inc. v. D.F. Pray, Inc.*, No. 19-CV-6813, 2022 WL 877809, at *4 (E.D.N.Y. Jan. 12, 2022) (quoting *id.*) (collecting cases), *report and recommendation adopted*, No. 19-CV-6813, 2022 WL 875210 (E.D.N.Y. Mar. 24, 2022).  Rule 14 is designed "to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." *iBasis Glob., Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 74 (E.D.N.Y. 2011) (quoting *Hines v. Citibank, N.A.*, No. 96-CV-2565, 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999)); *see also E.C. Contracting, Inc.*, 2022 WL 877809, at *4 (same).  Thus, "[t]he traditional grounds for a third-party action are indemnification, contribution, or subrogation.'" *Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 402 (E.D.N.Y. 2009); *see E.C. Contracting, Inc.*, 2022 WL 877809, at *4 (quoting *Intellipayment*, 2016 WL 1239261, at *3) (same); *Intellipayment*, 2016 WL 1239261, at *3 (quoting *Falcone*, 659 F. Supp. 2d at 402) (same).

"Factors relevant to determining whether to grant leave to implead a third party include: (a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted." *iBasis Glob., Inc.*, 278 F.R.D. at 74 (quoting *Capitol Recs., Inc. v. City Hall Recs., Inc.*, No. 07-CV-6488, 2008 WL 2811481, at *3 (S.D.N.Y. July 18, 2008)); *Falcone*, 659 F. Supp. 2d at 402 (quoting same).  "The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's

11

discretion." *Kenneth Leventhal*, 736 F.2d at 32; *see E.C. Contracting, Inc.*, 2022 WL 877809, at *4 ("A district court has considerable discretion in determining a Rule 14(a) motion." (quoting *Capitol Recs., Inc.*, 2008 WL 2811481, at *2)); *iBasis Glob., Inc.*, 278 F.R.D. at 74 ("[T]he right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." (internal quotations marks and citation omitted)).

### ii.   Review of Magistrate Judge's Order

"A magistrate judge is authorized 'to make findings as to non-dispositive . . . matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were clearly erroneous or contrary to law.'" *Secs. & Exch. Comm'n v. NIR Grp., LLC*, No. 11-CV-4723, 2025 WL 446243, at *1 (E.D.N.Y. Feb. 10, 2025) (quoting *United States v. Town of Oyster Bay*, No. 14-CV-2317, 2022 WL 4485154, at *2 (E.D.N.Y. Sep. 27, 2022)); *Town of Oyster Bay*, 2022 WL 4485154, at *2 (quoting *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)) (same); *see also Sampedro v. Silver Point Cap., L.P.*, 958 F.3d 140, 142 & n.1 (2d Cir. 2020) (affirming district court's application of "clear error" review to magistrate judge's discovery order).  An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 90 (2d Cir. 2023) (quoting *Atl. Specialty Ins. v. Coastal Env't Grp. Inc.*, 945 F.3d 53, 63 (2d Cir. 2019)); *United States v. Dumitru*, 991 F.3d 427, 436 (2d Cir. 2021) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)) (same); *see also Krick v. Raytheon Co.*, 757 F. Supp. 3d 342, 346 (E.D.N.Y. 2024) ("An order is clearly erroneous if, based on all the evidence, a reviewing court is left with the definite and firm conviction that a mistake has been

committed . . . ." (internal quotation marks omitted) (quoting *Storms v. United States*, No. 13-CV-811, 2014 WL 3547016, at \*4 (E.D.N.Y. July 16, 2014))).  An order "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 276–77 (E.D.N.Y. 2022) (quoting *Weiner v. McKeefery,* No. 11-CV-2254, 2014 WL 2048381, at \*3 (E.D.N.Y. May 19, 2014)); *see also Krick*, 757 F. Supp. 3d at 346 (quoting same).  Under this highly deferential standard, "magistrate judges are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 219 (E.D.N.Y. 2021) (citing *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009)).  "Thus, 'an objecting party carries a heavy burden to prove error.'" *Gonzalez v. Wicked Taco LLC*, 795 F. Supp. 3d 401, 404 (E.D.N.Y. Aug. 18, 2025) (quoting *Rivera v. Lettire Constr. Corp.*, No. 21-CV-6006, 2022 WL 14891414, at \*2 (S.D.N.Y. Oct. 26, 2022)) (appeal of magistrate judge order conditionally certifying a Fair Labor Standards Act ("FLSA") collective and denying reconsideration of the conditional certification order); *Krick*, 757 F. Supp. 3d at 346 (appeal of magistrate judge order granting motion to withdraw as counsel); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (appeal of magistrate judge order denying conditional certification of FLSA collective); *see also Macchia v. ADP, Inc.*, 711 F. Supp. 3d 162, 166 (E.D.N.Y. 2024) ("[A] party seeking to overturn or modify a discovery order [by a magistrate judge] bears a heavy burden"); *Delgado v. Donald J. Trump for President, Inc.*, No. 19-CV-11764, 2024 WL 3639541, at \*1 (S.D.N.Y. Aug. 1, 2024) (quoting *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, No. 02-CV-795, 2005 WL 551092, at \*1 (S.D.N.Y. Mar. 9, 2005)) (same); *In re Alpene, Ltd.*, No. 21-MC-2547, 2023 WL 5237336, at \*4 (E.D.N.Y. Aug. 15, 2023) (quoting *Wager v. G4S Secure Integration, LLC*, No. 19-CV-3547, 2021 WL 293076,

at *2 (S.D.N.Y. Jan. 28, 2021)) (same).  When a party serves and files objections to a magistrate judge's decision on "a pretrial matter not dispositive of a party's claim or defense," "[t]he district judge in the case must consider [those] timely objections" to the magistrate judge's decision, "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) (noting that Fed. R. Civ. P. 72(a) "requires a district court to consider a party's timely objections to a magistrate judge's order deciding a 'pretrial matter not dispositive of a party's claim or defense' and to 'modify or set aside any part of the order that is clearly erroneous or is contrary to law'" (quoting *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008))); *Febrianti v. NYC Health & Hosps.*, No. 23-CV-6175, 2025 WL 294658, at *2 (S.D.N.Y. Jan. 24, 2025) (noting that "the district court must review the objections and 'modify or set aside any part of the [magistrate judge's non-dispositive] order that is clearly erroneous or is contrary to law.'" (quoting *Trs. of Nat'l Ret. Fund v. Wildwood Corp.*, No. 11-CV-6287, 2014 WL 1918080, at *1 (S.D.N.Y. May 12, 2014))).

### iii.   Motion to vacate a Third-Party Action

To vacate an order granting a third-party claim, Rule 14(a) allows any party to "move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4).  In deciding whether to vacate an order granting leave to file a third-party complaint under Rule 14, courts consider the "same factors" as a motion to grant leave to serve a third-party complaint. *Kenny v. City of New York*, No. 09-CV-1422, 2011 WL 4460598, at *2 (E.D.N.Y. Sep. 26, 2011) (citing *Salomon v. Burr Manor Ests., Inc.*, 635 F. Supp. 2d 196, 200 (E.D.N.Y. 2009)).  These factors include: "(a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would

14

prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted." *iBasis Glob., Inc.*, 278 F.R.D. at 74 (quoting *Capitol Recs., Inc.,* 2008 WL 2811481, at *3); *Falcone*, 659 F. Supp. 2d at 402 (quoting same); *see also Off. Create Corp. v. 1st Playable Prods., LLC*, No. 23-CV-91, 2024 WL 980061, at *1 (N.D.N.Y. Mar. 7, 2024) (quoting *iBasis Glob., Inc.*, 278 F.R.D. at 74) (same); *Honeywell Int'l Inc. v. Buckeye Partners, L.P.*, No. 18-CV-646, 2021 WL 2621137, at *5 (N.D.N.Y. June 25, 2021) (quoting *Salomon*, 635 F. Supp. 2d at 200) (same); *Ye v. Gold Scollar Moshan PLLC*, No. 14-CV-7683, 2016 WL 7118286, at *2 (S.D.N.Y. Dec. 6, 2016) (quoting *Murphy v. Keller Indus., Inc.*, 201 F.R.D. 317, 320 (S.D.N.Y. 2001) (same). "[C]ourts have viewed a motion to vacate under Rule 14 as the appropriate mechanism where a third-party defendant is not attacking the merits of the third-party claim but the propriety of the impleader." *Salomon*, 635 F. Supp. 2d at 200 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1460, at 459–60 (2d ed. 1990)); *see* 6 Mary Kay Kane & Howard M. Erichson, *Federal Practice & Procedure (Wright & Miller)* § 1460 (3d ed. and Sep. 2025 update) ("The form of or the name given to the motion is not significant, let alone determinative.  Thus, whenever a motion to dismiss or to strike, or to vacate, or for a judgment on the pleadings, or for a summary judgment actually challenges the desirability of the impleader, it will be treated accordingly."); *see also Greene v. City of New York*, No. 08-CV-243, 2010 WL 1936224, at *2 (E.D.N.Y. May 12, 2010) (noting "Rule 14(a) of the Federal Rules of Civil Procedure, and not Rule 12, governs third-party practice"); *Rosalis v. Universal Distribs., Inc.*, 21 F.R.D. 169, 172 (D. Conn. 1957) (finding third-party's motion challenging propriety of impleader was properly construed as a motion to vacate the prior order granting leave to implead and not as a motion to dismiss); *Falcone v. City of New York*, 2 F.R.D. 87, 89 (E.D.N.Y. 1941) ("If any party desires to test the propriety of an order permitting a

third-party to be brought in, the proper procedure is to move to vacate such order." (quoting *Satink v. Twp. of Holland*, 28 F. Supp. 67 (D.N.J. 1939))).[12]

### iv.   *Colorado River* abstention doctrine

The Supreme Court has held that a federal court may abstain from exercising jurisdiction over a case when there is a pending parallel state court proceeding and certain factors weigh in favor of abstention.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19 (1976); *see also Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) ("[A] federal court may abstain from exercising jurisdiction where an existing parallel state-court litigation would accomplish a 'comprehensive disposition of litigation.'" (quoting *Colorado River*, 424 U.S. at 813, 817–18)); *Krondes v. Nationstar Mortg., LLC*, 789 F. App'x 913, 914 (2d Cir. 2020) ("Under the *Colorado River* abstention doctrine, 'a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources.'" (internal quotation marks omitted) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012))); *Urquizo v. Cmty. Loan Servicing LLC*, No. 24-CV-909, 2025 WL 1093073, at *4 (E.D.N.Y. Apr. 11, 2025) (quoting *Mochary*, 42 F.4th at 85) (same).

"Federal and state proceedings are parallel for purposes of abstention when the two proceedings are 'essentially the same' — when there is an identity of parties, and the issues and

---

[12]  Although Third-Party Defendants style their briefing as a motion to dismiss, Third-Party Defendants do not provide any grounds for dismissal under Rule 12(b) of the Federal Rules of Civil Procedure and their arguments challenge the propriety of the impleader claim and not the merits of Jonah Doe's claim.  (*See generally* Defs.' Mem. and Reply.)  Therefore, the Court considers Third-Party Defendants' motion as a motion to vacate the order granting Jonah Doe leave to implead Third-Party Defendants and file a third-party complaint.  *Salomon v. Burr Manor Ests., Inc.*, 635 F. Supp. 2d 196, 200 (E.D.N.Y. 2009) (treating the third-party defendants' motion challenging impleader as a motion to vacate when third-party defendants framed the motion as a motion to dismiss).

relief sought are the same." *U.S. Bank Nat'l Ass'n v. East Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (quoting *Nat'l Union Fire Ins. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)); *see also Yu v. Gao*, No. 24-CV-3902, 2025 WL 80658, at *4 (E.D.N.Y. Jan. 13, 2025) ("[R]aising an alternative theory of recovery . . . is not enough to differentiate the federal suit from the state suit." (first quoting *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362–63 (2d Cir. 1985); and then citing *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142 (E.D.N.Y. 2013))); *Great S. Bay Med. Care, P.C. v. Allstate Ins.*, 204 F. Supp. 2d 492, 496 (E.D.N.Y. 2002) ("Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues in different forums.'" (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998))). "Perfect symmetry of parties and issues is not required." *Potente v. Capital One, N.A.*, No. 16-CV-3570, 2018 WL 1882848, at *4 (E.D.N.Y. Apr. 19, 2018) (quoting *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013)). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (quoting *In re Comverse Tech., Inc.*, No. 06-CV-1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)); *see also Harman v. Moss & Moss LLP*, No. 23-CV-10614, 2024 WL 5202549, at *4 (S.D.N.Y. Dec. 23, 2024) ("[T]he parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." (citation omitted)); *JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC*, No. 23-CV-7145, 2024 WL 709068, at *5 (S.D.N.Y. Feb. 21, 2024) ("Parties are substantially similar when the interests of the parties in each case are congruent[,] namely when they would benefit from the same outcome." (alteration in original, internal quotation marks and citation omitted)).

If the proceedings are parallel, the court generally considers the following six *Colorado River* abstention factors, with the balance heavily weighted in favor of the exercise of jurisdiction:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed[] and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara*, 673 F.3d at 100–01 (*Colorado River*, 424 U.S. at 813–14); *see Krondes v. Nationstar Mortg., LLC*, No. 17-CV-4974, 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018) (internal quotation marks omitted) (quoting *Woodford v. Cmty. Action Agency of Greene Cnty.*, 239 F.3d 517, 522 (2d Cir. 2001)) (same), *aff'd*, 789 F. App'x 913 (2d Cir. 2020); *see also Ne. Bldg. Sys. LLC v. Berkley Ins.*, No. 22-CV-5179, 2025 WL 1207669, at *5 (E.D.N.Y. Apr. 25, 2025) (explaining that application of the *Colorado River* factors "does not rest on a mechanical checklist, but [rather] on a careful balancing of the important factors" (alternation in original) (quoting *TD Bank, N.A. v. 202-4 W. 23rd St. Corp.*, 760 F. Supp. 3d 87, 92 (S.D.N.Y. 2024))). Because the balance is heavily weighted in favor of exercising jurisdiction, "[w]here a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara*, 673 F.3d at 101 (quoting *Woodford*, 239 F.3d at 522); *see also LeChase Constr. Servs., LLC v. Argonaut Ins.*, 63 F.4th 160, 173 (2d Cir. 2023) (explaining that a court has "little or no discretion to abstain in a case which does not meet traditional abstention requirements," which, "[i]n the context of *Colorado River* abstention, that means that district courts must carefully consider each of 'six factors,'" and weigh neutral factors in favor of retaining jurisdiction (quoting *Niagara*, 673 F.3d at 99–101)).

18

### b.  Judge Eshkenazi appropriately granted leave to implead.

The Court finds that Judge Eshkenazi's April 2025 Order is not clearly erroneous or contrary to law and therefore denies Third-Party Defendants' motion challenging the impleader action.  The Court finds that Rule 14 permits impleader in this case and that the "no action clause" of the relevant insurance policy does not bar this action.  The Court considers the relevant factors in determining that the impleader was appropriately granted.

### i.  Rule 14 permits impleader

Third-Party Defendants argue, first, that the text of Rule 14(a) does not authorize Jonah Doe's impleader because Jonah Doe is not a "defending party" but a Plaintiff.  (Defs.' Mem. 9–10.)  In support, Third-Party Defendants contend that Jonah Doe is not permitted to implead as a plaintiff under Rule 14(b) because no claim has been brought against him.  (*Id.* at 10 n.5; Defs.' Reply 4 n.3 (quoting Fed. R. Civ. P. 14(b) ("When a claim is asserted against a plaintiff, the plaintiff may bring in a third party if this rule would allow a defendant to do so.")).)  Second, Third-Party Defendants argue that under a strict reading of Rule 14, Jonah Doe does not satisfy the requirements of impleader, and no case law exists "authorizing the use of Rule 14 in similar circumstances."  (Defs.' Mem. 10.)  Third, Third-Party Defendants argue that "while some courts have allowed insured-defendants to implead liability insurers in underlying personal injury actions, they have almost universally done so where an insured has been forced to undertake his own defense, which is not the case here."  (*Id.*)

Jonah Doe argues, first, that he stands in the shoes of Poly Prep Defendants, as the assignee of Poly Prep Defendants' claims against Third-Party Defendants for his underlying sexual abuse claim, and he is "the only party that could feasibly join [Third-Party Defendants] to this [a]ction."  (Pl.'s Opp'n 12.)  Second, Jonah Doe states that Third-Party Defendants do not

19

"challenge that [they] may be 'secondarily or derivatively liable' for all or part of [Jonah Doe]'s claim against the Poly Prep Defendants."  (*Id.* at 11).  Third, Jonah Doe argues that if impleader is denied, he will have to initiate a new action or intervene in a separate action to assert his claims, in contravention of the "core purpose of Rule 14."  (*Id.* at 12.)  Fourth, Jonah Doe argues that his claims "could more efficiently be litigated before this Court because of the overlap of evidence between the now resolved sexual abuse claims and the currently pending coverage claims."  (*Id.*)

In the April 2025 Order, Judge Eshkenazi found Poly Prep Defendants properly assigned the claims against Third-Party Defendants to Jonah Doe under New York law, thus permitting Jonah Doe to implead Third-Party Defendants.  (April 2025 Order 7–8 (citing N.Y. Gen. Oblig. Law § 13-101).)

"The general purpose of Rule 14 is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third-party defendant." *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 585 (2d Cir. 1965) (quoting 3 Moore, *Federal Practice* § 14.04, at 501 (1964)); *Dery v. Wyer*, 265 F.2d 804, 806–07 (2d Cir. 1959) (quoting same); *Olshan Frome Wolosky LLP v. Comm. to Restore Nymox S'holder Value Inc.*, No. 24-CV-2134, 2025 WL 880545, at *8 (S.D.N.Y. Mar. 21, 2025) (quoting *Dery*, 265 F.2d at 806–07) (same); *Trisura Specialty Ins. v. Robinson*, No. 22-CV-3216, 2023 WL 4539843, at *3 (E.D.N.Y. July 14, 2023) (quoting *Ouattara v. Amazon, Inc.*, No. 22-CV-1753, 2022 WL 17167983, at *1 (S.D.N.Y. Nov. 22, 2022)) (same), *report and recommendation adopted*, 2023 WL 4940170 (E.D.N.Y. Aug. 1, 2023).  "Rule 14(a) was designed 'to promote judicial economy

by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim.'" *iBasis Glob., Inc.*, 278 F.R.D. at 74 (quoting *Hines*, 1999 WL 440616, at *2); *Graham-Johnson v. City of Albany*, No. 19-CV-1274, 2021 WL 1614763, at *8 (N.D.N.Y. Apr. 26, 2021) (quoting *id.*); *Phila. Indem. Ins. v. Amazon.com, Inc.*, No. 17-CV-3115, 2018 WL 11454818, at *2 (E.D.N.Y. Jan. 24, 2018) (quoting same). "It is well-settled that a third-party action, also known as an impleader action, must be dependent on, or derivative of, the main claim." *iBasis Glob., Inc.*, 278 F.R.D. at 74 (citing *Bank of India*, 239 F.3d at 438); *E.C. Contracting, Inc.*, 2022 WL 877809, at *4 ("A third-party claim may be asserted when the third party's liability is somehow dependent on the outcome of the main action or when the third party is secondarily liable to the defendant." (citing *Kenneth Leventhal*, 736 F.2d at 31)). A third-party claim is "dependent on" another if there is a strong "causal link" between the two, such that the outcome of the second is contingent on the first, but it must not be a "speculative, 'but for' causal link" or insufficiently direct. *Kenneth Leventhal*, 736 F.2d at 31; *see E.C. Contracting, Inc.*, 2022 WL 877809, at *4 (citing *id.*); *E.C. Contracting, Inc. v. D.F. Pray, Inc.* (*E.C. Contracting, Inc. II*), No. 19-CV-6813, 2021 WL 1152938, at *4 (E.D.N.Y. Mar. 26, 2021) ("[A] claim is not 'dependent on' another if the connection between the two is based in [sic] a 'speculative but for' argument, or if the relationship between the claims is insufficiently 'direct.'" (quoting *Kenneth Leventhal*, 736 F.2d at 31–32)). In addition, a third-party claim is "derivative of" the main claim when a third-party defendant is "potentially secondarily liable as a contributor to the defendant." *See E.C. Contracting, Inc.*, 2022 WL 877809, at *4 (quoting *Kenneth Leventhal*, 736 F.2d at 31). "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff." 6 Mary Kay

21

Kane & Howard M. Erichson, *Federal Practice & Procedure (Wright & Miller)* § 1446 (3d ed. and Sep. 2025 update); *see also Falcone*, 659 F. Supp. 2d at 401–02 ("The traditional grounds for a third-party action are indemnification, contribution, or subrogation. Regardless of the type of claim asserted, [t]he outcome of the third-party claim must be contingent on the outcome of the main claim." (alteration in original) (internal citations and quotation marks omitted)). "The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion." *Kenneth Leventhal*, 736 F.2d at 31; *see E.C. Contracting, Inc. II*, 2021 WL 1152938, at *4 ("District courts have discretion to grant or deny a Rule 14(a) motion in the interest of judicial economy." (citing *id.*)); *iBasis Glob., Inc.*, 278 F.R.D. at 74 ("[T]he decision whether to permit impleader rests within the sound discretion of the district court." (quoting *Consol. Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y. 1987)).

Third-Party Defendants do not meet the "heavy burden" required to set aside Judge Eshkenazi's order because (1) Poly Prep Defendants' assignment of claims to Jonah Doe was valid; (2) Third-Party Defendants do not present sufficient support to show that an assignee with indemnity and breach of contract claims cannot implead an insurer; and (3) impleader in this case advances the core purpose of Rule 14 since Jonah Doe's claims are derivative of the Poly Prep Action and it serves judicial economy.

First, the Court finds Judge Eshkenazi did not err in concluding that the claim assignments by Poly Prep Defendants to Jonah Doe are valid because the three claims Jonah Doe asserts in this action — (1) breach of contract/duty to indemnify, (2) breach of implied covenant of good faith and fair dealing/bad faith breach of contract, and (3) deceptive business practices under GBL § 349 — are not prohibited by New York law. *See* N.Y. Gen. Oblig. Law § 13-101 (describing situations where a claim is allowed to be transferred); *Lucas v. United States*, 775

22

F.3d 544, 549 (2d Cir. 2015) ("New York law permits transfers — including assignments — of causes of action, except for a cause of action for personal injury or one in contravention of statute or public policy." (citing *id.*)).  Having been assigned claims from Poly Prep Defendants, Jonah Doe can rightfully assert those claims against Third-Party Defendants.  *See, e.g.*, *Peterson v. Allcity Ins.*, 472 F.2d 71, 74–75 (2d Cir. 1972) (assignee of insured asserting bad faith cause of action against insurance company for uncooperative behavior during settlement of underlying claim); *Macklin v. Sparta Ins.*, No. 20-CV-5372, 2022 WL 4592803, at *5 (S.D.N.Y. Sep. 30, 2022) (plaintiff, individually and as assignee of insured, filing breach of contract and breach of duty of good faith claims against insurance company to enforce judgment); *see also McWilliams v. Liberty Mut. Grp., Inc.*, No. 24-CV-3432, 2024 WL 3925537, at *2 (S.D.N.Y. Aug. 23, 2024) ("[A] third party may bring a bad faith claim against an insurance company when the insured assigns its contractual rights to that third party, most often a party that obtained a judgment against the insured.").  Further, as Third-Party Defendants do not challenge the assignment, they have not made the requisite showing of "clear error" required to overturn Judge Eshkenazi's decision.

Second, Third-Party Defendants do not persuasively argue that the Court should disallow impleader simply because courts usually only "allow[] insured-defendants to implead liability insurers in underlying personal injury actions . . . where an insured has been forced to undertake his own defense."[13]  (Defs.' Mem. 10.)  Third-Party Defendants do not present any binding

---

[13]  The Court understands Third-Party Defendants to argue that they would be prejudiced if the Court allows the impleader to proceed.  (*See* Defs.' Mem. 12–13.)  This alleged prejudice could arise against Third-Party Defendants in having to provide a defense to a personal injury claim while also defending itself in contract-based claims.  *See Schevling v. Johnson*, 122 F. Supp. 87 (D. Conn. 1953) (discussing potential prejudice of the jury against insurers in a personal injury action with a third-party claim against impled insurers if the jury learned that

caselaw in support.  (*See id.*)  Their argument that they were "unable to find a single case authorizing the use of Rule 14(a) in similar circumstances," (*id.*), is not sufficient to demonstrate Judge Eshkenazi's decision is contrary to law.

Third, although the text of Rule 14(a) says a "defending party" may bring a third-party complaint, under these circumstances, Third-Party Defendants have not shown that Judge Eshkenazi's authorization of impleader is clearly erroneous because the claims asserted in the Third-Party Action are derivative of, or dependent on, the Poly Prep Action and impleader serves judicial economy.  The crucial characteristic of a Rule 14 claim is that the claim is "dependent on, or derivative of, the main [ ] claim."  *Bank of India*, 239 F.3d at 438.  Jonah Doe's claims in this case, including the "traditional ground[]" of indemnity, breach of bad faith, and deceptive business practices under GBL § 349, are all dependent on the claims in the Poly Prep Action because his recovery from Third-Party Defendants is "contingent on" Poly Prep Defendants' liability.  (*See* Third-Party Compl. ¶¶ 27–50, 75–90.)

Judge Eshkenazi did not err in finding it was more efficient to try the Third-Party Defendants' claims in this case.  The Second Circuit has held that judicial economy is paramount in permitting impleader under Rule 14 in order to "save the time and cost of a reduplication of evidence" and "do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third-party defendant."  *Agrashell, Inc.*, 344 F.2d at 585.  Jonah Doe argues that impleader is warranted to prevent additional lag time between settlement in the Poly Prep Action and recovery, and Jonah Doe also argues that it

---

insured-defendant in underlying personal injury case carried insurance), *aff'd sub nom.*, *Schevling v. Toohey*, 213 F.2d 959 (2d Cir. 1954).  However, in this case, the underlying personal injury action has been reduced to a settlement with a fixed amount, therefore nullifying any risk of prejudice to Third-Party Defendants from impleader.

is more efficient to try the claims against Third-Party Defendants in this action because of the "overlap of evidence." (Pl.'s Opp'n 4, 12.) Judge Eshkenazi found impleader would facilitate judicial efficiency because "[i]f the third-party complaint is not allowed, [Jonah Doe] would have to start a separate action, and repeat much of the proceedings and discovery that has already occurred in the case . . . ." (April 2025 Order 6 (quoting *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 141 (S.D.N.Y. 2003)).) Indeed, without the impleader, Jonah Doe would have to bring a separate action for recovery under the Executed Settlement Agreement. The result would be a second suit where Jonah Doe will incur additional costs and a "serious handicap" of time difference between settlement and judgment. While not in exact alignment with the Rule's wording, impleader in this case complies with the purpose of Rule 14 by promoting judicial economy. Third-Party Defendant's textual argument about Rule 14 insufficient to show Judge Eshkenazi's April 2025 Order is contrary to law when the purpose of Rule 14 is advanced through impleader.

### ii.    Impleader is not barred by the "no action clause"

Third-Party Defendants argue this impleader action is barred by the "no action clause" of the underlying Aetna insurance policy, (the "Aetna Policy"). (Aetna Policy, annexed to Defs.'s Mem. as Ex. A, Docket Entry 142-2.) The Aetna Policy's Condition 5, "Action Against Company" (the "No Action Clause"),[14] provides, in relevant part:

---

[14] Jonah Doe's Third-Party Complaint lists "various [Third-Party Defendant] policies" under which Third-Party Defendants insured Poly Prep Defendants for the relevant time period including the Aetna Policy and three Federal Insurance Company policies, and it does not annex any specific insurance policies. (Third-Party Compl. ¶ 23.) Third-Party Defendants' motion, however, only raises the No Action Clause argument with respect to the Aetna Policy because "it is the document from which [Third-Party Defendants'] liability is alleged to arise and because [ ] [Jonah Doe's] Third-Party Complaint relies heavily upon its terms and effect in setting forth its

> No action shall lie against the [insurer] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the [insurer] . . . .
>
> No person or organization shall have any right under this policy to join the [insurer] as a party to any action against the insured to determine the insured's liability, nor shall the [insurer] be impleaded by the insured or his legal representative.

(*Id.*; Defs.' Mem. 13.)

Third-Party Defendants argue first, the No Action Clause is enforceable under New York law and bars joinder or impleader of an insurer by its "plain language." (Defs.' Mem. 14.)  In support, Third-Party Defendants note that several New York courts have declined to enforce no action clauses but only when the insurer had disclaimed coverage by declining to provide a defense to the insured.  (*Id.* at 15 n.7.)  Second, Third-Party Defendants argue that Jonah Doe "does not, and could not, allege that [Third-Party Defendants] denied its duty to defend or refused to provide a defense to Poly Prep Defendants, because [Third-Party Defendants] accepted [their] duty to defend and has in fact been paying Poly Prep's defense costs in the [Third-Party] Action."  (*Id.*)

Jonah Doe argues first that the No Action Clause does not apply to this action because Poly Prep Defendants' liability has already been established and reduced to a judgment,[15] and

---

causes of action."  (Defs.' Mem. 5 n.3.)  Thus, the Court only reviews the No Action Clause in the Aetna Policy in this Memorandum and Order.

[15]  At oral argument, the parties disputed whether the Court entered judgment in favor of Jonah Doe against Poly Prep Defendants.  (Tr. of Oral Argument 39:5–40:17.)  Jonah Doe submitted a Stipulation for Order and Entry of Judgment as an attachment to the Third-Party Complaint on April 16, 2025.  (Stip. for Order and Entry of J., annexed to Third-Party Compl. as Ex. E, Docket Entry No. 122-3.)  It is signed by counsel for Jonah Doe and Poly Prep

26

Jonah Doe is asserting assigned rights. (Pl.'s Opp'n 2, 13–14.) Second, Jonah Doe argues that Third-Party Defendants' position "runs afoul" of Section 3420(a)(2) of the New York Insurance Law, which requires policies in New York to contain a provision allowing a judgment creditor to maintain an action against the defendant-insured's insurer for the amount of such judgment. (*Id.* at 14 (citing N.Y. Ins. L. § 3420(a)(2)).) Third, in the alternative, Jonah Doe argues that even without a judgment, the No Action Clause does not prevent impleader because Third-Party Defendants' bad faith breach of contract excuses Jonah Doe, as the assignee of the insureds, from his obligations under Third-Party Defendants' policies. (*Id.* at 14–15.) In his Third-Party Complaint, Jonah Doe alleges that Third-Party Defendants effectively denied coverage for Jonah Doe's claims by acting in bad faith, "tak[ing] improper coverage positions and engag[ing] in unjustifiable delays," (Third-Party Compl. ¶ 99), that "denied [Poly Prep] the full benefit of their insurance coverage," (*id.* ¶ 100). "Rather than openly and directly denying coverage, [Third-Party Defendants] ha[ve] purported to reserve [their] rights instead, despite the fact that [Third-Party Defendants] refuse[] to promptly, reasonably, and equitably settle these claims." (*Id.* ¶ 97.) Jonah Doe asserts that during mediation and settlement discussions, Third-Party Defendants

---

Defendants. (*Id.*) Jonah Doe did not file the Stipulation separately for the Court's approval and entry, and the Court has not entered judgment. (*See* Pl.'s Ltr. Re Stip. for Order and Entry of J., Docket Entry No. 150.) On February 9, 2026, Jonah Doe requested leave to file a Stipulation for Order and Entry of Judgment, which Third-Party Defendants opposed. (*Id.*; Defs.' Reply to Pl.'s Stip. for Order and Entry of J., Docket Entry No. 151.) In their supplemental briefing to the Court following oral argument, Third-Party Defendants argue "[Jonah Doe] has now conceded that the only ground for factually claiming a direct right against Chubb was erroneous" because he does not have a judgment entered against Third-Party Defendants. (Defs.' Reply to Pl.'s Stip. for Order and Entry of J.) Jonah Doe argues his "claim for coverage is not premised upon the entry of the earlier agreed judgment" because Jonah Doe suffered distinct harms from distinct occurrences of sexual abuse. (Pl.'s Reply to Defs.' Reply to Pl.'s Stip. for Order and Entry of J., Docket Entry No. 152.) As discussed in this Section, the Court finds the No Action Clause of the Aetna Policy unenforceable, and therefore, the Aetna Policy does not prevent the impleader of Third-Party Defendants, and a judgment is not required.

instructed Poly Prep Defendants to resolve Jonah Doe's claims as if it were a "prudent uninsured" and "refused to tender any of its [insurance p]olicies' proceeds towards resolving [Jonah Doe's] [a]llegations and his [a]ction, whether by settlement or ultimately by judgment." (*Id.* ¶¶ 44, 47.)  Jonah Doe also alleges that Third-Party Defendants have "not made clear [their] intention to deny coverage," but their conduct during negotiations shows "[they] never intended to cover [Jonah Doe's] claims."  (*Id.* ¶ 7.)

Under New York law, "[i]n construing policy provisions defining the scope of coverage pursuant to a policy of insurance, courts 'first look to the language of the policy.'" [16]  *Regency Condo. v. Dongbu Ins., Ltd.*, 134 N.Y.S.3d 384, 385 (App. Div. 2020) (quoting *ABM Mgmt. Corp. v. Harleysville Worcester Ins.*, 977 N.Y.S.2d 330, 332 (App. Div. 2013)).  "[A]n insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract."  *Fireman's Fund Ins. v. OneBeacon Ins.*, 49 F.4th 105, 112 (2d Cir. 2022) (quoting *Morgan Stanley Grp. Inc. v. New England Ins.*, 225 F.3d 270, 275 (2d Cir. 2000)); *10012 Holdings, Inc. v. Sentinel Ins., Ltd.*, 21 F.4th 216, 220 (2d Cir. 2021) (quoting *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins.*, 472 F.3d 33, 42 (2d Cir. 2006)) (same); *Goldberger v. Paul Revere Life Ins.*, 165 F.3d 180, 182 (2d Cir. 1999) (quoting *Vill. of Sylvan Beach v. Travelers Indemnity*, 55 F.3d 114, 115 (2d Cir. 1995)) (same).  If the terms are unambiguous, courts should enforce the contract as written.  *See Parks Real Est.*, 472 F.3d at 42; *Goldberger*, 165 F.3d at 182 (quoting *Vill. of Sylvan Beach*, 55 F.3d at 115).  However, if the contract is ambiguous, "particularly the language of an exclusion provision," the ambiguity is interpreted in favor of the insured.  *Goldberger*, 165 F.3d at 182 (quoting *Vill. of Sylvan Beach*,

---

[16]  The parties agree that New York law applies.  (*See* Defs.' Mem. 13–14; Pl.'s Opp'n 13.)

55 F.3d at 115); *see Olin Corp. v. Certain Underwriters at Lloyd's London & Longon Mkt. Ins.*, 347 F. App'x 622, 627 (2d Cir. 2009) ("[W]e must resolve any ambiguity 'in favor of the insured[.]'" (quoting *Goldberger*, 165 F.3d at 182)); *Pepsico, Inc. v. Winterthur Int'l Am. Ins.*, 788 N.Y.S.2d 142, 144 (App. Div. 2004) ("[I]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer." (citation omitted)); *see also Dean v. Tower Ins.*, 19 N.Y.3d 704, 708 (2012) ("[A]mbiguities in an insurance policy are to be construed against the insurer." (alteration in original) (quoting *Breed v. Ins. of N. Am.*, 46 N.Y.2d 351, 353 (1978))).  "An ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  *Morgan Stanley Grp. Inc.*, 225 F.3d at 275 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d. Cir. 1997)); *see also Glob. Reinsurance Corp. of Am. v. Century Indemnity Co.*, 22 F.4th 83, 94 (2d Cir. 2021) (quoting *id.*).

The No Action Clause in Aetna Policy's Condition 5 requires as a condition precedent to action against the insurer, the insured's liability to have been finally determined by (1) judgment after actual trial or (2) "written agreement of the insured, the claimant *and* the [insurer]."  (Aetna Policy (emphasis added).)  Impleader of the insurer is not allowed in cases to determine the liability of the insured.  (*Id.*)  These conditions unambiguously impose the obligation of the insured to either secure judgment after trial or a written agreement with the insurer prior to any action against the insurer, including impleader.  *See Aulisio v. California Oil Co.*, 120 N.Y.S.2d 582, 583–84 (Sup. Ct. 1952) (holding the "plain language" of a similar no action clause bars impleader of insurer into an action against the insured to determine liability of the insured).

29

Neither a judgment after trial nor a settlement agreement with the insurer has been secured in this case; thus the plain language of the No Action Clause appears to bar this action. *See Parks Real Est.*, 472 F.3d at 42.

However, some New York courts have refused to give effect to a "no action clause" in an insurance policy when the insurer disclaimed liability and unjustifiably refused to defend the suit. *See Jesse E. Kahn, Inc. v. George E. Driscoll Co.*, 146 N.Y.S.2d 902, 906–07 (Sup. Ct. 1955) (finding a "no action clause" does not prevent insured from impleading a disclaiming insurance company) (collecting cases); *see also Leonardi v. Standard Acc. Ins Co of Detroit*, 212 F.2d 887, 891 (2d Cir. 1954) (finding a "no action clause" "is not intended to cover an action for damages caused by the breach of the covenant to defend" (quoting *Lawrence v. Mass. Bonding & Ins.*, 160 N.Y.S. 883, 885 (App. Term 1916))).[17]  Similarly, New York courts have excused insureds from their obligations under insurance policies, specifically provisions requiring insurer's consent to settle, when an insurer refuses to defend the suit or acts in bad faith with respect to settlement. *See Tindall Corp. v. Berkley Assurance Co.*, No. 22-CV-745, 2025 WL 677028, at *18 (W.D.N.Y. Feb. 21, 2025) ("New York law is clear that where [. . .] an insurer

---

[17]  Jonah Doe pleads Third-Party Defendants breached the covenant of good faith and fair dealing by engaging in unjustifiable delays and effectively denying coverage of Poly Prep Defendants during settlement negotiations. (Third-Party Compl. ¶¶ 44–46 ("[Third-Party Defendants] also advised that Poly Prep should resolve [Jonah Doe's] claims, if at all, as if it were a 'prudent uninsured'.").)  New York courts have found the duty to defend includes a duty to act in "good faith" when determining settlement.  "Because an insurance company has exclusive control over a claim against its insured once it assumes defense of the suit, it has a duty under New York law to act in "good faith" when deciding whether to settle such a claim, and it may be held liable for breach of that duty." *Pinto v. Allstate Ins.*, 221 F.3d 394, 398 (2d Cir. 2000) (citing *Pavia v. State Farm Mut. Auto. Ins.*, 82 N.Y.2d 445, 452–53 (1993)); *Fed. Ins. v. N. Am. Specialty Ins.*, 921 N.Y.S.2d 28, 29 (App. Div. 2011) (same); *see Rockefeller Univ. v. Aetna Cas. & Sur. Co.*, 217 N.Y.S.3d 562 (App. Div. 2024) (analyzing whether insurer acted in good faith when the insurer refused to settle).  Thus, the Court finds Jonah Doe's allegations analogous to cases where a party pleaded breach of the duty to defend claims.

30

denies liability, the insured is free to enter into a reasonable settlement without obtaining the insurer's consent." (alteration in original) (quoting *J.P. Morgan Secs., Inc. v. Vigilant Ins.*, 39 N.Y.S.3d 864, 865 (Sup. Ct. 2016), *aff'd*, 58 N.Y.S.3d 38 (App. Div. 2017))), *report and recommendation adopted*, No. 22-CV-745, 2025 WL 1399110 (May 14, 2025), *appeal docketed*, No. 25-1448 (2d Cir. filed June 9, 2025); *see also Harleysville Worcester Ins. v. Wesco Ins., Inc.*, 314 F. Supp. 3d 534, 550 (S.D.N.Y. 2018) ("[W]here an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement or compromise of the injured party's claim, and is then entitled to reimbursement from the insurer." (quoting *Isadore Rosen & Sons, Inc. v. Sec. Mut. Ins. of N.Y.*, 31 N.Y.2d 342, 347 (1972))), *aff'd*, 752 F. App'x 90 (2d Cir. 2019); *PB Ams. Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 250 (S.D.N.Y. 2010) ("[It is a] well-settled New York rule that 'where an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement or compromise of the injured party's claim, and is then entitled to reimbursement from the insurer, even though the policy purports to avoid liability for settlements made without the insurer's consent.'" (quoting *Isadore Rosen & Sons, Inc.*, 31 N.Y.2d at 347)).

Other courts have declined to enforce no action clauses when insurers have disclaimed coverage or declined to provide a defense to the insured because of the clause's contravention to Rule 14, which permits impleading. *See, e.g.*, *Colton v. Swain*, 527 F.2d 296, 299 (7th Cir. 1975) (declining to enforce a no action clause because it conflicts with Rule 14, which was "designed to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted"); *Rankin v. Conn. Mun. Elec. Energy Coop.*, No. 23-CV-805, 2024 WL 1344790, at *7 (D. Conn. Mar. 30, 2024) (quoting *id.*) (same); *Purcell v. U.S.*, 242 F. Supp. 789 (D. Minn. 1965) (declining to enforce the "no action" clause where it was "held to be in conflict with Rule 14(a)"); *Rouley v. State Farm Mut. Auto. Ins.*, 235

31

F. Supp. 786 (W.D. La. 1964) (holding "no action clause" did not prohibit impleader of the defendant-insurer for contribution and both the Federal Rules of Civil Procedure and Louisiana civil procedure permitted third-party practice for contribution).

The Court declines to enforce the No Action Clause in this case because Jonah Doe alleges sufficient facts to support his claim, discussed *infra* in Section II.b.iii.4, that Third-Party Defendants may have engaged in bad faith behavior during settlement and effectively denied coverage. *See Jesse E. Kahn, Inc.*, 146 N.Y.S.2d at 906–07 (declining to enforce a "no action clause" against a disclaiming insurance company); *Leonardi*, 212 F.2d at 891 (finding "no action clause" did not prevent the plaintiff from impleading the defendant-insurer who allegedly breached its contract). Third-Party Defendants' denial of coverage is further supported by Third-Party Defendants' moving papers which state their intention to assert coverage defenses. (*See* Defs.' Mem. 20.) The Court is also persuaded to allow this action to proceed pursuant to the policy of Rule 14. *See Colton*, 527 F.2d at 299 (declining to enforce a no action clause because it conflicts with Rule 14); *Rankin*, 2024 WL 1344790, at *7 (same). Enforcing the No Action Clause would result in severe judicial inefficiency given that the parties have already reached a settlement within the bounds of the underlying insurance policy to which Third-Party Defendants are not a party due to alleged bad faith. Since Third-Party Defendants' alleged conduct is inconsistent with reliance on the defense of the No Action Clause and the No Action Clause is directly opposed to Rule 14, which permits impleading, the Court finds the No Action Clause unenforceable in this case. Therefore, the No Action Clause does not prevent the impleader of Third-Party Defendants, and Judge Eshkenazi properly granted impleader in her April 2025 Order.

### iii.  Rule 14 factors

As discussed above, in order to determine whether impleader was appropriately granted, the Court considers, "(a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice [ ] [P]laintiff or [ ] [T]hird-[P]arty [D]efendant; and (d) whether the proposed [T]hird-[P]arty [C]omplaint states a claim upon which relief can be granted." *iBasis Glob., Inc.*, 278 F.R.D. at 74.  The Court reviews Judge Eshkenazi's conclusion for each factor for clear error below.

### 1.  Deliberate delay

Third-Party Defendants do not directly challenge Judge Eshkenazi's finding that Jonah Doe did not deliberately delay filing the motion to implead.  (*See generally* Defs.' Mem. and Reply.)  Rather, Third-Party Defendants argue Jonah Doe "hid[] or manipulated" the formal resolution of the Other Plaintiffs' claims "to provide [Jonah Doe] with the appearance of an ongoing action to support impleader."  (Defs.' Reply 3.)  Third-Party Defendants claim that the Other Plaintiffs and Poly Prep Defendants "essentially reached" a settlement agreement in July of 2024, rather than September 9, 2025, as represented by Jonah Doe.  (*Id.*)  In support of this argument, Third-Party Defendants cite to the absence of filings on the record that relate to any advances in settlement discussions between the entry of a July 30, 2024, letter from Jonah Doe's and the Other Plaintiffs' counsel stating that the Other Plaintiffs reached a settlement agreement with Poly Prep Defendants, (Ltr. Re Settlement Negotiations, Docket Entry No. 107), and the entry of the settlement agreement on September 9, 2025, that included signatures dated July of

33

2024 from all but one Defendant.[18]  (Defs.' Reply 3.)  Third-Party Defendants note that in a September 17, 2024, letter to the Court, (Status Report via Ltr., Docket Entry No. 109), Jonah Doe and the Other Plaintiffs stated that the parties had "scheduled continued settlement discussions," but Third-Party Defendants argue that "by then [the Other Plaintiffs] had settled . . . there were no further 'negotiations' to be had . . . [and] the parties never updated the court on settlement again . . . ."  (Defs.' Reply 3 n.2.)  During oral argument, Jonah Doe denied taking any action to hide or manipulate the settlement of the Other Plaintiffs' claims.  (Tr. of Oral Argument 9:6–16.)

In her decision, Judge Eshkenazi found Jonah Doe did not deliberately delay in filing his motion for leave to implead Third-Party Defendants because of his "prompt filing of the motion to implead following the execution of the [Executed] [S]ettlement [A]greement."  (April 2025 Order 5–6.)  Jonah Doe and Poly Prep Defendants filed an Executed Settlement Agreement in favor of Jonah Doe on September 23, 2024, and Jonah Doe immediately filed his motion to implead on September 25, 2024.  (*Id.* at 5.)

In determining deliberate delay, courts look at the promptness of the movant's motion for impleader relative to the operative pleadings in the underlying action and consider the plausibility of movant's explanations for delay.  *See iBasis Glob., Inc.*, 278 F.R.D. at 76 ("'A party's lack of diligence and absence of good cause for such a delay' is grounds for a court to deny a motion to implead a third-party defendant as untimely." (quoting *Dos Santos v. Terrace Place Realty, Inc.*, 433 F. Supp. 2d 326, 336 (S.D.N.Y. 2006))); *see also, e.g.*, *Phila. Indem. Ins.*, 2018 WL 11454818, at *3 (finding nine-month delay between impleader motion and operative

---

[18]  One of the Poly Prep Defendants, Ralph Dupee, signed the settlement agreement on September 9, 2025.  (Other Pls.' Settlement Agreement 21.)

pleadings due to intervening typical litigation events such as change of venue and change of scheduling deadlines was not undue delay or dereliction); *Salomon*, 635 F. Supp. 2d at 200–01 (holding that a five-month delay between operative pleading and motion for impleader attributable to settlement negotiations was a plausible explanation).

Judge Eshkenazi's decision that Jonah Doe filed the motion to implead as soon as he settled with Poly Prep Defendants is supported by the record. (*See* Executed Settlement Agreement; Pl.'s Mot. for Leave under Seal, Docket Entry No. 111; Pl.'s Mot. to Implead; April 2025 Order 5–6.) The negotiations involving the Other Plaintiffs' claims are immaterial to the propriety of impleader for Jonah Doe's claims. First, Jonah Doe filed the motion for impleader right after the parties finalized the Executed Settlement Agreement, when Jonah Doe was assigned the pertinent claims, thus he acted promptly. Second, Third-Party Defendants' argument regarding Jonah Doe's delayed notification to the Court of the Other Plaintiffs' settlement does not render Judge Eshkenazi's decision about the timeliness of impleader contrary to law because the Other Plaintiffs' claims involve completely different underlying facts and implicate different insurance companies. (Pl.'s Opp'n 3.) Jonah Doe understandably moved independently from the Other Plaintiffs, and he did so immediately after the parties signed the Executed Settlement Agreement. Further, there is no evidence to support Third-Party Defendants' claim that Jonah Doe hid the settlement discussions or agreement involving the Other Plaintiffs from the Court or from Third-Party Defendants or manipulated the signing of the document. The Other Plaintiffs' claims do not involve Third-Party Defendants, and the absence of modifications to their settlement agreement between July of 2024 and the filing of the document in September of 2025 does not support a finding that Jonah Doe deliberately "hid[] or manipulated" the formal resolution of the Other Plaintiffs' claims to support his impleader in this

35

case. The Court finds no clear error with Judge Eshkenazi's conclusion that there was no deliberate delay by Jonah Doe.

### 2. Whether impleader would delay or complicate the trial

Third-Party Defendants argue if the Court allows impleader, then the action would "split Poly Prep coverage claims" that are still being litigated in the State Court Action, thus, complicating this action. (Defs.' Reply 8–9.) First, Third-Party Defendants argue judicial economy is better served by having Jonah Doe litigate his claims in the State Court Action because as a stand-in for Poly Prep Defendants, he is litigating the same claims that Poly Prep is litigating in the State Court Action except for the GBL § 349 claim that Jonah Doe filed in his individual capacity.[19] (*Id.* at 9–10.) Second, to defend themselves, Third-Party Defendants contend they may need to implead into this action many of the insurers that are alleged to have policies in effect during the period of Jonah Doe's abuse, further expanding this action. (Defs.' Mem. 3, 11; Defs.' Reply 9.)

Jonah Doe argues that the resolution of the Other Plaintiffs' claims makes this action the most effective and efficient forum. (Pl.'s Opp'n 11.) He contends that if impleader is not allowed in this case, his only alternative is to initiate a new action or intervene in the State Court Action that would unduly complicate and delay his recovery because it involves "fourteen unrelated insurers, dozens of unrelated insurance policies, and a dozen unrelated claims involving different perpetrators, years of abuse, and circumstances of abuse." (Pl.'s Opp'n 9–10.)

---

[19] Poly Prep added a GBL § 349 claim against Chubb Defendants in the State Court Action that mirrors Jonah Doe's claim, against Third-Party Defendants in this case. *See* Corrected Am. Compl. ¶¶ 92–117. In addition to asserting his GBL § 349 claim as Poly Prep Defendants' assignee, Jonah Doe also asserts his GBL § 349 claim in his individual capacity. (Third-Party Compl. ¶ 147.)

Judge Eshkenazi determined that, "[r]ather than delaying or complicating trial, impleading Third-Party Defendants would promote the resolution of this matter" because "[Jonah Doe's] third-party claims against Third-Party Defendants arise from the same core of facts asserted in the underlying [Poly Prep Action] against Poly Prep Defendants."  (April 2025 Order 6.)

In determining whether impleader would delay or complicate the trial, courts consider whether allowing impleader would add unrelated facts and issues or if it would serve the judicial efficiency purpose of Rule 14 by "permitting the adjudication of multiple claims in a single action and eliminating duplicative actions."  *See Capitol Recs., Inc.*, 2008 WL 2811481, at *3–5 (granting impleader of third-party defendants who may be liable to defendant for contribution or contractional indemnification because doing so would resolve issues of liability simultaneously). "The interest in judicial economy which underlies Rule 14 is clearly not advanced when the claims asserted against the third party only complicate the case by adding entirely new factual and legal issues unrelated to plaintiff's underlying claim."  *iBasis Glob., Inc.*, 278 F.R.D. at 77 (quoting *Schwabach v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 99-CV-1320, 2000 WL 122203, at *3 (S.D.N.Y. Jan. 31, 2000)); *see Lupia v. N.J. Transit Rail Operations, Inc.*, No. 21-CV-11077, 2022 WL 16549227, at *3 (S.D.N.Y. Oct. 31, 2022) (finding the addition of claims against third-party defendants would "unduly complicate the case" because they involved more complex medical malpractice issues as compared to the "relatively straightforward and uncomplicated" underlying claims); *Schwabach*, 2000 WL 122203, at *3 (finding impleader would complicate the underlying action because plaintiff's claim and third-party's claim did not "arise[] out of the same factual basis"); *see also Dery*, 265 F.2d at 806 (finding impleader

appropriate when it saves judicial and party resources by avoiding "the time and cost of a reduplication of evidence").

The Court finds Judge Eshkenazi did not err in determining that impleading Third-Party Defendants would promote the prompt resolution of this matter, rather than delay or complicate it. As the Court discussed *supra*, the core purpose of Rule 14 is advanced by allowing impleader in this case because the claims against Third-Party Defendants are dependent on the claims in the Poly Prep Action. It serves judicial economy for Jonah Doe to litigate his assigned claims in this action where the facts were determined and settlement was reached, rather than "repeat much of the proceedings and discovery that has already occurred in this case . . . ." (April 2025 Order 6 (quoting *Too, Inc.*, 213 F.R.D. at 141).) If Jonah Doe were to intervene in the State Court Action, he would have to reestablish the basis of his underlying dispute, including Third-Party Defendants' actions during settlement negotiations, which are part of this action's evidentiary record. (*See id.* at 2.) This would further complicate the State Court Action with numerous additional claims and delay Jonah Doe's relief.

Third-Party Defendants' argument that potential impleader of other insurers will expand and delay this case does not outweigh the benefit of granting impleader in this action to resolve all issues of liability for Jonah Doe's claims. *Capitol Recs., Inc.*, 2008 WL 2811481, at *3–5 (granting impleader to resolve issues of liability simultaneously). Jonah Doe's claims relate specifically to his assigned rights against Third-Party Defendants and the actions of Third-Party Defendants during settlement negotiations. In addition, it is not clear how the potential addition of other insurers would complicate the main issue of this action, which is to resolve questions of liability for Jonah Doe's claims and obtain recovery. Moreover, if Third-Party Defendants want to implead other insurers in this action, they may seek leave of Court to do so. Second Circuit

38

impleader practice allows a third-party defendant to "plead any and all defenses, substantive and procedural, it may have." *Giambrone v. Meritplan Ins.*, No. 13-CV-7377, 2017 WL 2303980, at *8 (E.D.N.Y. Feb. 28, 2017) (quoting *St. Paul Fire & Marine Ins. v. U.S. Lines*, 258 F.2d 374 (2d Cir. 1958)), *report and recommendation adopted*, 2017 WL 2303507 (E.D.N.Y. May 24, 2017); *see* Fed. R. Civ. P. 14(b) ("When a claim is asserted against a plaintiff, the plaintiff may bring in a third party if this rule would allow a defendant to do so."). In sum, Judge Eshkenazi did not err in finding impleader of Third-Party Defendants would promote the swift and efficient resolution of liability for Jonah Doe's claims and serve judicial economy by preventing a secondary suit.

### 3.   Prejudice to Jonah Doe or Third-Party Defendants

Third-Party Defendants argue impleader into this action will cause them prejudice from the conflict of providing a defense for Poly Prep Defendants against the Other Plaintiffs' claims while also defending itself against Jonah Doe's claims. (Defs.' Mem. 7–9.) In addition, they argue that they are unduly prejudiced by having to defend against Poly Prep Defendants' claims in this case (brought by Jonah Doe as assignee) and in the State Court Action (brought by Poly Prep as a plaintiff) because Poly Prep Defendants retained some "unclear" rights in this action under the Executed Settlement Agreement. (Defs.' Reply 9–10.)

Jonah Doe argues this action "involves only coverage issues between [Third-Party Defendants] and [Jonah Doe], individually and as assignee of the Poly Prep Defendants, and thus represents the simplest and most straightforward action in which the parties can litigate those issues." (Pl.'s Opp'n 9.) By comparison, the State Court Action involves numerous other claims and insurers against whom Jonah Doe has no claim, and as a result, he argues his intervention in the State Court Action would "undoubtedly result in more delay, more confusion, and more

39

complexity . . . ." (*Id.* at 9–11.) Jonah Doe also argues that "any purported prejudice potential [to Third-Party Defendants] has been removed by the Other Plaintiffs resolving their personal injury actions against Poly Prep Defendants . . . ." (*Id.* at 11.)

Judge Eshkenazi found that "[a]llowing [Jonah Doe] to implead Third-Party Defendants will [not] prejudice [] Third-Party Defendants. 'To the contrary, preventing [Jonah Doe] from impleading [Third-Party Defendants] could result in prejudice to [Third-Party Defendants] since [Third-Party Defendants] could be subject to non-party discovery in the instant action as well as discovery in a subsequent action against it by [Jonah Doe].'" (April 2025 Order 7 (quoting *Phila. Indem. Ins.*, 2018 WL 11454818, at *4) (alteration [Third-Party Defendants] in the original).)

Prejudice to plaintiff or third-party defendant considers the fairness of the proceeding and any disadvantages to the parties from allowing impleader. *See, e.g.*, *Red Rock Sourcing, LLC v. JGX, LLC*, No. 21-CV-1054, 2025 WL 524024, at *8 (S.D.N.Y. Feb. 18, 2025) (holding plaintiffs would be prejudiced by permitting impleader because the new claims would "significantly delay the resolution of the dispute" (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))); *Kenny*, 2011 WL 4460598, at *4 (finding prejudice to third-party defendant in having to defend the third-party claim while also having to defend itself in parallel declaratory judgment actions pending in both state and federal court); *Salomon*, 635 F. Supp. 2d at 201 (E.D.N.Y. 2009) (upholding an order granting impleader because third-party defendants were not prejudiced by an accelerated discovery schedule).

The Court finds no clear error with Judge Eshkenazi's conclusion that Third-Party Defendants will not be prejudiced by impleader because the Other Plaintiffs settled their claims, thus, simplifying this action, and the Executed Settlement Agreement specifies the division of

40

claims against Third-Party Defendants between Jonah Doe and Poly Prep Defendants. First, Third Party Defendants' argument that it would be prejudiced by providing a defense for Poly Prep Defendants against the Other Plaintiffs' claims while also defending itself against Jonah Doe's claims is moot since Poly Prep Defendants reached a settlement with the Other Plaintiffs.[20] Second, Third Party Defendants' claim of undue prejudice from having to defend against Poly Prep Defendants' claims in this case and in the State Court Action because Poly Prep Defendants retained "unclear" rights in this action under the Executed Settlement Agreement is not persuasive. The Executed Settlement Agreement specifies the claims assigned to Jonah Doe by Poly Prep Defendants as the insured including: (i) breach of contract/duty to indemnify, (ii) breach of implied covenant of good faith and fair dealing/bad faith breach of contract, and (iii) violation of New York General Business Law § 349/deceptive business practices. (Executed Settlement Agreement 8–9.) The Executed Settlement Agreement also states that Poly Prep Defendants "will continue to make an effort to obtain recovery from [Third-Party Defendants] in the [State Court Action] beyond those specific to the Limited Jonah Doe Assignment." (*Id.* at 10.) Thus, the claims pursued by Poly Prep Defendants and Jonah Doe are distinct. Defending against two different claims does not create undue prejudice, even if Third-Party Defendants need to litigate coverage defenses in both this action and the State Court Action. The Court finds no clear error with Judge Eshkenazi's determination regarding prejudice to the parties.

---

[20] Third-Party Defendants' argument that the "blurred" line between personal injury claims and insurance coverage and bad faith claims will prejudice Third-Party Defendants during discovery, (Defs.' Mem. 12–13), is also moot based on the settlement of the Other Plaintiffs' claims.

#### 4.    **Whether Jonah Doe states plausible claims**

Third-Party Defendants do not challenge whether the Third-Party Complaint states plausible claims.  (*See generally* Defs.' Mem. and Reply; Pl.'s Opp'n 7.)  Nevertheless, Third-Party Defendants argue this action became moot in July of 2024 when "all claims in the main case settled" and "the Court therefore should not exercise jurisdiction."  (Defs.' Reply 3.)

Judge Eshkenazi found Jonah Doe had plausible causes of action for (1) breach of contract from Third-Party Defendants' refusal to indemnify Poly Prep Defendants following the Executed Settlement Agreement, (April 2025 Order 8–9); (2) breach of the implied covenant of good faith and fair dealing "based on Third-Party Defendants' failure to cooperate in good faith with the Poly Prep Defendants during the settlement process[,]" (*id.* at 9–10); and (3) deceptive business practices under GBL § 349, individually and as assignee, for Third-Party Defendants' alleged improper coverage positions and unreasonable delays in resolving Jonah Doe's claims, (*id.* at 12–14).  Judge Eshkenazi dismissed Jonah Doe's fourth claim, a second breach of implied covenant of good faith and fair dealing claim, as duplicative of the breach of contract claim because both claims pled the same facts.  (*Id.* at 10–12.)

In determining whether the third-party complaint states a claim upon which relief can be granted in a Rule 14 impleader analysis, courts consider the plausibility of the claims alleged. *See, e.g.*, *Capitol Recs., Inc.*, 2008 WL 2811481, at *5 ("At the pleading stage, no obligation exists to prove anything, only to allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (analyzing factor four of Rule 14 impleader analysis)); *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) ("[T]he plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings . . . ." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))).  In

42

assessing the complaint, [the court] must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co*., 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319, 327 (2d Cir. 2024) (quoting *id.*). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *id.*)).

The Court reviews each cause of action below.

## A.    Breach of contract/duty to indemnify

"To prevail on a breach of contract claim under New York law, a plaintiff must show that '(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages.'" *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023) (quoting *34-06 73, LLC v. Seneca Ins.*, 39 N.Y.3d 44, 52 (2022)); *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350–51 (2d Cir. 2005) (same); *Up State Tower Co. v. Town of Cheektowaga*, No. 24-165, 2025 WL 444207, at *1 (2d Cir. Feb. 10, 2025) (summary order) ("A breach of contract claim under New York law has four elements: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011))); *Creaven v. Erickson*, No. 22-874, 2023 WL 4247213, at *3 (2d Cir. June 29, 2023) (summary order) (listing the elements of breach of contract under New York law as "(1) an agreement; (2) performance by the plaintiff; (3) breach [by the defendant]; and (4) damages" (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996))); *Frye v. Lagerstrom*, No. 20-3134, 2021 WL 4022695, at *4 (2d Cir. Sep. 3, 2021) (summary order) (quoting *Segui*, 91 F.3d at 348); *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)) (similar).

Jonah Doe, as assignee, plausibly pleads a claim for breach of contract. Jonah Doe alleges Poly Prep purchased insurance from Third-Party Defendants for the applicable time period, and the insurance policies constitute valid, enforceable contracts because Poly Prep complied with all required obligations that were prerequisites to coverage. (Third-Party Compl. ¶¶ 58–59, 63, 114.)  In support, Jonah Doe alleges Third-Party Defendants were contractually

44

obligated to indemnify Poly Prep for "all sums that Poly Prep is and will be legally obligated to pay as damages, through judgment, settlement, or otherwise, [for Jonah Doe's] [c]laims, up to the applicable liability limits of their policies." (*Id.* ¶ 116.) Jonah Doe and Poly Prep Defendants then entered into an Executed Settlement Agreement within the liability limits of the insurance policies, Third-Party Defendants refuse to indemnify, and Jonah Doe, as assignee, has suffered as a result. (*Id.* ¶¶ 118–120, 122–124.) Consequently, Jonah Doe plausibly pleads a breach of contract claim, and the Court does not find error in Judge Eshkenazi's analysis of this claim.

### B.    Breach of implied covenant of good faith and fair dealing/bad faith breach of covenant

"Under New York law, 'implicit in every contract is a covenant of good faith and fair dealing[,] which encompasses any promises that a reasonable promisee would understand to be included.'" *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (quoting *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018)); *see also Aquino v. Alexander Cap. LP*, Nos. 23-1109, 23-1164, 2024 WL 2952497, at *4 (2d Cir. June 12, 2024) (summary order) (quoting same). "'[N]either party to a contract shall do anything [that] has the effect of destroying or injuring the right of the other party to receive the fruits of the contract,' or to violate the party's 'presumed intentions or reasonable expectations.'" *Spinelli*, 903 F.3d at 205 (alterations in original) (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

The covenant of good faith and fair dealing "only impose[s] an obligation consistent with other mutually agreed upon terms in the contract. It does not add [ ] to the contract a substantive provision not included by the parties." *Woodard v. Reliance Worldwide Corp.*, 819 F. App'x 48, 49 (2d Cir. 2020) (alterations in original) (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d

45

187, 198–99 (2d Cir. 2005)); *see Gravitas Search Partners LLC v. Deutsch*, No. 24-CV-2683, 2025 WL 2243720, at *12 (S.D.N.Y. Aug. 6, 2025) ("The implied covenant of good faith and fair dealing 'does not add obligations beyond those set forth in the agreement; rather, it protects a party to a contract from improper conduct that subvert[s] the contract itself.'" (alteration in original) (quoting *Hard Rock Café Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011))); *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.* (*Sec. Plans I*), 261 F.R.D. 4, 9 (W.D.N.Y. 2009) ("The covenant, however, only protects the bargained-for terms of the agreement and is not 'designed to enlarge or create new substantive rights between the parties.'" (quoting *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007))); *D & L Holdings, LLC v. RCG Goldman Co.*, 734 N.Y.S. 2d 25, 31 (App. Div. 2001) ("The covenant of good faith and fair dealing cannot be used to add a new term to a contract, especially to a commercial contract . . . ."); *see also LightSquared Inc. v. Deere & Co.*, Nos. 13-CV-8157, 13-CV-5543, 2015 WL 585655, at *11 (S.D.N.Y. Feb. 5, 2015) ("The implied covenant of good faith and fair dealing 'is not a means to add new terms to the agreement; it merely requires that the parties behave fairly and reasonably in the performance and enforcement of the contract.'" (quoting *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 275 (D.D.C. 2009))), *aff'd sub nom., Harbinger Cap. Partners LLC v. Deere & Co.*, 632 F. App'x 653 (2d Cir. 2015).

"Furthermore, the implied covenant 'does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" *Woodard*, 819 F. App'x at 49 (quoting *M/A-COM*, 904 F.2d at 136); *see also LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) ("[T]he implied covenant of good faith cannot create duties that negate explicit rights under a contract."); *Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of N.Y.*, 762 F. Supp.

46

3d 247, 285 (S.D.N.Y. 2025) (quoting *id.*), *appeal docketed*, No. 25-1144 (2d Cir. May 5, 2025).

In the context of insurance-related disputes, the implied covenant requires that "the insurer [ ]

investigate claims for coverage in good faith, [ ] not manufacture factually incorrect reasons to

deny insurance coverage, [ ] not deviate from its own practices or from industry practices, and [ ]

not act with gross disregard of the insured's interests." *232 Dune Rd., LLC v. Scottsdale Ins.*,

No. 20-CV-7721, 2023 WL 1967501, at *11 (S.D.N.Y. Feb. 13, 2023) (quoting *E. Ramapo Cent.*

*Sch. Dist. v. N.Y. Sch. Ins. Reciprocal*, 158 N.Y.S.3d 173, 177–78 (App. Div. 2021)).

Where a party has discretion in performance under a contract, New York law "includes a

promise not to act arbitrarily or irrationally in exercising its discretion." *Rynasko v. N.Y. Univ.*,

63 F.4th 186, 200 (2d Cir. 2023) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389

(1995)); *Bus. Exposure Reduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.*, No.

21-1980, 2022 WL 950959, at *2 (2d Cir. Mar. 30, 2022) (summary order) ("Where the contract

contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or

irrationally in exercising that discretion." (quoting *Dalton*, 87 N.Y.2d at 389)); *Sec. Plans, Inc. v.*

*CUNA Mut. Ins. Soc.* (*Sec. Plans II*), 769 F.3d 807, 810 (2d Cir. 2014) (explaining that "[u]nder

New York law, all contracts that confer discretion include an implied promise that neither party

will 'act arbitrarily or irrationally' in exercising that discretion" (quoting *Dalton*, 87 N.Y.2d at

389)). "Courts have equated the covenant of good faith and fair dealing with an obligation to

exercise that discretion 'reasonably and with proper motive, . . . not . . . arbitrarily, capriciously,

or in a manner inconsistent with the reasonable expectations of the parties.'" *Fishoff v. Coty*

*Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (quoting *In re Kaplan*, 143 F.3d 807, 819 (3d Cir. 1998));

*see also Sec. Plans II*, 769 F.3d at 817–18 (explaining that a party must "demonstrate something

more" than "evidence that the defendant's actions were negligent or inept" to state a claim for

47

breach of the implied covenant, such as a party "act[ing] arbitrarily or irrationally in exercising [its] discretion" (citations omitted)); *Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*, 209 F. Supp. 3d 547, 555 (E.D.N.Y. 2016) (explaining that the implied covenant requires parties to exercise discretion in "a manner [not] inconsistent with . . . reasonable expectations" (quoting *Fishoff*, 634 F.3d at 653)). "[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the [party] acts in accordance with the express terms of the contract." *JN Contemp. Art*, 29 F.4th at 128 (first alteration in original) (quoting 23 *Williston on Contracts* § 63:22 (4th ed. 2021)); *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, No. 21-CV-10779, 2023 WL 372883, at *3 (S.D.N.Y. Jan. 24, 2023) (dismissing the defendant's breach of contract counterclaim because "[t]here can be no breach of the implied [covenant] . . . where the contract expressly permits the actions being challenged" (first alteration in original) (quoting *JN Contemp. Art*, 29 F.4th at 128)).

Jonah Doe's Third-Party Complaint sufficiently alleges that Third-Party Defendants employed unreasonable and bad faith settlement strategies and coverage positions to limit Third-Party Defendants' financial exposure, in gross disregard of Jonah Doe's interests. Jonah Doe alleges Third-Party Defendants adopted a "wait-and-see" approach that created unreasonable delays, without concern for their insured, Poly Prep Defendants, because Third-Party Defendants were "manifestly driven" by their own concern "about the large potential exposure that [Jonah Doe's] [c]laims present in addition to [the] exposure [Third-Party Defendants] faces[] from other claims following the passage of the New York CVA and other similar legislation nationwide." (*Id.* ¶¶ 127, 129.) In doing so, Jonah Doe, as Poly Prep Defendants' assignee, asserts Third-Party Defendants acted with "conscious or knowing indifference" to Poly Prep Defendants'

personal liability, "unreasonably withheld [their] consent to settlement offers" within the limits of the insurance policies, and "neglected the interests of [their] insured by failing to act protectively." (*Id.* ¶¶ 129–131.)  As a result, Poly Prep Defendants entered into the Executed Settlement Agreement that "exposed [them] to substantial exposure" for Jonah Doe's claims. (*Id.* ¶ 132.)  Jonah Doe sufficiently alleges that Third-Party Defendant's acted "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Fishoff*, 634 F.3d at 653.  Accordingly, Judge Eshkenazi did not err in finding that Jonah Doe stated a plausible claim of breach of implied covenant of good faith and fair dealing.

## C.    Deceptive business practices — GBL § 349

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349(a); *La Rosa v. SPD Swiss Precision Diagnostics GmbH*, No. 24-1575, 2025 WL 841687, at *1 (2d Cir. Mar. 18, 2025) (summary order) (quoting *id.*).  To assert a claim, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *see La Rosa*, 2025 WL 841687, at *1 ("[A] plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012))); *Orlander*, 802 F.3d at 300 (quoting *id.*). GBL § 349 is "directed at wrongs against the consuming public" and is designed to "protect people from consumer frauds." *Yodice v. Touro Coll. & Univ. Sys.*, No. 21-2986, 2024 WL

49

3466546, at *2 (2d Cir. July 19, 2024) (summary order) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–25 (1995)).

"Section 349 allows recovery by non-consumers if there is 'some harm to the public at large.'" *Electra*, 987 F.3d at 258 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)); *SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D. P.C.*, No. 19-CV-9582, 2020 WL 1322838, at *3 (S.D.N.Y. Mar. 20, 2020) ("Although [the] statute 'is, at its core, a consumer protection device,' 'corporate competitors' have standing to sue under §[] 349 . . . 'so long as some harm to the public at large is at issue.'" (quoting *Securitron Magnalock*, 65 F.3d at 264)). Therefore, "to successfully state a claim under Section 349 'the gravamen of the complaint must be consumer injury or harm to the public interest.'" *Electra*, 987 F.3d at 258 (quoting *Securitron Magnalock*, 65 F.3d at 264); *SmileDirectClub*, 2020 WL 1322838, at *3 ("[F]or a competitor to have standing under §[] 349 . . . , 'the gravamen of the complaint must be consumer injury or harm to the public interest,' and the complaint 'must allege conduct that has significant ramifications for the public at large.'" (first quoting *Securitron Magnalock*, 65 F.3d at 264; and then quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273–74 (S.D.N.Y. 2003))). "Injury or harm that satisfy this standard include 'potential danger to the public health or safety.'" *Dentsply Sirona, Inc. v. Dental Brands for Less LLC*, No. 15-CV-8775, 2020 WL 1643891, at *5 (S.D.N.Y. Apr. 2, 2020) (quoting *La Cibeles, Inc. v. Adipar, Ltd.*, No. 99-CV-4129, 2000 WL 1253240, at *15 (S.D.N.Y. Sep. 1, 2000)).

Under New York law, a deceptive act is one that is "likely to mislead a reasonable consumer acting reasonably *under the circumstances*." *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (citation omitted and emphasis added); *Orlander*, 802 F.3d at 300 (same); *see Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view

50

each allegedly misleading statement in light of its context on the product label or advertisement as a whole.  The entire mosaic is viewed rather than each tile separately." (internal quotation marks omitted) (first quoting *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sep. 24, 2014); and then quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007))); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label." (alteration in original) (citation omitted)); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"); *see La Rosa*, 2025 WL 841687, at *1 ("[I]n order to survive a motion to dismiss, 'a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018))).

Jonah Doe's GBL § 349 claim sufficiently pleads, individually and as assignee, each of the required elements by alleging Third-Party Defendants engaged in deceptive conduct that impacts the public interest, resulting in damages to himself and Poly Prep Defendants.  First, Jonah Doe plausibly claims that Third-Party Defendants' conduct harmed the public interest by engaging in a "pattern and practice of denying coverage for child sexual abuse claims in New York and elsewhere" and a deceptive "wait-and-see" strategy to manage their exposure to claims related to numerous policyholders.  (Third-Party Compl. ¶¶ 91, 104, 129, 148, 152, 155.)

Jonah Doe's allegations sufficiently show Third-Party Defendants' response to coverage claims for CVA cases has "significant ramifications for the public at large" by affecting the

51

recovery of other sexual abuse survivors. *SmileDirectClub*, 2020 WL 1322838, at *3; *see Endemann v. Liberty Ins.*, 390 F. Supp. 3d 362, 380 (N.D.N.Y. 2019) (denying the defendant insurer's motion to dismiss GBL § 349 claim because the plaintiff pled the insurer-defendant entered into contracts nationwide where they engaged in similar practices, namely denying claims without reasonable basis, "thereby harming the public"), *on reconsideration in part*, No. 18-CV-701, 2020 WL 5027241 (N.D.N.Y. Aug. 25, 2020); *Greenspan v. Allstate Ins.*, 937 F. Supp. 288, 294 (S.D.N.Y. 1996) (finding the insurer-defendant's conduct affected the public interest by "deliberately erecting barriers to reimbursement and imposing additional social costs").

In addition, Jonah Doe satisfies the consumer-oriented conduct requirement by showing the conduct at issue potentially affects other policyholders. *See See v. Gov't Emps. Ins.*, No. 21-CV-547, 2025 WL 2042323, at *9 (E.D.N.Y. July 21, 2025) (finding plaintiff pled consumer-oriented conduct by showing insurer-defendants' conduct, misrepresenting the value of claim, "potentially affected consumers at large, rather than the named plaintiffs alone"); *Kurschner v. Mass. Cas. Ins.*, No. 08-CV-11, 2009 WL 537504, at *4–7 (E.D.N.Y. Mar. 3, 2009) (denying defendant insurer's motion to dismiss GBL § 349 claim where the plaintiff alleged the insurer engaged in "consumer-oriented conduct" including unfair settlement practices, inordinate delays in processing claims, and denials of valid claims without reference to their viability). Jonah Doe alleges that Third-Party Defendants used "standard-form insurance policy language" and took "improper coverage positions" and engaged in "unjustifiable delays" that "injure[d] all of their policyholders with similar policy language that suffer[ed] losses and . . . [sought recovery from] the [Third-Party Defendants] expecting fair and good-faith treatment." (*Id.* ¶ 99.) In support, Jonah Doe cites to a November 24, 2023 letter by the Coalition for Just and Compassionate

52

Compensation ("CJCC"), an advocacy organization composed of survivors of child sex abuse, to the New York State Department of Financial Services ("NYDFS").  (CJCC Ltr., annexed to Third-Party Compl. as Ex. B; Docket Entry No. 119-2.)  The letter called for an investigation by the NYDFS into "[Third-Party Defendants] and [their] policies regarding compensation and coverage for damages regarding CVA cases, policies which [Third-Party Defendants] ha[ve] employed nationwide as evidenced by a similar lawsuit it brought against the Archdiocese of San Francisco."  (*Id.*)  Thus, Jonah Doe's allegations regarding Third-Party Defendants' standard form policy and their similar deceptive behavior demonstrate "consumer-oriented harm" affecting more than just the contracted parties in this action.  (Third-Party Compl. ¶¶ 57, 99, 152.)  *See M.V.B. Collision, Inc. v. Allstate Ins.*, No. 07-CV-187, 2007 WL 2288046, at \*4 (E.D.N.Y. Aug. 8, 2007) ("Where, as here, a defendant enters into contractual relationship[s] with customers nationwide via a standard form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, courts have held that such behavior affects the public generally and therefore satisfies the requirement of consumer-oriented conduct within the meaning of Section 349." (alteration in original) (internal quotation marks and citation omitted) (collecting cases)); *Rockefeller Univ. v. Aetna Cas. & Sur. Co.*, 217 N.Y.S.3d 562 (App. Div. 2024) (finding the plaintiff's GBL § 349 claim was not merely a "private contractual dispute" because the plaintiff alleged that the defendants engaged in "a deceptive wait-and-see strategy" that potentially affected other policyholders and sexual abuse survivors and used a standard form insurance policy for consumers).

Jonah Doe also sufficiently pleads the element of deceptive practice by alleging "[Third-Party Defendants'] engag[ed] in a deception by allegedly providing a defense subject to a reservation of rights while, in fact, its subsequent conduct has made clear that it never intended

53

to cover [Jonah Doe's] claims" and "[Third-Party Defendants'] refuse[d] to promptly, reasonably, and equitably settle these claims."  (Third-Party Compl. ¶¶ 8, 97.)  *See Riordan v. Nationwide Mut. Fire Ins.*, 756 F. Supp. 732, 736, 739 (S.D.N.Y. 1990) (finding insurance company's alleged unfair claim settlement practice, including refusing to settle and requiring policyholders to pay prior to insurers' advancement, deceptive under GBL § 349), *aff'd in part, question certified*, 977 F.2d 47 (2d Cir. 1992), *certified question withdrawn*, 984 F.2d 69 (2d Cir. 1993); *Kurschner*, 2009 WL 537504, at *4–7 (same); *Acquista v. New York Life Ins.*, 730 N.Y.S.2d 272, 279 (App. Div. 2001) ("The allegation that the insurer makes a practice of inordinately delaying and then denying a claim without reference to its viability, may be said to fall within the parameters of that definition [of unfair or deceptive practices].").  Jonah Doe asserts that this deception has "delay[ed] resolution of [his] covered claims, as well as the covered claims of scores of other sexual abuse survivors in New York State, [because Third-Party Defendants] dishonestly misrepresented, and continued to misrepresent, the nature of the coverage."  (Third-Party Compl. ¶ 106.)

Finally, Jonah Doe pleads specific damages, alleging Poly Prep Defendants were harmed by having to divert their resources to self-fund a settlement and pursue litigation to recover under the insurance policies.  (*Id.* ¶¶ 150, 156.)  Individually, Jonah Doe asserts Third-Party Defendants' deceptive conduct has delayed his recovery causing financial and non-financial injury.  (*Id.* ¶¶ 151, 156.)  These injuries are sufficient for a GBL § 349 claim.  *See, e.g.*, *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 113 (E.D.N.Y. 2020) ("[T]he complaint must plausibly allege that the plaintiff suffered 'actual or pecuniary harm that is separate and apart from the alleged deception itself.'" (quoting *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-1058, 2012 WL 4482057, at *7 (E.D.N.Y. Sep. 26, 2012))); *Servedio v. State Farm Ins.*,

889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) ("[A] section 349 claim will not lie where the deceptive act itself was the only injury."), *aff'd*, 531 F. App'x 110 (2d Cir. 2013). Thus, Jonah Doe's allegations satisfy each element of a claim under GBL § 349 by pleading Third-Party Defendants' deceptive claim settlement practices harmed policyholders and sexual abuse victims across New York state and injured him and Poly Prep Defendants.

In sum, finding no clear error with Judge Eshkenazi's determination with respect to the plausibility of Jonah Doe's claims, (April 2025 Order 7–14), the Court declines to set aside Judge Eshkenazi's conclusion that the Third-Party Complaint states plausible claims for (1) breach contract/duty to indemnify (2) breach of implied covenant of good faith and fair dealing; and (3) deceptive business practices under GBL § 349.

### D.  Mootness

"Because [federal court] jurisdiction is constitutionally limited to 'actual, ongoing cases or controversies,' a party must at all stages have 'an actual injury . . . likely to be redressed by a favorable judicial decision.'" *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) (alteration in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "The mootness doctrine, which is mandated by the 'case or controversy' requirement in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties." *Catanzano v. Wing*, 277 F.3d 99, 107 (2d. Cir. 2001) (citing *Lewis*, 494 U.S. at 477–78); *see also Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240–41 (2024) ("Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." (citation omitted)). Federal courts may "resolve only 'real and substantial controversies admitting of specific relief,'" and

55

may not "issue decisions 'advising what the law would be upon a hypothetical state of facts.'"

*Exxon*, 28 F.4th at 392 (quoting *Lewis*, 494 U.S. at 477–78); *see also Ruesch v. Comm'r of Internal Revenue*, 25 F.4th 67, 70 (2d Cir. 2022) ("Typically, no live controversy remains where a party has obtained all the relief '[it] could receive on the claim through further litigation.'" (quoting *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018))); *Grand Assocs., LLC v. 4D Sight, Inc.*, No. 24-CV-3258, 2025 WL 2298966, at *2 (S.D.N.Y. Aug. 8, 2025) ("[A] case becomes moot 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016))).

The Poly Prep Action was not rendered moot in July of 2024 when all claims settled, as Third-Party Defendants contend, because Jonah Doe, as assignee, is still seeking resolution of liability coverage and the Court can grant relief. *Exxon*, 28 F.4th at 392 ("A live controversy remains as long as 'a court can fashion *some* form of meaningful relief' to award the complaining party, and even '[t]he availability of a *possible* remedy is sufficient to prevent [a] case from being moot." (alterations in original) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12–13 (1992))); *see Saba v. Cuomo*, 535 F. Supp. 3d 282, 292 (S.D.N.Y. 2021) (finding voluntary cessation of alleged wrongful conduct "d[oes] not obviate [the p]laintiff's entitlement to seek a court order granting such relief or strip the [c]ourt of its authority to grant it"). Defendants cite to *Yonkers Contracting Company v. General Star National Insurance Company*, 14 F. Supp. 2d 365 (S.D.N.Y. 1998), to support their argument that settlement of a dispute renders a case moot.[21] (Defs.' Reply 3–4.) However, *Yonkers* held that a dispute

---

[21] Third-Party Defendants also cite *Rivers v. Doar* to support their argument that this action is moot. (*See* Defs.' Reply 3 (citing 638 F. Supp. 2d 333, 337 (E.D.N.Y. 2009) ("[A] case

between the insured, as assignee, and the insurer over the duty to indemnify was *not* mooted upon settlement of the underlying claim where there was a reservation of rights in the settlement agreement to pursue the claim. *See Yonkers*, 14 F. Supp. 2d at 372–73. Because Jonah Doe has unresolved assigned claims from the Poly Prep Action, this case is not moot.

Having reviewed the April 2025 Order and the Rule 14 factors, the Court finds Judge Eshkenazi did not commit clear error in allowing Jonah Doe to impleader Third-Party Defendants.

### c. The Court denies Third-Party Defendants' request for stay or dismissal pursuant to the *Colorado River* abstention doctrine.

Third-Party Defendants argue that the Court should stay or dismiss the Third-Party Action under the *Colorado River* abstention doctrine because of the State Court Action.[22] (Defs.' Mem. 3, 16–20.) Third-Party Defendants argue, first, that this action and the State Court Action are parallel because they involve substantially the same issues, allege identical facts and seek the same relief. (*Id.* at 16–17.) In support, Third-Party Defendants argue that "substantially the same parties are contemporaneously litigating in both this [Third-Party A]ction and the State

---

is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (alteration in original, citation and internal quotation marks omitted)).) However, *Rivers* does not support Third-Party Defendants' argument of mootness. In *Rivers*, the action became moot because the defendants reversed their position, and there was no evidence the defendants would continue the underlying behavior, thus, eliminating any live action. 638 F. Supp. 2d at 337–38. In contrast, Jonah Doe argues that Third-Party Defendants *continue* to engage in bad faith tactics to delay judgment and pleads facts demonstrating that his claims are still live.

[22] The Second Circuit has rejected any distinction between a stay and a dismissal under *Colorado River*. *See Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 77 (2d Cir. 1996) ("There is no difference between a stay and a dismissal for purposes of the *Colorado River* doctrine." (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986))); *see also Gentes v. Osten*, No. 21-CV-2022, 2022 WL 16984686, at *1 (2d Cir. Nov. 17, 2022) (summary order) (treating defendants' motion to dismiss and/or stay under *Colorado River* as one motion).

[Court] Action" because the "interests [of the parties] in each action are congruent — if not identical, given that [Jonah Doe] is simply litigating Poly Prep's claim[] . . . ." (Defs.' Reply 4–6.)  Second, Third-Party Defendants also contend that Jonah Doe's distinct GBL § 349 claim does not "destroy parallelism because regardless of differences in theory or pleadings between the two actions, the core of the factual allegations in both actions is identical and both actions seek substantially the same relief" — damages for Third-Party Defendants' conduct during the settlement process with Jonah Doe.  (*Id.* at 6–7.)  In addition, Third-Party Defendants argue the GBL § 349 claim added by Poly Prep in the Corrected Amended Complaint of the State Court Action contains substantially the same allegations as those raised by Jonah Doe in this case. (Defs.' Reply 7.)  *See* Corrected Am. Compl. ¶¶ 92–117, *Polytechnic*, No. 517756/2023.  Third-Party Defendants also argue coverage claims for abuse by Foglietta, Jonah Doe's abuser, will be fully litigated in the State Court Action, including Jonah Doe's specific case, because the coverage claims in the State Court Action concern a pattern and practice of abuse that turns on what Poly Prep knew and when.  (Tr. of Oral Argument 21:15–22:22.)

Third-Party Defendants address four of the six *Colorado River* abstention factors:[23] (1) whether staying the federal action would avoid piecemeal litigation, (2) the order in which the actions were filed and which forum's proceedings are most advanced, (3) whether federal or

---

[23]  Third-Party Defendants argue the first two *Colorado River* factors — whether the controversy involves res and the convenience of the federal and state forums — are neutral "as there is no res or property at issue, and both forums are in Brooklyn, New York." (Defs.' Mem. 18.)

state law provides the rule of decision, and (4) whether state procedures are adequate to protect plaintiff's federal rights.[24]  (*See* Defs.' Mem. 18.)

First, Third-Party Defendants argue that piecemeal litigation will result from proceeding with two actions with "essentially the same claims," (*id.*), and the State Court Action is "a more complete action" with other insurers who are not named as defendants in this action, (*id.* at 19). Third-Party Defendants argue Jonah Doe's claim is being litigated in the State Court Action because that action involves a determination of Poly Prep's knowledge of a pattern and practice of abuse that covers the time period of Jonah Doe's abuse.  (Tr. of Oral Argument 21:15–22:22.) In addition, Third-Party Defendants contend that if they win in the State Court Action there is no risk of inconsistent outcomes because all of Jonah Doe's rights are derived from Poly Prep Defendants' assignment to Jonah Doe, and therefore Jonah Doe will have no outstanding direct claims against Third-Party Defendants.  (*Id.* at 36:8–38:4; Defs.' Reply to Pl.'s Stip. for Order and Entry of J.)  Nevertheless, Third-Party Defendants argue there is still a risk of inconsistent procedural decisions in maintaining both the state and federal actions such as partial summary judgment, discovery or policy-construing language.  (Tr. of Oral Argument 37:20–38:4.)

---

[24]  In their motion papers, Third-Party Defendants cite to *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 141–42 (E.D.N.Y. 2013), a district court case, in support of the *Colorado River* factors.  *Ferolito* cites to *Colorado River* but applies the *Colorado River* factors using slightly different language from the language used in *Niagara*, 673 F.3d at 100–01.  The Court addresses Third-Party Defendants' motion using the factors as identified in *Niagara*.  *See* 673 F.3d at 100–01 (explaining that the six *Colorado River* abstention factors are "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed[] and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights").

Second, Third-Party Defendants argue the State Court Action preceded this action, and Poly Prep's alleged "procedural posturing and delay" in the State Court Action should not be used by Jonah Doe to "somehow manufacture a lack of further progress in the State [Court] Action." (Defs.' Mem. 18.)  Third, Third-Party Defendants argue that state law will dispose of all of Jonah Doe's claims and "this Circuit routinely invoke[s] the doctrine of abstention in insurance coverage actions." (*Id.* at 19 (internal citation and quotation marks omitted).)  Fourth, Third-Party Defendants contend the State Court Action will "serve as an adequate forum for the resolution of the issues between the parties, which concern only state law claims." (*Id.*)

Jonah Doe argues that a stay is inappropriate because the Third-Party Action and the State Court Action are not parallel proceedings, and abstention is a "narrow exception" to exercising jurisdiction that does not apply in this case. (Pl.'s Opp'n 15–16.)  First, Jonah Doe argues there is no "identity of parties" because Jonah Doe is not a party to the State Court Action and Jonah Doe's "ability to intervene in the State Court Action does not bear on the *Colorado River* 'parallelism' analysis." (*Id.* at 17–18.)  Second, Jonah Doe argues that the issues and relief are not identical because there is not a "substantial likelihood" that the State Court Action will resolve all claims presented in this action due to his GBL § 349 claim. (*Id.* at 18–19.)  Jonah Doe asserts his own statutory claim under GBL § 349 is distinct from the claims filed by Poly Prep in the State Court Action because his claim is "far broader" and alleges Third-Party Defendants engaged in deceptive conduct not only with respect to Jonah Doe's claims, but also in managing their exposure in "all abuse claims previously time-barred that have been revived by the CVA."[25]  (*Id.* at 18–19; Third-Party Compl. ¶ 148.)  In addition, Jonah Doe argues the

---

[25] On November 26, 2025 Poly Prep added a GBL § 349 claim in the State Court Action mooting Jonah Doe's argument because Poly Prep and Jonah Doe now assert the same cause of

coverage issues in this case are distinct from the coverage issues in the State Court Action because Third-Party Defendants' insurance policies are "per-occurrence," meaning each individual occurrence of sexual abuse will need to be litigated.  (Tr. of Oral Argument 17:7–18:8.)  Based on Poly Prep Defendants' assignment of claims, Jonah Doe asserts the specific coverage for his sexual abuse claims will not be covered in the State Court Action.  (*Id.* at 17:7–17:16; Pl.'s Reply to Defs.' Reply to Pl.'s Stip. for Order and Entry of J.)

Jonah Doe addressed two of the six *Colorado River* abstention factors during oral argument: (1) whether staying the federal action would avoid piecemeal litigation, and (2) whether state procedures are adequate to protect his federal rights.  (Tr. of Oral Argument 26: 15–23; 34: 7–14.)  First, Jonah Doe argues there is no risk of inconsistent outcomes.  (*Id.* 30:19–23.)  In support, Jonah Doe argues that if Third-Party Defendants are found not liable in the State Court Action, then he would still be able to move forward with his claims in federal court, including his assigned claims, because the claims in the two proceedings are not the same.  (*Id.* 17:7–16, 30:19–31:20, 34:7–14.)  Jonah Doe also argues that because the insurance policies are occurrence-based, coverage determinations will have to be made with respect to the individual facts of each case.  (*Id.* at 17:7–16, 31:10–33:11.)  Since Jonah Doe is not a party to the State Court Action, coverage for his claims will not be fully adjudicated in the State Court Action, and

---

action based on the same underlying facts of Third-Party Defendants' actions during settlement negotiations of the Poly Prep Action.  They also both allege Third-Party Defendants engaged in a "pattern" of "deceptive conduct in connection with their attempts to manage their exposure" and plead injury to other policyholders and educational institutions who were denied insurance coverage.  (*See* Third-Party Compl. ¶¶ 148, 152.)  *See* Corrected Am. Compl. ¶¶ 102, 105, *Polytechnic*, No. 517756/2023.  However, Jonah Doe also asserts the GBL § 349 claim in his individual capacity and pleads distinct harms and damages for his personal injuries, different from the harm pled by the Poly Prep Defendants.  (Third-Party Compl. ¶¶ 147, 150–151, 156.)  During oral argument, Jonah Doe acknowledged the overlap of the GBL § 349 claims but maintains that his GBL § 349 claim is distinct because it also addresses his separate injury as a victim and requests distinct damages.  (Tr. of Oral Argument 25:9–26:11.)

therefore any decisions regarding the insurance policies in the State Court Action will inform this action, (*id.* at 15:23–16:4, 17:7–17:16), but a "ruling on Chubb's duty to indemnify Poly Prep for the sexual-abuse occurrences of other victims being litigated in the State Court Action would in no way preclude [ ] Jonah [Doe] from pursuing coverage for the factually distinct sexual-abuse occurrences that he suffered." (Pl.'s Reply to Defs.' Reply to Pl.'s Stip. for Order and Entry of J. (citing *Lafarge Canada Inc. v. Am. Home Assurance Co.*, No. 15-CV-8957, 2018 WL 1634135, at *5 (S.D.N.Y. Mar. 31, 2018)).)

Second, Jonah Doe contends that the State Court Action will not protect his rights because it is an "over-crowded" field with "a dozen unrelated claims, which would undoubtedly result in more delay, more confusion, and more complexity than simply prosecuting this [Third-Party] Action." (Pl.'s Opp'n 2, 11.) Jonah Doe also argues the State Court Action is not adequate because he is not a party, the underlying facts of his specific claims will not be litigated in the State Court Action, and Jonah Doe's assigned claims confer rights that only he possesses. (Tr. of Oral Argument 15:23–17:16, 34:7–14.)

### i.   The State Court Action and this proceeding are parallel

The pending State Court Action is a parallel proceeding to this Third-Party Action because, although the parties are not symmetrical and the remedies are distinct, both cases concern substantially the same issues that are based on the same underlying contract.

First, the parties are not identical because Jonah Doe is not a party to the State Court Action. *See State Farm Mut. Auto. Ins. v. Schepp*, 616 F. Supp. 2d 340, 348 (E.D.N.Y. 2008) ("While it may be true . . . that [the state court action] could be modified so as to make it identical to the current federal claim . . . the issue is whether [the state court action], as it *currently exists*, is a parallel, state-court proceeding." (alterations in original) (quoting *Crawley*

62

*v. Hamilton Cnty. Com'rs*, 744 F.2d 28, 31 (6th Cir. 1984))).  As assignee of claims based on the Aetna Policy, Jonah Doe asserts claims as Poly Prep Defendants, making the parties in the two actions closely related, but not identical.  *See Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 296–98 (S.D.N.Y. 2017) (finding parallelism with differing parties because all parties had a congruent interest in the administration of the same testamentary trust); *Blake*, 942 F. Supp. 2d at 297 (finding parallelism where the same party was acting as a defendant in their individual capacity in one action and in their capacity as a personal representative for an estate in another action).

Second, the issues in these two actions are substantially similar because they are congruent.  "Mere 'commonality in subject matter' does not render actions parallel."  *Mochary*, 42 F.4th at 86 (quoting *Dittmer*, 146 F.3d at 118).  Rather, "[s]uits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* at 85 (quoting *Dittmer*, 146 F.3d at 118); *see also Potente*, 2018 WL 1882848, at *4 (stating perfect symmetry of parties and issues is not required and abstention may be appropriate "notwithstanding the nonidentity of the parties" in cases where interests are "congruent") (quoting *Canaday v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y.), *aff'd, sub nom.*, *Cannady v. Valentin*, 768 F.2d 501 (2d Cir. 1985))).  Both proceedings plead causes of action for breach of contract, breach of implied warranties, and violations of GBL § 349, but the claims are not identical.  As discussed *supra* in Sections I.a and II.b.iii.3, the Executed Settlement Agreement specifies the division of claims between Poly Prep Defendants and Jonah Doe with Poly Prep Defendants retaining the right to pursue claims "beyond those specific to the Limited [Jonah Doe] Assignment."  (Executed Settlement Agreement 8–10.)  Corrected Am. Compl., ¶ 59 n.1, *Polytechnic*, No. 517756/2023 ("To protect itself when its insurers failed to meet their coverage

63

obligations, Poly Prep made a limited assignment of claims with respect to its confidential settlement of the [Jonah Doe] Action.").  Therefore, Poly Prep asserts claims in the State Court Action with respect to the *other* sexual abuse claims, *not including* Jonah Doe's case.  Given the limited assignment and Jonah Doe's individual GBL § 349 claim, the disposition of the State Court Action will not dispose of all of the claims in this action.

However, the parties are litigating the same issues based on essentially the same facts: Third-Party Defendants' obligations under the insurance policy and breach of implied warranties in connection with managing their exposure to sexual abuse claims filed since the passage of the CVA.  *See U.S. Bank Nat'l Ass'n*, 804 F. App'x at 107 (upholding district court finding that two actions were parallel because the parties' claims centered on the same contract and whether a breach occurred).  The State Court Action is essentially a two-pronged action (1) for declaratory relief of insurance coverage for various CVA claims and (2) for damages resulting from Chubb Defendants' breach of implied warranties of good faith and fair dealing.  The damages issue is being litigated in both this case and the State Court Action, and with the GBL § 349 claim in Poly Prep's Corrected Amended Complaint in the State Court Action, the issues become nearly identical as the two actions plead almost exactly the same facts.  *See Ne. Bldg. Sys. LLC*, 2025 WL 1207669, at *5 (finding parallelism between state and federal court proceedings where parties sought recovery of the same amount based on claims for the same construction project); *Harman*, 2024 WL 5202549, at *4 (finding that the state court and federal court actions were parallel where they arose "out of the same series of events, involve[d] the same issues, and concern[ed] the same, or effectively the same, parties as the New York state-court action").  The presence of an additional theory of recovery, Jonah Doe's individual GBL § 349 claim, in this action is not enough to differentiate the issues.  *See Telesco*, 765 F.2d at 362–63 ("Merely raising

64

an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." (citations omitted)); *Ferolito*, 918 F. Supp. 2d at 142 ("Notwithstanding [the plaintiff's] arguments, the fact that a new theory of liability is asserted in the [f]ederal [a]ction does not sufficiently differentiate the [f]ederal [a]ction from the [state court] [a]ction.").

Further, both actions will assess whether Third-Party Defendants' insurance policies cover the abuse by Foglietta, Jonah Doe's abuser. *See U.S. Bank Nat'l Ass'n*, 804 F. App'x at 107 (concluding proceedings were parallel despite different causes of action because "the foreclosure action [in federal court] cannot be resolved without also resolving the state-court claims"); *JPMorgan Chase Bank*, 2024 WL 709068, at *5 (explaining that "the same events underlie [the federal] action and the [state] action" where the plaintiff sought recovery "as a result of [the defendant's] breaches under the loan and guaranty" and all parties would benefit from demonstrating the plaintiff's breach of the agreement). This case will be decided based on whether the specific facts of Jonah Doe's abuse by Foglietta fall within Third-Party Defendants' policies such that Third-Party Defendants owe indemnity coverage. (Third-Party Compl. ¶¶ 18, 120; Defs.' Mem. 8.) While Poly Prep assigned certain claims to Jonah Doe, Poly Prep is nevertheless concurrently litigating indemnity coverage from Chubb Defendants for thirteen sexual abuse actions involving different former students, including victims of Foglietta, and other alleged employee-abusers.[26] Corrected Am. Compl. ¶ 26, *Polytechnic*, No. 517756/2023.

---

[26] The Corrected Amended Complaint in the State Court Action does not explicitly name Foglietta and is more broadly labeled as an insurance coverage action for various CVA claims. Corrected Am. Compl. ¶ 1, *Polytechnic*, No. 517756/2023. Third-Party Defendants maintain that coverage for Foglietta's abuse of students will be litigated in the State Court Action, (Tr. of Oral Argument 34:24–35:18), and this is supported by the record, Corrected Am. Compl. ¶ 26, *Polytechnic*, No. 517756/2023 (listing other actions by former students regarding sexual assault

(*See* Pl.'s Status Report on State Court Action.)  Third-Party Defendants contend that a policy exclusion applies to these claims because their policies are "occurrence-based," and Jonah Doe and Other Plaintiffs' allegations that Poly Prep knew about Foglietta's abuse "undermine any claim that [the] Plaintiffs' damages arise from an 'occurrence' under the [p]olicies."[27]  (Def. Mem. 2 n.1, 8.)  Therefore, both cases will litigate the issue of whether Third-Party Defendants' policies cover Foglietta's abuse and subsequently, whether Third-Party Defendants breached their contract.  As a result, a coverage disposition in the State Court Action on that matter would greatly benefit Jonah Doe's claims against Third-Party Defendants, and vice versa, and this demonstrates their overlapping interests.  *JPMorgan Chase Bank*, 2024 WL 709068, at *5.

Third, even though the relief sought in these two proceedings differs because Poly Prep seeks declaratory, injunctive, and monetary relief while Jonah Doe only seeks monetary relief, this difference does not defeat parallelism.  *See Pike Co. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 387 (W.D.N.Y. 2018) (finding parallel proceedings with different reliefs sought because the two actions were "grounded in an interpretation of the same contractual instrument" (citing *Discovery Ortho Partners, LLC v. Osseous Techs. of Am., Inc.*, No. 10-CV-1729, 2010

---

or abuse by Poly Prep employees).  The earlier filed Amended Complaint by Jonah Doe and Other Plaintiffs in the underlying Poly Prep Action states that "Foglietta sexually abused more than a hundred boys," and other victims have filed suit against Poly Prep.  (Am. Compl. ¶¶ 6, 34.)

[27]  Third-Party Defendants do not raise full coverage defenses in their motion papers.  (Defs.' Mem. 20.)  However, Third-Party Defendants briefly explain that the Aetna Policy is an occurrence-based policy that "provides coverage for 'all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence.'"  (*Id.* at 8 (quoting Aetna Policy).)  The Aetna Policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  (Aetna Policy 6.)  Therefore, Third-Party Defendants argue that Jonah Doe must establish "an occurrence" "to prevail on his indemnity coverage claims."  (Defs.' Mem. 8.)

WL 3239428, at *5 (S.D.N.Y. Aug. 17, 2010))); *Discovery Ortho Partners, LLC*, 2010 WL 3239428, at *5 ("Since the California declaratory action is predicated solely on the interpretation of the same agreement between the parties that [the plaintiff] alleges was breached in this diversity suit, the proceedings are indeed parallel.").  In the State Court Action, Poly Prep seeks a broader scope of relief including damages, a declaratory judgment, and injunctive relief. Corrected Am. Compl. 22–23; *Polytechnic*, No. 517756/2023.  In this Third-Party Action, Jonah Doe only seeks monetary relief for the amount of the fixed sum set forth in the Executed Settlement Agreement, consequential damages, and punitive damages.  (Third-Party Compl. 28.) Although Poly Prep requests declaratory, injunctive, and monetary relief while Jonah Doe only requests monetary relief, the same questions of Chubb's liability underlie both actions, making the two actions parallel.  *See Yu*, 2025 WL 80658, at *4 (finding parallel proceedings even though one action sought injunctive relief and monetary relief and the other only sought monetary relief (citing *Zeppelin Sys. USA, Inc. v. Pyrolyx USA Indiana, LLC*, No. 19-CV-11222, 2020 WL 1082774, at *6 (S.D.N.Y. Mar. 5, 2020))); *Zeppelin Sys. USA, Inc.*, 2020 WL 1082774, at *6 ("Even though [the p]laintiff seeks additional sums, as well as injunctive relief, in this court, the underlying events for both this action and enforcement of the mechanic's lien are identical and the resolution of both actions depend on the same questions of breach of contract.").

Accordingly, the Court finds that the Third-Party Action and the State Court Action have substantially similar issues with overlapping interests, and the two actions are therefore parallel.

### ii.    The *Colorado River* factors weigh against abstention

Having determined that the Third-Party Action and the State Court Action are parallel, the Court considers the six *Colorado River* factors.[28]  For the reasons discussed below, the factors weigh against abstention.

### 1.    Whether res is involved

The first factor — whether res is involved — is neutral because there is no res in dispute. (Defs.' Mem. 18; *see generally* Pl.'s Opp'n.)  Thus, the first factor weighs in favor of retention of jurisdiction.  *See Niagara*, 673 F.3d at 101 (explaining that a neutral factor is a "basis for retaining jurisdiction" under *Colorado River*); *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) (noting that "the absence of jurisdiction over a res . . . point[s] toward exercise of federal jurisdiction"); *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 599 (S.D.N.Y. 2013) (explaining that the first factor favors retention where the parties "agree that there is no res or property involved over which either court would assume jurisdiction").

### 2.    Location of the forums

The second factor — location of the forums — is also neutral because both forums are in Brooklyn, New York.  As neither party argues otherwise, the Court finds the forums are equally convenient.  (*See generally* Defs.' Mem.; Pl.'s Opp'n.)  The Second Circuit has held that "where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." *Niagara*, 673 F.3d at 101 (alteration omitted) (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999)); *see also Ne. Bldg. Sys. LLC*, 2025 WL 1207669, at

---

[28]  Jonah Doe does not address the individual *Colorado River* factors in his motion papers since he contends it is not "necessary nor appropriate because [Third-Party Defendants] cannot satisfy the threshold issue of whether the Third-Party Complaint and the State Court Action are 'parallel proceedings.'"  (Pl.'s Opp'n 17.)

*6 (finding the second factor neutral and therefore in favor of retention where both actions occurred in New York); *Harman*, 2024 WL 5202549, at *5 (same).

### 3. Whether staying this action will avoid piecemeal litigation

The third factor — whether staying or dismissing this action will avoid piecemeal litigation — weighs in favor of abstention because of the risk of inconsistent judgments regarding Third-Party Defendants' liability under the Aetna Policy.

"The primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *See Niagara*, 673 F.3d at 101–02 (quoting *Woodford*, 239 F.3d at 524). When "the state and federal issues are 'inextricably linked,' the risk of [piecemeal] adjudication is real" and "potential exists for inconsistent and mutually contradictory determinations." *De Cisneros*, 871 F.2d at 307–08 (citation omitted). Maintaining parallel proceedings in two forums could "waste judicial resources and invite duplicative effort," and thus, this factor weighs in favor of abstention. *Arkwright-Bos. Mfrs. Mut. Ins. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985); *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 52–53 (2d Cir. 2020) (affirming the district court's abstention because "the danger of piecemeal litigation was very strong and arguably the key factor" and noting that "avoiding piecemeal litigation may be the paramount consideration under certain circumstances" (citing *id.*)); *De Cisneros*, 871 F.2d at 307–08 (affirming abstention under *Colorado River* where "[t]he basis of the district court's decision to abstain [was] the third factor" because the state and federal court litigations were "inextricably linked"); *Nationwide Gen. Ins. v. Rael Maint. Corp.*, No. 23-CV-4433, 2024 WL 1805544, at *7–8 (S.D.N.Y. Apr. 24, 2024) (finding that the third factor "weigh[ed] heavily in favor of

abstention" where the plaintiffs sought to recover damages from a flooding incident under New York negligence law in state and federal court); *but see Yu*, 2025 WL 80658, at *5 ("[B]ecause 'any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to *Colorado River* would be the rule, not the exception, in cases involving parallel proceedings in state and federal court.'" (quoting *Fernandez v. City of New York*, No. 17-CV-2431, 2017 WL 2894144, at *3 (S.D.N.Y. July 7, 2017))).  When res judicata or collateral estoppel can apply, this factor does not weigh in favor of abstention.  *See Niagara*, 673 F.3d at 102 (finding the third factor weighed in favor of the federal forum because defendants were named in both actions and the risk of inconsistent outcomes "seem[ed] slim" since the "claims [were] straightforward, and the New York state courts appear[ed] unlikely to decide them anytime soon."); *TD Bank*, 760 F. Supp. 3d at 94 (finding the third factor weighed in favor of the federal forum because "[the defendant] failed to demonstrate how principles of res judicata and/or collateral estoppel would fail to prevent the possibility of inconsistent outcomes"); *FaZe Clan Inc. v. Tenney*, 407 F. Supp. 3d 440, 443 (S.D.N.Y. 2019) (finding the third factor did not favor abstention because the proceedings involved the same dispute between the same two parties and a decision in one proceeding would generally have preclusive effect in the others).

In resolving coverage claims in this case, the Court will necessarily determine whether Third-Party Defendants' policies cover Jonah Doe's sexual abuse by Foglietta, and whether Third-Party Defendants breached their obligations under the policies.  Similarly, the State Court Action will determine whether coverage applies to Foglietta's abuse with respect to a broader set of victims.  Both courts will interpret the same provision in the insurance policies, creating some risk of piecemeal litigation and inconsistent outcomes.  *See IT Source, LLC v. Yash Techs., Inc.*,

70

No. 7-CV-1140, 2007 WL 9753188, at *5 (D. Conn. Dec. 19, 2007) ("The federal policy of avoidance of piecemeal litigation is particularly relevant in cases regarding the enforceability of a contract where there is a real possibility that two courts might interpret the same contract language differently." (citing *Lumbermens Mut. Cas. Co. v. Conn. Bank & Trust Co., N.A.*, 806 F.2d 411, 413 (1986) (discussing dangers of two courts' interpreting the same insurance policy differently), *overruled on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995))). Interpreting occurrence-based insurance policies requires a court to evaluate alleged injuries and whether they can be aggregated or considered part of "the same causal continuum" such that they will be considered part of the same "occurrence." *Nat'l Liab. & Fire Ins. v. Itzkowitz*, 624 F. App'x 758, 760 (2d Cir. 2015), *as amended* (Sep. 22, 2015) (citations omitted). Since Foglietta's abuse was prolific, involving more than a hundred boys, the State Court Action will evaluate how the insurance policy's definition of "occurrence" applies to a serial abuser. Jonah Doe argues his "distinct occurrences of sexual abuse" will not be litigated in the State Court Action, (Pl.'s Reply to Defs.' Reply to Pl.'s Stip. for Order and Entry of J.), but the insurance policies at issue in this case will nevertheless be interpreted in both actions. As a result, "the state and federal issues are inextricably linked, the risk of [piecemeal] adjudication is real," and "a potential exists for inconsistent and mutually contradictory determinations." *De Cisneros*, 871 F.2d at 307–08. With inconsistent dispositions comes "additional litigation on assertions of claim and issue preclusion," and this "waste[s] judicial resources and invite[s] duplicative effort." *Arkwright-Bos. Mfrs. Mut. Ins.*, 762 F.2d at 211; *TD Bank*, 760 F. Supp. 3d at 94. This factor therefore weighs in favor of abstention. *See Ne. Bldg. Sys. LLC*, 2025 WL 1207669, at *6 (finding third factor favored abstention because maintaining the two proceedings would "waste

judicial resources and invite duplicative effort" (quoting *Arkwright-Bos. Mfrs. Mut. Ins.*, 762 F.2d at 211)).

### 4.    Status of the proceedings in each forum

The fourth factor — whether the proceedings have advanced further in one forum than the other and the order of filing — weighs against abstention because although both actions are in the early stages of pleading, this action already contains the relevant underlying evidence regarding Jonah Doe's claims against Third-Party Defendants.

This factor compares whether more progress has been made in one proceeding over the other. *See Niagara*, 673 F.3d at 102 ("[T]his prong of the *Colorado River* test turns not just 'on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" (quoting *Vill. of Westfield*, 170 F.3d at 122)). If more progress has been made in the state court proceeding, then this factor favors abstention. *See Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 378 (S.D.N.Y. 2020) (finding that the fourth factor "slightly favor[ed] abstention" where no discovery had occurred in the federal action, while the state action had engaged in more discovery but had "slowed considerably because of disputes"); *Telesco*, 765 F.2d at 363 (explaining that "it hardly seem[ed] wise to permit plaintiff to start anew in federal court" where "[t]he federal suit . . . like that in *Colorado River*, ha[d] not moved beyond the initial pleadings and the motion to dismiss"); *see also TD Bank*, 760 F. Supp. 3d at 94 (finding the fourth factor neutral when both actions were "in their infancy"); *Nationwide Gen. Ins.*, 2024 WL 1805544, at *9 (finding the fourth factor was neutral because there was "no substantial difference" in the order of proceedings and neither was significantly more advanced).

Jonah Doe commenced his federal action against Poly Prep Defendants more than four years ago. He impleaded the Third-Party Defendants into this action more recently in April of

2025, but Third Party Defendants have provided Poly Prep Defendants with a defense since the beginning of the Poly Prep Action in July of 2021.  (Defs.' Mem. 1.)  No additional discovery has occurred since the filing of the Third-Party Complaint.

By contrast, the State Court Action began in June of 2023.  In the State Court Action, Poly Prep and Chubb Defendants briefed a motion to dismiss that the state court scheduled for oral argument, but Poly Prep and Chubb Defendants agreed to withdraw their motions in June of 2024 while Poly Prep amended its complaint.  Ltr. to Judge Withdrawing Mot., *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed June 25, 2024), Docket Entry No. 47.  The parties took no action for nearly a year.  *See Polytechnic*, No. 517756/2023.  On May 22, 2025, a Kings County Supreme Court judge issued a status conference notice because there was "no recent activity on this case for over one year" and scheduled a status conference for July 17, 2025, Status Conf. Notice, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed May 22, 2025), Docket Entry No. 48, but two days before the status conference, the judge rescheduled the conference to one month later on August 21, 2025, Status Conf. Notice, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed July 15, 2025), Docket Entry No. 63.  In August of 2025, Poly Prep sought to file a Corrected Amended Complaint with a GBL § 349 claim, which Poly Prep filed on November 26, 2026.  Mot. to Amend, *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Aug. 20, 2025), Docket Entry No. 66; Corrected Am. Compl., *Polytechnic*, No. 517756/2023.  On August 20, 2025, Poly Prep served its first set of document requests and interrogatories on Chubb Defendants, and on October 10, 2025, Chubb Defendants served their first set of document requests and interrogatories on Poly Prep.  (Defs.' Status Report on State Court Action; Pl.'s Status Report on State Court Action.)  Interrogs., *Polytechnic*, No. 517756/2023 (N.Y. Sup. Ct. filed Nov. 10, 2025), Docket Entry No. 94; Demand for Docs., *Polytechnic*, No. 517756/2023

(N.Y. Sup. Ct. filed Nov. 10, 2025), Docket Entry No. 95.   However, neither Poly Prep nor Chubb Defendants have completed the discovery requests because they are waiting to serve responsive documents until after they negotiate a "Stipulation and Confidentiality Agreement." (Defs.' Status Report on State Court Action; Pl.'s Status Report on State Court Action.)  Third-Party Defendants allege that Poly Prep served document requests and interrogatories on other defendant-insurers, and the defendant-insurers filed responses.  (Defs.' Suppl. Status Report on State Court Action.)  The defendant-insurers filed answers to Poly Prep's Corrected Amended Complaint on February 13 and 20, 2026, and some defendant-insurers asserted cross-claims and motions to dismiss.  *See Polytechnic*, No. 517756/2023.  (*See also* Defs.' Status Report on State Court Action; Defs.' Suppl. Status Report on State Court Action; Pl.'s Status Report on State Court Action; Pl.'s Suppl. Status Report on State Court Action.)

Despite the fact that Poly Prep filed the State Court Action before Jonah Doe initiated his Third-Party Complaint, nearly two and a half years have passed, and the State Court Action has not advanced much beyond Poly Prep's Corrected Amended Complaint except for initial discovery requests and preliminary motion practice.  Irrespective of when the actions were filed, both actions are in the early stages with respect to the claims against Third-Party Defendants.  However, this federal proceeding may be considered more advanced because the evidence supporting Jonah Doe's claims — Third-Party Defendants' alleged uncooperative conduct during settlement negotiations — is part of the federal proceeding's evidentiary record, and Poly Prep refers to those same facts in their proposed Corrected Amended Complaint.  As discussed *supra* in Section II.b.iii.2, the Court found that judicial economy is better served by litigating Jonah Doe's claims in this action where the facts were determined and Jonah Doe and Poly Prep reached a settlement, rather than "repeat much of the proceedings and discovery that has already

74

occurred in this case . . . ." (April 2025 Order 6 (quoting *Too, Inc.*, 213 F.R.D. at 141).) Given the further developed evidentiary record in this federal proceeding, and the minimal advancement in the State Court Action, the Court finds this factor weighs against abstention. *See Vill. of Westfield*, 170 F.3d at 123 (finding abstention improper where there was considerable progress in the federal action and comparatively limited progress in the state action); *Imbedded Artists Inc. v. Marc Kinchen*, No. 20-CV-3535, 2022 WL 356429, at *5 (E.D.N.Y. Feb. 7, 2022) (finding this factor weighed against abstention because "neither case had progressed significantly" and the defendant served the plaintiff with discovery requests in state court action and the parties in federal court had briefed the defendant's motion to dismiss).

### 5. Whether state or federal law provides the rule of decision

The fifth factor — whether state or federal law provides the rule of decision — weighs slightly in favor of abstention because the federal action only involves state law claims but the claims are not novel or complex.

"When the applicable substantive law is federal, abstention is disfavored." *De Cisneros*, 871 F.2d at 309; *see Iacovacci*, 437 F. Supp. 3d at 378 (quoting *id.*). "[T]he absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Niagara*, 673 F.3d at 102 (quoting *Vill. of Westfield*, 170 F.3d at 123–24); *see Arkwright-Bos. Mfrs. Mur. Ins.*, 762 F.2d at 211 (finding this factor weighed in favor of abstention because the federal action was not a "garden variety federal diversity case[s] applying well-settled state-law principles" (quoting *Giardina v. Fontana*, 733 F.2d 1047, 1051 (2d Cir. 1984))); *see also Yu*, 2025 WL 80658, at *7 (holding the fifth factor favored abstention because all claims were state law claims); *Iacovacci*, 437 F. Supp. 3d at 378 (holding the fifth factor only slightly favored abstention because state law governed nine out of ten claims but the state law

75

claims were not particularly novel or complex); *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 595 (S.D.N.Y. 2006) (finding the fifth factor to slightly favor abstention where the proceedings involved only issues of state contract law).  "As all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction."  *Arkwright-Bos. Mfrs. Mur. Ins.*, 762 F.2d at 211.

Jonah Doe's claims — breach of contract (duty to indemnify), breach of implied covenant of good faith and fair dealing, and deceptive business practices under GBL § 349 — are all state law claims.  No federal question is implicated.  The claims allege grave harms with respect to a broader pattern of behavior regarding insurance companies' responses to claims brought under the CVA, but there are no particularly complex or serious questions of state law at issue.  *See* Corrected Am. Compl., *Polytechnic*, No. 517756/2023.  Thus, this factor slightly favors abstention.  *See Goldentree Asset Mgmt.*, 448 F. Supp. 2d at 595 (finding the fifth factor to slightly favor abstention where the proceedings involved only issues of state contract law).

### 6.    Adequacy of state procedures to protect Jonah Doe's federal rights

The sixth factor — whether the state procedures are adequate to protect Jonah Doe's federal rights — weighs against abstention because the Court lacks sufficient evidence to conclude that the State Court Action will promptly and completely resolve the issues between the parties.

This factor considers if "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  *Vill. of Westfield*, 170 F.3d at 124 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).  "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."  *Moses*, 460 U.S. at 28; *see Niagara*, 673 F.3d at 103 (finding

the sixth factor weighed against abstention when the party's federal rights were not adequately protected because the federal claims had been "languishing in state court for years"); *Vill. of Westfield*, 170 F.3d at 124 (finding the district court abused discretion by assuming the state court was an "adequate vehicle for the prompt resolution of the issues" when the district court was "well aware of the slow pace of the state court proceeding" — over 13 years (internal quotation marks omitted)). When the state court can resolve the proceedings without concern for federal rights infringement, this factor weighs in favor of abstention. *See Nationwide Gen. Ins.*, 2024 WL 1805544, at *10–11 (finding that the sixth factor weighed in favor of abstention because the court had "no reason to doubt" the state court would resolve the proceedings with adequate procedural protections and without significant delay); *Superior Site Work, Inc. v. NASDI, LLC*, No. 14-CV-1061, 2017 WL 384325, at *7 (E.D.N.Y. Jan. 23, 2017) ("The state court can adequately protect [the plaintiff's] rights. [The plaintiff] raises only state law claims against [the defendant], all of which can be sufficiently litigated in, and resolved by, the state court. This factor weighs in favor of abstention." (quoting *Ferolito*, 918 F. Supp. 2d at 144)); *Millennium Drilling Co. v. Prochaska*, No. 14-CV-1985, 2014 WL 6491531, at *5 (S.D.N.Y. Nov. 18, 2014) (finding this factor weighed in favor of abstention because "infighting between [seven other] parties in the [state] action" did not mean the state court "would be inadequate to protect its rights"). However, "[t]his factor is 'more important when it weighs in favor of federal jurisdiction.'" *Vill. of Westfield*, 170 F.3d at 122 (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986)); *Ne. Bldg. Sys. LLC*, 2025 WL 1207669, at *7 (quoting same); *see Mansfield Heliflight, Inc. v. Longo*, No. 25-CV-388, 2025 WL 3240787, at *13 (D. Vt. Nov. 20, 2025) ("Although any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal

77

jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River*." (quoting *Estee Lauder Cos. Inc. v. Batra*, 430 F. Supp. 2d 158, 169 (S.D.N.Y. 2006))); *In re Asbestos Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997) (citing *Zemsky v. City of New York,* 821 F.2d 148, 153 (2d Cir. 1987)) (same).

The facts demonstrate that there are serious concerns about the ability of the State Court Action to promptly resolve the issues between the parties and fully protect Jonah Doe's rights because of (1) the State Court Action's inevitable delays in adjudicating coverage claims involving at least sixteen insurers and numerous victims, and (2) Jonah Doe's absence as a party in State Court Action.

First, the Court cannot conclude that the claims in the State Court Action will be promptly resolved because of the State Court Action's complexity and demonstrated delays. The State Court Action will assuredly move at a slower pace than this action because it is much broader, involving more than one dozen other insurers and numerous of unrelated sexual abuse claims with different abuse circumstances. *See Niagara*, 673 F.3d at 102–03 (finding this factor weighed against abstention because the claims had been "languishing in state court for years" and the federal proceeding would move more quickly); *see also Stone v. Patchett*, No. 08-CV-5171, 2009 WL 1108596, at *18 (S.D.N.Y. Apr. 23, 2009) (finding this factor weighed against abstention because the state court proceedings were "plagued by interminable delays" and the issue could be promptly resolved in federal court). In contrast, Jonah Doe has moved quickly in this Third-Party Action to file his motion to implead, discussed *supra* in Section II.b.iii.1, the only abuse claim at issue is Jonah Doe's, and the record includes relevant underlying evidence supporting Jonah Doe's claims. Even if Third-Party Defendants implead additional insurers as they contend would be necessary, only coverage for Jonah Doe's claims will be adjudicated, a

78

significantly narrower scope that will move more promptly than the adjudication of the undisclosed number of victims' claims in the State Court Action.

In addition, as discussed *supra* in Section II.c.ii.4, the State Court Action lagged for approximately one year, and the state court judge had to prompt the parties to continue litigation. Even though discovery has commenced, minimal substantive progress has been made since the case's inception over two and a half years ago. *See Niagara*, 673 F.3d at 103 (finding the state court proceeding inadequate with a motion to consolidate pending for more than three years); *Vill. of Westfield*, 170 F.3d at 119, 124 (finding a state court proceeding inadequate with thirteen years of litigation and minimal progress). The Court therefore cannot conclude that the State Court Action can provide prompt resolution of the issues.

Second, the State Court Action will not be an adequate vehicle for the "complete" resolution of issues between the parties because Jonah Doe is not a party to the State Court Action, and the State Court Action will not resolve all of the claims in this action. Once the State Court Action is resolved, the Court will still need to determine Jonah Doe's assigned claims and his individual GBL § 349 claim. The Court therefore cannot conclude that Jonah's Doe's unrepresented rights and claims will be adequately protected in the State Court Action. *See Markovic v. Milos Hy, Inc.*, No. 22-CV-1412, 2023 WL 4763807, at *12 (S.D.N.Y. July 26, 2023) (finding "a serious question about whether the state procedures are adequate to protect the [p]laintiffs' federal rights" because the plaintiffs were not party to the state proceeding); *see also Zemsky*, 821 F.2d at 153 (reversing district court's stay of litigation because, *inter alia*, "the state proceeding might not adequately protect [plaintiff's] rights against those individuals who are parties only to the federal proceeding" when the two cases involved different parties); *Mansfield Heliflight, Inc.*, 2025 WL 3240787, at *13 (same).

However, Jonah Doe only pleads state law claims, and no federal rights would be implicated if Jonah Doe litigated his claims in the State Court Action. *See Yu*, 2025 WL 80658, at *8 ("The plaintiff's claims are New York state claims, which the state can obviously resolve."); *Superior Site Work, Inc.*, 2017 WL 384325, at *7 (same); *Ferolito*, 918 F. Supp. 2d at 144 (holding that the plaintiff "raises only state law claims against [the defendant], all of which can be sufficiently litigated in, and resolved by, the state court[,]" and thus "[t]he state court can adequately protect [the plaintiff]'s rights").

Nevertheless, the Court lacks sufficient evidence to conclude that the State Court Action will promptly and completely resolve the claims between the parties, and thus this factor weighs against abstention. *See Niagara*, 673 F.3d at 103–04 ("'If there is any substantial doubt as to' the adequacy of parallel state-court litigation for completely and promptly resolving the issues between the parties, it is 'a serious abuse of discretion' for a district court to abstain from exercising jurisdiction." (quoting *Moses*, 460 U.S. at 28)).

In summary, *Colorado River* factors one and two are neutral, and therefore weigh against abstention. *See Niagara*, 673 F.3d at 101 (holding that a neutral *Colorado River* factor weighs against abstention). Factors three and five weigh in favor of abstention. Factors four and six weigh against abstention. However, *Colorado River* abstention analysis is not a "mechanical checklist" but "a careful balancing of the important factors as they apply in a given case." *Niagara*, 673 F.3d at 104 (quoting *Moses*, 460 U.S. at 16). While some courts consider avoiding piecemeal litigation the most significant factor favoring abstention in *Colorado River*, *see, e.g.*, *Lawrence Moskowitz*, 830 F. App'x at 52–53 (affirming the district court's use of discretion to weigh "the danger of piecemeal litigation more strongly than others"); *De Cisneros*, 871 F.2d at 307–08 (upholding the district court's decision to abstain based on the risk of piecemeal

adjudication), the Court must also consider that "it is 'a serious abuse of discretion' for a district court to abstain from exercising jurisdiction" if there is "any substantial doubt" about the adequacy of the state court proceeding to completely and promptly resolve the issues, *Niagara*, 673 F.3d at 103–04 (quoting *Moses*, 460 U.S. at 28).  Given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, the two factors that weigh against abstention, and the two neutral factors, the Court denies Third-Party Defendants' motion to stay or dismiss the Third-Party Action pending the resolution of the State Court Action.

## III.  Conclusion

For the foregoing reasons, the Court finds that Judge Eshkenazi appropriately granted impleader and denies Third-Party Defendants' motion to dismiss this Third-Party Action.  The Court also denies Third-Party Defendants' motion to stay or dismiss the action under the *Colorado River* abstention doctrine.

Dated: March 18, 2026
       Brooklyn, New York

SO ORDERED:

       /s/ MKB      
MARGO K. BRODIE
United States District Judge
